**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ZOEY METZNER, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>QUINNIPIAC UNIVERSITY,<br><br>       Defendant. | No. 3:20-cv-784<br><br><u>JURY TRIAL DEMANDED</u> |

**<u>CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

I.  NATURE OF ACTION ...................................................................................................1

II.  JURISDICTION AND VENUE ......................................................................................2

III.  PARTIES .........................................................................................................................3

IV.  FACTS ............................................................................................................................5

    A.  Background ...........................................................................................................5

    B.  The Novel Coronavirus Shutdowns And Defendant's Campus Closure .................8

    C.  Defendant's Refusal To Issue Tuition And Fee Refunds .....................................11

V.  CLASS ACTION ALLEGATIONS ...............................................................................12

VI.  CAUSES OF ACTION ..................................................................................................16

    COUNT I  BREACH OF CONTRACT.................................................................16

    COUNT II  UNJUST ENRICHMENT ...................................................................17

    COUNT III  CONVERSION .................................................................................18

PRAYER FOR RELIEF ...........................................................................................................19

JURY DEMAND .......................................................................................................................19

Plaintiff, ZOEY METZNER, individually and on behalf of all others similarly situated, for her Class Action Complaint against Defendant QUINNIPIAC UNIVERSITY ("Quinnipiac"), based upon personal knowledge as to her own actions and based upon the investigation of counsel regarding all other matters, complains as follows:

<strong>I.      NATURE OF ACTION</strong>

1.      This Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19.[1] Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and universities across the country to shut down their campuses, evict students from campus residence halls, and switch to online "distance" learning.

2.      Despite sending students home and closing its campus(es), Defendant continues to charge for tuition and fees as if nothing has changed, continuing to reap the financial benefit of millions of dollars from students. Defendant does so despite students' complete inability to continue school as normal, occupy campus buildings and dormitories, or avail themselves of school programs and events. So while students enrolled and paid Defendant for a comprehensive academic experience, Defendant instead offers Plaintiff and the Class Members something far less: a limited online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study. Plaintiff and the Class Members did not bargain for such an experience.

---

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. To minimize the burden on the Court and to reasonably accommodate Defendant, Plaintiff will work with Defendant to reach an agreeable schedule for their response to this Class Action Complaint.

010920-30/1277791 V1

3.      While some colleges and universities have promised appropriate and/or proportional refunds, Defendant excludes itself from such other institutions treating students fairly, equitably, and as required by the law.

4.      As a result, Defendant's actions have financially damaged Plaintiff and the Class Members. Plaintiff brings this action because Plaintiff and the Class Members did not receive the full-value of the services paid and did not receive the benefits of in-person instruction. They have lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, and attorney's fees and costs.

## II.      JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class Members in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiff is a citizen of Massachusetts, whereas Defendant is a citizen of Connecticut for purposes of diversity. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Connecticut,[2] where this action is

---

[2] About 26.2% of the students attending Quinnipiac University come from within Connecticut. https://www.collegefactual.com/colleges/quinnipiac-university/student-life/diversity/.

originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

6.    Venue is appropriate in this District because Defendant is located within the District of Connecticut. And on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

### III.    PARTIES

7.    Plaintiff Zoey Metzner is a citizen and resident of the State of Massachusetts. Plaintiff enrolled as a full-time student for the Spring 2020 academic term at Defendant. Plaintiff is in good financial standing at Defendant, having paid in whole or in combination tuition, fees, costs, and/or room and board charges assessed and demanded by Defendant for the Spring 2020 term.

8.    Plaintiff paid Defendant for opportunities and services that she did not receive, including on-campus education, facilities, services, and activities.

9.    While Plaintiff could have obtained her degree online, Plaintiff specifically selected an in-person, in-class experience at Quinnipiac for the variety of educational experiences that only an in-person program can deliver.  Moreover, Quinnipiac did not offer Plaintiff's degree program online.

10.    With Defendant's campus closure and transition to an online-only educational experience, Plaintiff suffered a decreased quality of educational experience. Moreover, Plaintiff lost the use of important facilities for her studies, including classrooms, study spaces, studio spaces, and lounges that were bargained for by selecting in-person instruction.

11.    For example, as a film major, a large portion of Plaintiff's classes were conducted in a studio and/or utilized the school's film recording and editing equipment. But with the switch

-3-

to remote learning, Plaintiff lost the use and experience that such equipment provided as an integral part of her education. Instead, Defendant directed Plaintiff to use her personal phone to try to record a film festival worthy project.

12.     As another example, for a design class, Plaintiff utilized Adobe design and editing software on the school's computers. But with the switch to online classes, Plaintiff lacked the ability to access any such software for several weeks because the school did not have sufficient licenses for students to utilize the software.

13.     Further, with the transition to online instruction, Plaintiff's classes did not run as long as they normally had earlier in the term and Defendant truncated Plaintiff's assignments as well. For example, an integral component of several of Plaintiff's classes involved group projects, with approximately three such projects planned for the remainder of the semester. But with the shift to online-only, such planned group projects were whittled down to just one, with the remaining "group" project effectively shifting to a cobbling together of separate, individual projects.

14.     Moreover, professors were unable to and did not adapt class lectures based on their observations of students' ability to understand the curriculum.

15.     Plaintiff also suffered from decreased accessibility to her professors. Whereas Plaintiff could ask questions before, during, or after class, following the shift to online learning, it became very difficult for Plaintiff to communicate with her professors, with some not timely responding (or responding at all) to information requests.

16.     Defendant Quinnipiac University is an institution of higher learning located in Hamden, Connecticut. Defendant provides Class Members with campus facilities, in-person

classes, as well as a variety of other facilities for which Defendant charges Plaintiff and the Class Members.

## IV.     FACTS

**A.     Background**

17.     Founded in 1929, Quinnipiac has a current enrollment of approximately 10,290 students enrolled in Defendant's College of Arts and Sciences and eight professional schools.

18.     As of June 30, 2019, Defendant's total endowment net assets exceeded $496.9 million, with Defendant reporting operating revenues of $365.7 million, including therein $277.1 million in net tuition and fees.

19.     While many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (*see*, *e.g.*, Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), Defendant is not such a school.

20.     Rather, a significant focus of Defendant's efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff.

21.     A few examples of such efforts to promote that experience follow.

22.     As primarily a residential university, approximately 72% of all undergraduates live on campus, with 95% of freshman living on campus.[3]

23.     To that end, Quinnipiac notes that students will "do more than earn a degree. You'll become part of our vibrant community were students rally around common interests, passions and causes. You'll see this collective passion come to life through our 146 student-run

---

[3] https://www.qu.edu/admissions/undergraduate/frequently-asked-questions.html.

organizations, while volunteering in the local community or through service-learning opportunities available around the world. You'll hear it when you experience artists like DJ Tiesto, Kesha and Jason Derulo at our exclusive Wake the Giant concert series each spring. You'll feel it when you join your fellow Bobcats to cheer on our nationally ranked hockey and basketball teams in the York Hill Campus arenas."[4]

24.    Quinnipiac also highlights its campuses as being "purposefully designed for living and learning."[5] As Defendant explains:

> We challenge the traditional ideas of "campus life." Wide-open spaces, meandering pathways, skylights, lofted ceilings and intimate courtyards enhance the sense of community.
>
> From residence halls modeled after European ski villages to brownstone-style buildings with full kitchens and patios, we purposefully designed our living spaces with personal comfort, connecting with friends and student safety in mind.
>
> Our outdoor spaces are more than just green grass. They are places where you'll gather with friends for cookouts, play a pick-up game of basketball or simply study with the beauty of New England as your backdrop.
>
> Beyond our residential and recreational spaces, the facilities on each of our 3 campuses are second to none. Here, you'll find a network of libraries, labs, studios and facilities designed to ensure you have the educational resources you need at your fingertips.[6]

25.    Academically, Quinnipiac describes itself as "unique" because of its "focus on career readiness" explaining that "[t]hrough a combination of classroom theory and practical

---

[4] https://www.qu.edu/life/student.html.

[5] *Id.*

[6] *Id.*

experience tailored to meet what the market demands, we expose you to the live-changing challenge of working and learning in the community and around the globe."[7]

26.    To assist students on their path, Quinnipiac helps students "create a personalized roadmap, based on our proprietary advising model. . . .  Your plan will include a combination of classroom and immersive experiential learning purposefully designed to transform you from a curious student to an extraordinarily well-prepared professional."[8]

27.    And as Quinnipiac notes, "[a]cross our three campuses, you'll be surrounded by our state-of-the-art facilities and caring faculty, where you will experience living in the beauty and charm of southern New England."[9]

28.    To obtain such educational opportunities and activities, Plaintiff and the Class Members pay, in whole or in part, significant tuition, fees, and/or room and board.

29.    For the Spring 2020 term, Defendant assessed undergraduate students $24,280 in full-time tuition (with the per-credit hour rate of $1,075 per credit) along with a technology fee of $720 per year. Defendant's undergraduate room and board fees ranged from $14,360 to $18,270 per year, while dining service levels ranges from $1,685 to $1,885 per semester. Likewise, Defendant assessed graduate students typically at $1,055 per credit hour, along with a full-time technology fee of $40 a credit (not to exceed $360 per semester).

30.    Such charges for study are significantly higher than online-only programs, including the certain programs that Defendant offers.

---

[7] https://www.qu.edu/academics/a-quinnipiac-education.html.

[8] *Id.*

[9] https://www.qu.edu.

31.     Schools delivering an online-only educational experience assess significantly discounted rates for delivering such educational services. For example, Western Governor's University charges a flat-rate tuition at $3,370 per term while Southern New Hampshire University charges $960 per course for online undergraduate programs and $1,881 per course for online graduate programs.

32.     As to Defendant, for the Spring 2020 term, Defendant also charged students less per credit hour for online courses. For example, Defendant charged students between $515 and $575 in tuition per credit for the undergraduate online degree programs that it offers. And for its graduate degree programs, Defendant's tuition ranged from $705 to $995 per credit hour.

**B.     The Novel Coronavirus Shutdowns And Defendant's Campus Closure**

33.     On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19.

34.     By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

35.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

36.     By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

37.     Travel and assembly restrictions began domestically in the United States on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders

-8-

and as of April 6, 2020, 297 million people in at least 38 states, 48 counties, 14 cities, the District of Columbia, and Puerto Rico are being urged or directed to stay home.

38.    On or about March 9, 2020, Defendant requested that its faculty analyze and outline "what it will take for you to deliver your courses and final exams online."[10]

39.    On March 10, 2020, Defendant announced that "We will begin online delivery of classes on Wednesday, March 18, 2020" and that "[s]tudents will not return to campus until Sunday, March 22."[11]

40.    On March 15, 2020 and effective March 16, 2020 until further notice, Defendant asked "all Quinnipiac employees who have the capability to perform their job duties remotely to shift to a work-from-home arrangement."[12]

41.    Also on March 15, 2020, Defendant also announced the effective closure of the campus, directing that "[s]tudents will not return to campus after the extended spring break, and the remainder of the spring semester will be delivered online." Defendant also cancelled all university events and athletic programs.[13]

42.    Notably, Defendant's decision to close its campus and move classes exclusively online occurred prior to the effective date of Connecticut's "Stay Safe, Stay At Home" order by Governor Ned Lamont, i.e., Monday, March 23, 2020 at 8:00 p.m.[14]

---

[10] https://www.qu.edu/today/coronavirus-update-03092020.html.

[11] https://www.qu.edu/today/coronavirus-community-update-03102020.html.

[12] https://www.qu.edu/today/coronavirus-faculty-staff-update-03152020.html.

[13] https://www.qu.edu/today/coronavirus-update-03152020.html.

[14] https://portal.ct.gov/Office-of-the-Governor/News/Press-Releases/2020/03-2020/Governor-Lamont-Signs-Executive-Order-Asking-Connecticut-Businesses-and-Residents-Stay-Safe

43.     Though the reasons for such closures are justified, the fact remains that such closures and cancellations present significant loss to Plaintiff and the Class Members.

44.     College students across the country have offered apt descriptions of the loss they have experienced as a result of the pandemic, highlighting the disparity between students' bargained for educational experience and the experience that colleges and universities, including Defendant, now provide.

45.     For example, as reported in The Washington Post, one student "wonders why he and others . . . are not getting at least a partial tuition refund. Their education, as this school year ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social experience students imagined when they enrolled. But tuition remains the same: $27,675 per semester . . . 'Our faculty are doing a good job of working with us,' said Patel, 22, who is from New Jersey. 'But at the end of the day, it's not the same as in-person learning . . . It shouldn't just be a part of the business model where, no matter what happens, you have to pay the same amount. The cost needs to reflect some of the realities.'"[15]

46.     As another example, as reflected in a Change.org petition, with nearly 5,000 supporters, students at another major university highlight the loss experienced by students: "As a result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of emergency in Illinois. In response, Northwestern University made the sensible decision to offer all Spring 2020 courses online for the start of the quarter and will likely extend this to the rest of the quarter as the situation worsens. While this is certainly the right call to ensure the health and safety of all students, Northwestern's tuition and fees do not accurately reflect the value lost by

---

[15] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/.

switching to online education for potentially an entire term. For the following reasons, we are

seeking a partial refund of tuition and full refund of room and board for the Spring 2020 quarter.

Since Northwestern is a top private university, the estimated annual cost of attendance of

$78,654 goes towards a comprehensive academic experience that cannot be fully replicated

online. Due to the COVID-19 crisis, students paying for the Northwestern experience will no

longer have access to invaluable face-to-face interaction with faculty, resources necessary for

specific programs, and access to facilities that enable learning."[16]

47.    Another university's student newspaper reflects another example: "At this time,

most of the campus and dorms need not be rigorously maintained. No events will be held, nor

speakers hosted. The world-class education that consists in having opportunities to work and

interact with academics and peers (not to mention the vast numbers of innovators, creators,

doctors, organizers, and more that congregate on our campus) will no longer be provided."[17]

**C.    Defendant's Refusal To Issue Tuition And Fee Refunds**

48.    Given Defendant's transition to online classes and COVID-19 concerns,

Defendant asked students to vacate student housing.

49.    Defendant has refused to provide tuition or other fee refunds. Quinnipiac notes

the following in COVID-19 FAQs on its webpage in response to the question "Will students

receive refunds for tuition, housing and other costs?":

> The university has been focused on the health and education of our
> students and has not yet resolved the financial impact of this crisis.
> The university expects to be able to provide some level of refund
> for housing and meal plans for those graduating; for students not
> yet graduating the credit would be applied against next year's

---

[16] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.

[17] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.

costs. The university will provide further details in the coming
weeks.[18]

50.     On April 22, 2020, Defendant detailed the steps it would be taking to provide

housing and dining credits to returning students and refunds for departing students:

> We know you have waited for answers on housing and dining
> credits. We have been working through the university's plan to
> address the $40 million in costs associated with the coronavirus
> that we are facing. We appreciate your patience as we have moved
> to finalize the best approach to providing housing and dining
> credits.
>
> Recognizing that our residence halls have been closed since March
> 15, students will receive credits for housing and dining based on
> housing type and the selected dining plan. If housing and/or dining
> were paid for by the university, those students will not be eligible
> for a credit.
>
> ***
>
> We will be crediting all unused spring meal points in full to
> returning students' Fall 2020 meal plans, and the points will be
> available to use throughout the 2020–21 academic year.

51.     In contrast, Defendant has refused to give prorated tuition refunds or refunds for

fees paid for student services that students cannot use because those services were curtailed,

eliminated, or because the student followed the university's instruction to leave the campus and

return home.

## V.     CLASS ACTION ALLEGATIONS

52.     Plaintiff sues under Rule 23(a), (b)(2), and Rule 23(b)(3) of the Federal Rules of

Civil Procedure, on behalf of herself and a Class defined as follows:

> All persons enrolled at Defendant for the Spring 2020 term who
> paid Defendant, in whole or in part, tuition, fees, and/or room and
> board for in-person instruction and use of campus facilities, but

---

[18] https://quinnipiac.helpsite.com/articles/50818-will-students-receive-refunds-for-tuition-
housing-and-other-costs.

-12-

were denied use of and/or access to in-person instruction and/or
campus facilities by Defendant.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest,

and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further

excluded from the Class is this Court and its employees. Plaintiff reserves the right to modify or

amend the Class definition including through the creation of sub-classes if necessary, as

appropriate, during this litigation.

53.     The definition of the Class is unambiguous. Plaintiff is a member of the Class

Plaintiff seeks to represent. Class Members can be notified of the class action through contact

information and/or address lists maintained in the usual course of business by Defendant.

54.     Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed

that their individual joinder of all Class Members is impracticable. The precise number of Class

members is unknown to Plaintiff but may be ascertained from Defendant's records. However,

given the thousands of students enrolled at Defendant in a given year, that number greatly

exceeds the number to make joinder possible. Class Members may be notified of the pendency of

this action by recognized, Court-approved notice dissemination methods, which may include

U.S. Mail, electronic mail, Internet postings, and/or published notice.

55.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff

and the Class Members, making appropriate final injunctive relief and declaratory relief

regarding the Class under Rule 23(b)(2).

56.     Consistent with Rule 23(a)(2), Defendant engaged in a common course of conduct

giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical

legal violations are involved. Individual questions pale by comparison to the numerous common

questions that predominate. The injuries sustained by the Class Members flow, in each instance,

from a common nucleus of operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees, and/or room and board.

57.     Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

a.     Whether Defendant engaged in the conduct alleged;

b.     Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiff and the Class Members;

c.     Whether Defendant breached identical contracts with Plaintiff and the Class Members;

d.     Whether Defendant violated the common law of unjust enrichment;

e.     Whether Defendant converted Plaintiff and the Class Members refunds and/or rights to refunds; and

f.     The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class Members.

58.     The Class Members have been damaged by Defendant through its practice of denying refunds to Class Members.

59.     Plaintiff's claims are typical of the claims of the other Class Members under Rule 23(a)(3). Plaintiff is a student enrolled at Defendant in the Spring 2020 term. Like other Class Members, Plaintiff was instructed to leave Defendant's campus, forced to take online classes, and has been completely or partially denied a refund for tuition, fees, and/or room and board.

-14-

60.     Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's interests do not conflict with the interests of the other Class Members she seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

61.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members under Rule 23(b)(3). The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

62.     In addition under Rule 23(b)(3)(A), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

63.     Under Rule 23(b)(3)(C), it is desirable to concentrate the litigation of the claims of Plaintiff and the Class Members in this forum given that Defendant is located within this judicial district and discovery of relevant evidence will occur within this district.

010920-30/1277791 V1

64.    Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties per Rule 23(b)(3)(D).

## VI.    CAUSES OF ACTION

### COUNT I

### BREACH OF CONTRACT

65.    Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

66.    Plaintiff and the Class Members entered into identical, binding contracts with Defendant.

67.    Under their contracts with Defendant, Plaintiff and the members of the Class paid Defendant tuition, fees, and/or room and board charges for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services.

68.    Plaintiff and the Class Members have fulfilled all expectations, having paid Defendant for all Spring 2020 term financial assessments.

69.    However, Defendant has breached such contracts, failed to provide those services and/or has not otherwise performed as required by the contract between Plaintiff and the Class Members and Defendant. Defendant has moved all classes to online classes, has restricted or eliminated Plaintiff and the Class Members' ability to access university facilities, and/or has evicted Plaintiff and the Class Members from campus housing. In doing so, Defendant has and continues to deprive Plaintiff and the Class Members from the benefit of their bargains with Defendant.

70.     Plaintiff and the Class Members have been damaged as a direct and proximate result of Defendant's breach.

71.     Plaintiff and members of the Class are entitled to damages, including but not limited to tuition refunds, fee refunds, and/or room and board refunds.

## COUNT II

## UNJUST ENRICHMENT

72.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

73.     At all times relevant hereto, Plaintiff and the Class Members directly conferred non-gratuitous benefits upon Defendant, *i.e.*, monetary payments for tuition, fees, and/or room and board, so that Plaintiff and the Class Members could avail themselves of in-person educational opportunities and utilize campus facilities, including campus dormitories.

74.     Defendant knowingly accepted the benefits conferred upon it by Plaintiff and the Class Members.

75.     Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

76.     Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, because of Defendant's unjust and inequitable actions, Plaintiff and members of the Class are entitled to refunds for tuition, fees, and/or room and board.

77.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

-17-

78.     Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to, and seek disgorgement and restitution of, the benefits unjustly retained, whether in whole or in part, including through refunds for tuition, fees, and/or room and board.

## COUNT III

## CONVERSION

79.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

80.     Plaintiff and the other members of the Class have an undisputed right to receive educational services, activities, and access to Defendant's facilities for the Spring 2020 term. Plaintiff and the Class Members obtained such rights by paying Defendant tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant.

81.     Prior to or by the start of the Spring 2020 term, Plaintiff and the members of the Class paid and/or agreed to pay Defendant for services to be provided at a later date. These funds are held for services to be provided at a later date.

82.     Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing.

83.     All the while, Defendant has unlawfully retained the monies Plaintiff and the Class Members paid Defendant, and continues to hold such monies without providing the agreed-upon services, as well as barred Plaintiff from Defendant's facilities.

84.     Defendant deprived Plaintiff and the other Class Members of the rights and benefits for which they paid Defendant tuition, fees, and/or room and board.

-18-

85.     Plaintiff and/or Class Members have requested and/or demanded that Defendant issue refunds.

86.     Defendant's interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class, in that they paid for rights, benefits, services, and/or facility access, but Defendant has deprived Plaintiff and members of the Class of their rights, benefits, services, and/or facility access.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or judgment against Defendant including:

A.     Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and her counsel of record as Class Counsel;

B.     Damages in the amount of unrefunded tuition, fees, and/or room and board;

C.     Actual damages and all such other relief as provided under the law;

D.     Pre-judgment and post-judgment interest on such monetary relief;

E.     Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for tuition, fees, and/or room and board;

F.     The costs of bringing this suit, including reasonable attorney's fees; and

G.     All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Plaintiff demands trial by jury on her own behalf and on behalf of Class Members.

Dated: June 4, 2020                    Respectfully submitted,

                                       By:  _/s Craig A. Raabe_

-19-

Craig A. Raabe (ct04116)
IZARD KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
T: (860) 493-6292
F: (860) 493-6290
craabe@ikrlaw.com


Steve W. Berman (*Pro Hac Vice* Forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com


Daniel J. Kurowski (*Pro Hac Vice* Forthcoming)
Whitney K. Siehl (*Pro Hac Vice* Forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com


*Attorneys for Plaintiff, individually and on behalf of
all others similarly situated*