**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ZOEY METZNER, DOMINIC GRAVINO, DAVE BRUNEAU, RICHARD HOTTER, individually and on behalf of all others similarly situated, | No. 3:20-cv-00784-KAD |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | September 14, 2020 |
| QUINNIPIAC UNIVERSITY, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.  NATURE OF ACTION ..............................................................................................1

II.  JURISDICTION AND VENUE ...............................................................................3

III.  PARTIES ...................................................................................................................4

    A.  Plaintiffs .........................................................................................................4

    B.  Defendant .......................................................................................................6

IV.  FACTS ......................................................................................................................6

    A.  Background ......................................................................................................6

    B.  Plaintiffs contracted with Defendants for on-campus classes.................9

    C.  The Novel Coronavirus Shutdowns And Defendant's Campus Closure .............14

    D.  Defendant's refusal to issue tuition, fee, and room and board refunds constitutes a breach of contract...................................................................16

V.  CLASS ACTION ALLEGATIONS .........................................................................22

VI  CAUSES OF ACTION   COUNT I  BREACH OF CONTRACT ..................................26

    COUNT II  BREACH OF IMPLIED CONTRACT ......................................27

    COUNT III  UNJUST ENRICHMENT..................................................29

    COUNT IV  CONVERSION ...............................................................30

PRAYER FOR RELIEF ....................................................................................................31

JURY DEMAND ...............................................................................................................32

Plaintiffs, ZOEY METZNER, DOMINIC GRAVINO, DAVE BRUNEAU, and

RICHARD HOTTER, individually and on behalf of all others similarly situated, for their First

Amended Class Action Complaint ("Class Action Complaint") against Defendant QUINNIPIAC

UNIVERSITY ("Quinnipiac"), based upon personal knowledge as to their own actions and

based upon the investigation of counsel regarding all other matters, complains as follows:

## I.      NATURE OF ACTION

1.      This Class Action Complaint comes during a time of hardship for so many

Americans, with each day bringing different news regarding the novel coronavirus COVID-19.

Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and

universities across the country to shut down their campuses, evict students from campus

residence halls, and switch to online "distance" learning during the Spring 2020 semester.

2.      Despite sending students home, transitioning to online instruction, and closing its

campuses, Defendant continued to charge full tuition and fees for the Spring 2020 semester as if

nothing changed, continuing to reap the financial benefit of millions of dollars from students.

Defendant does so despite students' complete inability to continue school as normal, occupy

campus buildings and dormitories, or avail themselves of school programs, services, and events.

So while students enrolled and paid Defendant for a comprehensive academic experience,

Defendant instead offers Plaintiffs and Class Members something far less: a limited online

experience presented by Google or Zoom, void of face-to-face faculty and peer interaction,

separated from program resources, and barred from facilities vital to study. Plaintiffs and Class

Members did not bargain for such an experience.

3.      While some colleges and universities have promised appropriate and/or

proportional refunds, Defendant excludes itself from such other institutions treating students

fairly, equitably, and as required by the law. Defendant has refused to provide any tuition or fee refund for the Spring 2020 semester.

4.      In response to COVID-19, on or about March 15, 2020, Defendant informed Plaintiffs that classes would be conducted online beginning on March 18, 2020 for the remainder of the Spring 2020 semester. All on-campus events were cancelled.

5.      Despite the provision of an entirely remote undergraduate and graduate studies experience, Defendant refuses to refund or reimburse Plaintiffs and similarly situated Quinnipiac students the tuition and fees they paid for the promised on-campus instruction, services they are not being provided, events they cannot attend, and programs and activities that have been curtailed, discontinued, or closed.

6.      Essentially, students have paid Quinnipiac for in-person instruction that is no longer available to them, access to buildings they can no longer enter, technology, programs and services that Quinnipiac is no longer providing, and activities that are no longer available. Quinnipiac is thus profiting from COVID-19 while further burdening students and their families—many of whom have been laid off, become ill, lost loved ones, or are otherwise already bearing the brunt of the COVID-19 pandemic. The result is an enormous windfall to Quinnipiac. Both contract and equity demand that Quinnipiac disgorge its ill-gotten funds.

7.      Defendant's actions have financially damaged Plaintiffs and Class Members. Plaintiffs bring this action because Plaintiffs and Class Members did not receive the full-value of the services paid, did not receive the benefits of in-person instruction. They have lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs. This lawsuit seeks disgorgement and monetary damages in the amount of prorated, unused amounts of tuition, room

and board, and fees that Plaintiffs and the other Class Members paid, the benefits of which will not be provided by Defendant.

## II.   JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter presented by this Class Action Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual Class Members in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiffs allege that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Connecticut,[1] where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

9.      Venue is appropriate in this District because Defendant is located within the District of Connecticut. And on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

---

[1] About 26.2% of the students attending Quinnipiac University come from within Connecticut. https://www.collegefactual.com/colleges/quinnipiac-university/student-life/diversity/.

010920-30/1343505 V1

### III.   PARTIES

**A.   Plaintiffs**

10.     Plaintiff Zoey Metzner ("Plaintiff Metzner") is a citizen and resident of the State of Massachusetts. During the 2019–2020 academic year, Plaintiff Metzner was enrolled as a full-time student.

11.     Plaintiff Dominic Gravino ("Plaintiff Gravino") is a citizen and resident of the State of California. During the 2019–2020 academic year, Plaintiff Gravino was enrolled as a full-time student.

12.     Plaintiff Dave Bruneau ("Plaintiff Bruneau") is a citizen and resident of the State of Connecticut. Plaintiff Bruneau is the parent of two Quinnipiac undergraduate students. During the 2019–2020 academic year, Plaintiff Bruneau's daughters were enrolled as full-time students.

13.     Plaintiff Richard Hotter ("Plaintiff Hotter") is a citizen and resident of the State of New Jersey. Plaintiff Hotter is the parent of a Quinnipiac undergraduate student. During the 2019–2020 academic year, Plaintiff Hotter's child was enrolled as a full-time student.

14.     Plaintiffs are in good financial standing at Defendant, having paid in whole or in combination tuition, fees, costs, and/or room and board charges assessed and demanded by Defendant for the Spring 2020 term. Plaintiffs paid Defendant for opportunities and services they or their children did not receive, including on-campus education, facilities, services, and activities.

15.     While Plaintiffs and their children could have obtained their degrees online, Plaintiffs and/or their children specifically selected an in-person, in-class experience at Quinnipiac for the variety of educational experiences that only an in-person program can deliver. Moreover, Quinnipiac did not offer Plaintiffs' degree programs online.

-4-

16.     With Defendant's campus closure, cancellation of campus events, suspension of many campus services and programs, and transition to exclusively online instruction during the Spring 2020 semester, Plaintiffs and their children lost access to the on-campus instruction, opportunities, facilities, and services for which Plaintiffs had bargained for by selecting—and paying tuition and fees for—in-person courses and experiences.

17.     For example, Plaintiffs lost vital access to campus libraries and important facilities for studies, including classrooms, study spaces, studio spaces, and lounges that were bargained for by selecting in-person instruction.

18.     Plaintiffs paid Defendant for on-campus courses and the unique opportunities that come with them, including the ability to communicate directly with professors, utilize campus facilities and laboratories, attend office hours, and work through issues in-person. However, following the campus closure and transition to online courses, these benefits disappeared.

19.     Such a transition made it difficult for students to connect with professors, classmates, and staff, a critical component to the bargained-for on-campus experience. Whereas students could ask questions before, during, or after class. Following the shift to online learning it became very difficult for students to communicate with their professors, with some not timely responding (or responding at all) to information requests.

20.     The transition was challenging for Quinnipiac faculty, many of whom were unprepared to effectively use online educational delivery technology for both classwork and student interaction. As a result, while Plaintiffs and Class Members paid for students' in-person access to renowned faculty as essential to the Quinnipiac experience, Defendant excluded students from such access for the full Spring 2020 semester.

**B.**     **Defendant**

21.     Defendant Quinnipiac University is an institution of higher learning located in Hamden, Connecticut. Defendant provides Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charges Plaintiffs and the Class Members.

## IV.     FACTS

**A.**     **Background**

22.     Founded in 1929, Quinnipiac has a current enrollment of approximately 10,290 students enrolled in Defendant's College of Arts and Sciences and eight professional schools.

23.     As of June 30, 2019, Defendant's total endowment net assets exceeded $496.9 million, with Defendant reporting operating revenues of $365.7 million, including therein $277.1 million in net tuition and fees.

24.     A significant focus of Defendant's efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff, a wide array of in-person services, opportunities, and extra-curricular activities, state-of-the-art facilities, and much more.

25.     A few examples of such efforts to promote that experience follow.

26.     As primarily a residential university, approximately 72% of all undergraduates live on campus, with 95% of freshman living on campus.[2]

27.     To that end, Quinnipiac notes that students will "do more than earn a degree. You'll become part of our vibrant community were students rally around common interests, passions and causes. You'll see this collective passion come to life through our 146 student-run

---

[2] https://www.qu.edu/admissions/undergraduate/frequently-asked-questions.html.

organizations, while volunteering in the local community or through service-learning

opportunities available around the world. You'll hear it when you experience artists like DJ

Tiesto, Kesha and Jason Derulo at our exclusive Wake the Giant concert series each spring.

You'll feel it when you join your fellow Bobcats to cheer on our nationally ranked hockey and

basketball teams in the York Hill Campus arenas."[3]

28.     Quinnipiac also highlights its campuses as being "purposefully designed for living

and learning."[4] As Defendant explains:

> We challenge the traditional ideas of "campus life." Wide-open
> spaces, meandering pathways, skylights, lofted ceilings and
> intimate courtyards enhance the sense of community.
>
> From residence halls modeled after European ski villages to
> brownstone-style buildings with full kitchens and patios, we
> purposefully designed our living spaces with personal comfort,
> connecting with friends and student safety in mind.
>
> Our outdoor spaces are more than just green grass. They are places
> where you'll gather with friends for cookouts, play a pick-up game
> of basketball or simply study with the beauty of New England as
> your backdrop.
>
> Beyond our residential and recreational spaces, the facilities on
> each of our 3 campuses are second to none. Here, you'll find a
> network of libraries, labs, studios and facilities designed to ensure
> you have the educational resources you need at your fingertips.[5]

29.     Academically, Quinnipiac describes itself as "unique" because of its "focus on

career readiness" explaining that "[t]hrough a combination of classroom theory and practical

---

[3] https://www.qu.edu/life/student.html.

[4] *Id.*

[5] *Id.*

experience tailored to meet what the market demands, we expose you to the live-changing challenge of working and learning in the community and around the globe."[6]

30.     To assist students on their path, Quinnipiac helps students "create a personalized roadmap, based on our proprietary advising model. . . . Your plan will include a combination of classroom and immersive experiential learning purposefully designed to transform you from a curious student to an extraordinarily well-prepared professional."[7]

31.     And as Quinnipiac notes, "[a]cross our three campuses, you'll be surrounded by our state-of-the-art facilities and caring faculty, where you will experience living in the beauty and charm of southern New England."[8]

32.     While many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (*see*, *e.g.*, Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), Defendant is not such a school.

33.     In fact, Quinnipiac's Spring 2020 course listings show that classes were offered in-person at specific locations on campus. The sample screenshots below show classes such as (UC) Industrial-Organizational Psychology meeting in Arnold Bernhard Library Room 218[9] [Exhibit A] and multiple sections of (UC) Introduction to Psychology meeting in different

---

[6] https://www.qu.edu/academics/a-quinnipiac-education.html.

[7] *Id.*

[8] https://www.qu.edu.

[9] (UC) Industrial-Organizational Psychology Spring 2020 Course Description attached as Exhibit A, located at https://web.archive.org/web/20200424164700/https://www.qu.edu/student-resources/course-finder/course.1855.html#SP.

classrooms on campus including Tator Hall Rooms 116, 232, and 317, College of Arts & Sciences 1 Room 216 and 219, and Echlin Center Room 201:[10] [Exhibit B].

## Spring 2020

**Section 01**

| | |
|---|---|
| Instructor | Carrie Bulger |
| Days | M,W,F |
| Time | 1:00 pm - 1:50 pm |
| Location | Arnold Bernhard Library Room 218 |

## Spring 2020

**Section 01**

| | |
|---|---|
| Instructor | Andrew Carrano |
| Days | M,W,F |
| Time | 3:00 pm - 3:50 pm |
| Location | Tator Hall Room 232 |

**Section 02**

| | |
|---|---|
| Instructor | Andrew Carrano |
| Days | M,W,F |
| Time | 4:00 pm - 4:50 pm |
| Location | Tator Hall Room 232 |

**Section 03**

| | |
|---|---|
| Instructor | Melissa Gibbons |
| Days | M,W,F |
| Time | 3:00 pm - 3:50 pm |
| Location | College of Arts & Sciences 1 Room 219 |

**Section 04**

| | |
|---|---|
| Instructor | Melissa Gibbons |
| Days | M,W,F |
| Time | 4:00 pm - 4:50 pm |
| Location | College of Arts & Sciences 1 Room 219 |

**Section 05**

| | |
|---|---|
| Instructor | Melissa Gibbons |
| Days | M,W |
| Time | 5:00 pm - 6:15 pm |
| Location | College of Arts & Sciences 1 Room 219 |

**Section 06**

| | |
|---|---|
| Instructor | Ralph Nuzzo, NCSP |
| Days | T,TH |
| Time | 12:30 pm - 1:45 pm |
| Location | Tator Hall Room 317 |

**B.      Plaintiffs contracted with Defendants for on-campus classes.**

34.     For the Spring 2020 semester, Plaintiffs contracted with Quinnipiac—and paid a premium—specifically for *on-campus* courses and programs.

---

[10] (UC) Introduction to Psychology Spring 2020 Course Description attached as Exhibit B, located at https://web.archive.org/web/20200424160813/https://www.qu.edu/student-resources/course-finder/course.3028.html.

35.     Quinnipiac's 2019–2020 Official Bulletin ("Bulletin") lays out the terms of the contract between Quinnipiac and Plaintiffs and Class Members and throughout distinguishes between on-campus students and courses and their online counterparts.[11] [Exhibit C].

36.     For example, the Bulletin establishes that "on-campus" students in both undergraduate and graduate programs have unique academic calendars, registration procedures, and withdrawal refund schedules.[12]

37.     In addition to these administrative differences between on-campus and online students, the Bulletin repeatedly explains the differences in on-campus and online courses. As the Bulletin lays out, courses provided on-campus routinely offer students advantages and opportunities that are only available through on-campus, in-person instruction. For example, the Bulletin's descriptions for on-campus courses refer to: "a supportive learning environment characterized by small classes with access to faculty and well-equipped laboratory facilities where students can actively engage in the investigative process of science . . . ,"[13] "the benefit of learning in state-of-the-art facilities,"[14] "hands-on experience,"[15] "campus laboratory experience"[16] and dozens of other references to benefits exclusive to on-campus instruction.

---

[11] Ex. C, found at https://www.qu.edu/content/dam/qu/documents/academic-catalogs/2019-2020-academic-catalog.pdf.

[12] *Id.* at 12–15, 150.

[13] *Id.* at 166.

[14] *Id.* at 307.

[15] *Id.* at 210, 232, 234, 237, 240, 249, 274.

[16] *Id.* at 310, 617, 618, 619.

38.     While Defendant offers fully online bachelor's degree, master's degree, doctoral degree and certificate programs, The Bulletin differentiates between the "traditional on-campus programs" and online-only programs.[17]

39.     These online-only offerings are separately marketed and must be affirmatively selected, distinct from the in-person, on-campus education experience chosen by the vast majority of Quinnipiac students.

40.     Plaintiffs selected on-campus courses and paid for the in-class and educational experiences that only an in-person program can deliver, such as the ability to access important university facilities, services, and faculty in-person.

41.     In fact, Quinnipiac's website contains a Course Finder that lists all of the available classes for each semester. The Course Finder has a separate check box that says "Online Courses Only."[18] Neither Plaintiffs Metzner or Gravino, nor the children of Plaintiffs Bruneau or Hotter, sought "Online Courses Only" in registering for classes for the Spring 2020 semester.

42.     Defendant's usual and customary practices when students register for on-campus courses and pay tuition for such courses is to provide on-campus instruction. Plaintiffs' and Class Members' reasonable expectation when registering for classes for the Spring 2020 semester was that those classes would be provided on-campus, consistent with Defendant's usual and customary practice.[19]

---

[17] *Id.* at 356, 496–497.

[18] https://www.qu.edu/student-resources/course-finder.term-1.search.html

[19] *Id.* at 11.

010920-30/1343505 V1

43.     Plaintiffs and Class Members had the reasonable expectation that Defendant would provide the in-person educational experience and use of its facilities provided in Defendant's publications, including but not limited to the Bulletin, catalogs, handbooks, brochures, advertisements, and other promotional materials.

44.     The combination of the express terms of the Bulletin, Defendant's publications and Defendant's usual and customary practice constituted an offer to any students attending Quinnipiac to register for on-campus classes. If accepted by Plaintiffs and Class Members who did in fact register for such on-campus classes, in accordance with Quinnipiac's policies and procedures and usual custom and practice, and who timely paid tuition for those on-campus classes, Defendant became contractually obligated to provide on-campus classes to Plaintiffs and Class Members.

45.     In light of the terms laid out in the Bulletin, Defendant's publications, and Defendant's usual and customary practice, Plaintiffs and Plaintiffs' children registered for on-campus courses for the Spring 2020 semester. Defendant accepted their registration as an on-campus student taking on-campus courses and charged Plaintiffs and undergraduate students the following for the Spring 2020 semester: $24,280 in full-time tuition ($2,023.33–$1,517.50 per credit for the traditional 12–16 credit hours; $1,075 per credit for students taking more or less than 12–16 credit hours) along with a technology fee of $720 per year. Defendant's undergraduate room and board fees ranged from $14,360 to $18,270 per year, while dining service levels ranges from $1,685 to $1,885 per semester. Defendant assessed graduate students typically at $1,055 per credit hour, along with a full-time technology fee of $40 a credit (not to exceed $360 per semester).

46.     Such charges for study are significantly higher than online-only programs, including the certain programs that Defendant offers.

47.     Schools delivering an online-only educational experience assess significantly discounted rates for delivering such educational services. For example, Western Governor's University charges a flat-rate tuition at $3,370 per term while Southern New Hampshire University charges $960 per course for online undergraduate programs and $1,881 per course for online graduate programs.

48.     As to Defendant, for the Spring 2020 term, Defendant also charged students significantly less per credit hour for online courses. For example, Defendant charged students between $515 and $575 in tuition per credit for the undergraduate online degree programs that it offers.[20] And for its graduate degree programs, Defendant's tuition ranged from $705 to $995 per credit hour.[21]

49.     The Bulletin also describes the specific opportunities on-campus life provides for students: "[o]ur collaborative co-curricular approach engages members of the Quinnipiac community in experiential learning opportunities, comprehensive campus-wide programming, high-impact service projects and dynamic leadership ventures."[22]

50.     Plaintiffs selected Quinnipiac because of the networking and collaboration with professors and professionals offered through Quinnipiac's on-campus program. Plaintiffs contracted with Defendant and agreed to pay the high cost of Quinnipiac's on-campus tuition

---

[20] https://quonline.quinnipiac.edu/financial-aid-and-tuition/tuition-and-fees.php.

[21] *Id.*

[22] *Id.* at 23.

because the program offered access to opportunities that were based on in-person classes and study.

51.     Plaintiffs and Class Members paid Quinnipiac tuition and fees for on-campus courses—and the benefits, services, opportunities, and facilities that came with them—for the Spring 2020 semester. In registering and paying Quinnipiac tuition and fees for the Spring 2020 semester, Plaintiffs and Class Members understood, per the Bulletin, Quinnipiac's publications, and Quinnipiac's usual and customary practice, that the classes they bargained and paid for would be administered on-campus for the duration of the semester, and that they would get a full semester's worth of access to on-campus facilities, services, and resources.

52.     However, as set forth further below, since March 15, 2020, Plaintiffs have not been permitted to attend classes on-campus or had access to campus benefits.

**C.     The Novel Coronavirus Shutdowns And Defendant's Campus Closure**

53.     On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19.

54.     By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

55.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

56.     By March 11, 2020, the World Health Organization declared COVID-19 a global pandemic.

010920-30/1343505 V1

57.     Travel and assembly restrictions began domestically in the United States on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities followed the shelter-in-place orders and as of April 6, 2020, 297 million people in at least 38 states, 48 counties, 14 cities, the District of Columbia, and Puerto Rico were urged or directed to stay home.

58.     On or about March 9, 2020, Defendant requested that its faculty analyze and outline "what it will take for you to deliver your courses and final exams online."[23]

59.     On March 10, 2020, Defendant announced that "We will begin online delivery of classes on Wednesday, March 18, 2020" and that "[s]tudents will not return to campus until Sunday, March 22."[24]

60.     On March 15, 2020 and effective March 16, 2020 until further notice, Defendant asked "all Quinnipiac employees who have the capability to perform their job duties remotely to shift to a work-from-home arrangement."[25]

61.     Also on March 15, 2020, Defendant announced the effective closure of its campus, directing that "[s]tudents will not return to campus after the extended spring break, and the remainder of the spring semester will be delivered online." Defendant also cancelled all university events and athletic programs.[26]

---

[23] https://www.qu.edu/today/coronavirus-update-03092020.html.

[24] https://www.qu.edu/today/coronavirus-community-update-03102020.html.

[25] https://www.qu.edu/today/coronavirus-faculty-staff-update-03152020.html.

[26] https://www.qu.edu/today/coronavirus-update-03152020.html.

62.     Notably, Defendant's decision to close its campus and move classes exclusively online occurred prior to the effective date of Connecticut's "Stay Safe, Stay At Home" order by Governor Ned Lamont, *i.e.*, Monday, March 23, 2020 at 8:00 p.m.[27]

63.     Though the reasons for such closures are justified, the fact remains that such closures and cancellations present significant loss to Plaintiffs and the Class Members.

**D.      Defendant's refusal to issue tuition, fee, and room and board refunds constitutes a breach of contract.**

64.     Quinnipiac recognized that moving classes online presented problems. The conversion to virtual learning has not compared and cannot compare to the live classes and access to facilities bargained for and paid for by Plaintiffs and Class Members and promised to be delivered by Defendant.

65.     The result of this approach is that Plaintiffs and Class Members were provided with an online substitute for the hands-on, in-person coursework for which they contracted—and for which they paid.

66.     Yet despite providing students with only emergency and unplanned online educational experiences that are vastly different from what Plaintiffs and Class Members contracted and paid for, Quinnipiac has refused to provide students with prorated reimbursements of tuition and fees.

67.     The remote, online learning classes offered to Spring 2020 students since March deprived students of in-person learning from their peers and school faculty. The move to these remote classes also deprived students of access to the facilities, materials, and opportunities only offered on Quinnipiac's physical campus, including laboratory and research experience, use of

---

[27] https://portal.ct.gov/Office-of-the-Governor/News/Press-Releases/2020/03-2020/Governor-Lamont-Signs-Executive-Order-Asking-Connecticut-Businesses-and-Residents-Stay-Safe.

-16-

on campus facilities, such as the gym and libraries, and use of on-campus services and events such as sporting events, end-of-year programs, lectures, and various student services.

68.     The online classes Plaintiffs and their peers have been provided are not equivalent to the in-person, campus experience that Plaintiffs and other Quinnipiac students chose for their university education. The tuition and fees that Defendant charged were predicated on access to,constant interaction with, and feedback from peers, mentors, professors, and guest lecturers; access to technology, libraries, and laboratories; opportunities to attend or participate in spectator sports and athletic programs; access to student government and health services; and participation in extracurricular groups and learning, among other things.

69.     College students across the country have offered apt descriptions of the loss they have experienced as a result of the pandemic, highlighting the disparity between students' bargained for educational experience and the experience that colleges and universities, including Defendant, now provide.

70.     For example, as reported in The Washington Post, one student "wonders why he and others . . . are not getting at least a partial tuition refund. Their education, as this school year ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social experience students imagined when they enrolled. But tuition remains the same: $27,675 per semester . . . 'Our faculty are doing a good job of working with us,' said Patel, 22, who is from New Jersey. 'But at the end of the day, it's not the same as in-person learning . . . It shouldn't just be a part of the business model where, no matter what happens, you have to pay the same amount. The cost needs to reflect some of the realities.'"[28]

---

[28] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/.

71.     As another example, as reflected in a Change.org petition, with nearly 5,000 supporters, students at another major university highlight the loss experienced by students: "As a result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of emergency in Illinois. In response, Northwestern University made the sensible decision to offer all Spring 2020 courses online for the start of the quarter and will likely extend this to the rest of the quarter as the situation worsens. While this is certainly the right call to ensure the health and safety of all students, Northwestern's tuition and fees do not accurately reflect the value lost by switching to online education for potentially an entire term. For the following reasons, we are seeking a partial refund of tuition and full refund of room and board for the Spring 2020 quarter. Since Northwestern is a top private university, the estimated annual cost of attendance of $78,654 goes towards a comprehensive academic experience that cannot be fully replicated online. Due to the COVID-19 crisis, students paying for the Northwestern experience will no longer have access to invaluable face-to-face interaction with faculty, resources necessary for specific programs, and access to facilities that enable learning."[29]

72.     Another university's student newspaper reflects another example: "At this time, most of the campus and dorms need not be rigorously maintained. No events will be held, nor speakers hosted. The world-class education that consists in having opportunities to work and interact with academics and peers (not to mention the vast numbers of innovators, creators, doctors, organizers, and more that congregate on our campus) will no longer be provided."[30]

73.     A July 2020 survey of 13,606 college students in the United States found that 75% of students are unhappy with their online classes, and 93% percent believe that if classes are

---

[29] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.

[30] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.

-18-

provided online, tuition should be lowered.[31] Students are so disappointed in online instruction that more than one-third are considering withdrawing from school entirely.[32]

74.     Quinnipiac students expressed similar concerns. In a Quinnipiac Chronicle article a current student explained " . . . the online courses being offered, they do not provide the same value as on-campus classes. If the value is not equal, then there are steps that should be taken. Whatever help is being provided through reimbursements, none of it will benefit students during this semester. Students should not be paying full price for half the learning experience. When one considers how expensive Quinnipiac is, as much as students may love it, it is hard to justify paying that much purely for online courses . . . "[33]

75.      Quinnipiac students also started a Change.org petition seeking partial tuition reimbursement for the Spring 2020 semester:

> "As a senior at Quinnipiac University I can tell you that transitioning to online classes has been extremely difficult and stressful. Just like most students here, we have 6+ courses that we pay a lot of money to be taught the curriculums by our professors face to face. With that being said, we understand that the COVID-19 is no ones fault, but we need to address what is happening now. We are teaching ourselves by reading posted slides and textbook chapters, which is NOT what we signed up for. In addition to teaching ourselves the material we are not qualified to teach, a lot of us have major distractions at home, especially during this time. Whether it is siblings, parents, children, pets, grandparents, or even the news, it is hard to find a time where you are not bothered for hours on end to complete your course work. Also, many of our family members and head of households are currently unemployed due to COVID-19. We deserve a partial reimbursement on our spring semester because we are not receiving the full spring semester that we initially paid for. It is not fair to anyone, but the

---

[31] https://www.cnbc.com/2020/07/27/93percent-of-college-students-say-tuition-should-be-cut-for-online-classes.html.

[32] *Id.*

[33] https://quchronicle.com/69976/opinion/online-courses-are-failing-students/.

students are facing major challenges and it can negatively impact
our grades . . . ."[34]

76.    A Quinnipiac student expressed support for tuition refunds in the "Reasons for

Signing" section of the petition commenting: "Higher education at a university, if online only

reflects a lower price usually. Just like science courses with their labs cost more in an additional

credit/credits and lab fees. Therefore, the removal of in person learning should lead to a partial

refund."[35]

77.    Another Quinnipiac student shared their struggles taking a lab course without

access to campus lab facilities.[36]

78.    Professors and administrators have also expressed dismay with schools charging

students full tuition and fees for substantially inferior online substitutes. For instance, University

of Pennsylvania Professor Jonathan Zimmerman, who specializes in the history of education,

opined that "[m]ost online instruction isn't as effective as the traditional kind."[37] Alison Byerly,

President of Lafayette College, which is offering a 10% discount to students who study from

home in the 2020–2021 academic year, similarly stated: "If you don't have access to the library,

to campus facilities, if you're not going to be on campus with students, you shouldn't have to

pay full price."[38] Peter Kastor, a Professor and Chair of the History Department at Washington

---

[34] https://www.change.org/p/quinnipiac-university-partial-reimbursement-for-quinnipiac-students.

[35] *Id.*

[36] *Id.*

[37] https://www.inquirer.com/opinion/commentary/coronavirus-remote-distance-learning-online-degrees-20200408.html.

[38] https://abcnews.go.com/US/petitions-lawsuits-students-demand-lower-tuition-online-instruction/story?id=72105974.

University in St. Louis, commented, ". . . [students] had already rejected online education when they chose a traditional campus experience." [39]

79.    Plaintiffs and Class Members paid for services they cannot use because those services were curtailed, eliminated, or because the student followed the university's instruction to leave campus and return home.

80.    Acknowledging, as a result, students would not get what they bargained for in contracting for on-campus housing and meal plans, Defendant agreed to prorate some fees and costs. On April 22, 2020, Defendant detailed the steps it would be taking to provide housing and dining credits to returning students and refunds for departing students:

> We know you have waited for answers on housing and dining credits. We have been working through the university's plan to address the $40 million in costs associated with the coronavirus that we are facing. We appreciate your patience as we have moved to finalize the best approach to providing housing and dining credits.
>
> Recognizing that our residence halls have been closed since March 15, students will receive credits for housing and dining based on housing type and the selected dining plan. If housing and/or dining were paid for by the university, those students will not be eligible for a credit.
>
> ***
>
> We will be crediting all unused spring meal points in full to returning students' Fall 2020 meal plans, and the points will be available to use throughout the 2020–21 academic year.

81.    However, Defendant has refused to provide tuition or other fee refunds. Quinnipiac notes the following in COVID-19 FAQs on its webpage in response to the question "Will students receive refunds for tuition, housing and other costs?":

---

[39] https://www.washingtonpost.com/education/2020/04/04/these-washington-university-faculty-had-rejected-online-classes-until-coronavirus-heres-how-they-made-switch/.

> The university has been focused on the health and education of our
> students and has not yet resolved the financial impact of this crisis.
> The university expects to be able to provide some level of refund
> for housing and meal plans for those graduating; for students not
> yet graduating the credit would be applied against next year's
> costs. The university will provide further details in the coming
> weeks.[40]

82.     Despite the fact that Quinnipiac students also would not get what they bargained

for in contracting for on-campus courses, opportunities, facilities, and resources, Defendant has

refused to give prorated tuition refunds or refunds for fees paid for student services that students

cannot use because those services were curtailed, eliminated, or because the student followed the

university's instruction to leave campus and return home.

## V.     CLASS ACTION ALLEGATIONS

83.     Plaintiffs sue under Rule 23(a), (b)(2), and Rule 23(b)(3) of the Federal Rules of

Civil Procedure, on behalf of themselves and a Class defined as follows:

> All people paying Defendant, in whole or in part, personally and/or
> on behalf of others, for tuition, fees, and/or room board for in-
> person instruction and use of campus facilities, but who were
> denied use of and/or access to in-person instruction and/or campus
> facilities by Defendant for the Spring 2020 academic term or any
> subsequent term.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest,

and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further

excluded from the Class is this Court and its employees. Plaintiffs reserve the right to modify or

amend the Class definition including through the creation of sub-classes if necessary, as

appropriate, during this litigation.

---

[40] https://quinnipiac.helpsite.com/articles/50818-will-students-receive-refunds-for-tuition-
housing-and-other-costs.

010920-30/1343505 V1

84.     The definition of the Class is unambiguous. Plaintiffs are members of the Class Plaintiffs seek to represent. Class Members can be notified of the class action through contact information and/or address lists maintained in the usual course of business by Defendant.

85.     Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class Members is unknown to Plaintiffs but may be ascertained from Defendant's records. However, given the thousands of students enrolled at Defendant in a given year, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

86.     Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

87.     Consistent with Rule 23(a)(2), Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees, and/or room and board.

88.     Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

a.      Whether Defendant engaged in the conduct alleged;

b.      Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiffs and Class Members;

c.      Whether Defendant breached identical contracts with Plaintiffs and Class Members;

d.      Whether Defendant violated the common law of unjust enrichment;

e.      Whether Defendant converted Plaintiffs' and Class Members' refunds and/or rights to refunds; and

f.      The nature and extent of damages and other remedies to which the conduct of Defendant entitles Class Members.

89.     The Class Members have been damaged by Defendant through its practice of denying refunds to Class Members.

90.     Plaintiffs' claims are typical of the claims of the other Class Members under Rule 23(a)(3). Plaintiffs and/or their children were students enrolled at Defendant for the Spring 2020 term. Like other Class Members, Plaintiffs and/or their children were instructed to leave Defendant's campus, forced to take online classes, and have been completely or partially denied a refund for tuition, fees, and/or room and board.

91.     Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiffs are familiar with the basic facts that form the bases of the Class Members' claims. Plaintiffs' interests do not conflict with the interests of the other Class Members they seek to represent. Plaintiffs have retained counsel competent and experienced in class action litigation and intend to prosecute this action vigorously. Plaintiffs' counsel has successfully prosecuted complex class actions, including consumer protection class

-24-

actions. Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the Class Members.

92.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class Members under Rule 23(b)(3). The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

93.     In addition under Rule 23(b)(3)(A), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

94.     Under Rule 23(b)(3)(C), it is desirable to concentrate the litigation of the claims of Plaintiffs and Class Members in this forum given that Defendant is located within this judicial district and discovery of relevant evidence will occur within this district.

95.     Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties per Rule 23(b)(3)(D).

## VI    CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

96.    Plaintiffs restate and re-allege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein.

97.    Plaintiffs and Class Members entered into identical, binding contracts with Defendant by accepting Defendant's offer to register for on-campus classes in accordance with the terms of the Bulletin, Defendant's publications, and Defendant's usual and customary practice of providing on-campus courses.

98.    It was the reasonable expectation of Plaintiffs and Class Members and Defendant that Defendant would provide on-campus—as opposed to online—classes and instruction, and use of Defendant's facilities as mutually agreed in accordance with Defendant's usual and customary practice of providing on-campus courses, and as provided in Defendant's publications, including but not limited to the Bulletin, brochures, advertisements, and other promotional materials.

99.    Under their contracts with Defendant, and Defendant's usual and customary practice of providing on-campus courses, Plaintiffs and Class Members registered for on-campus courses and paid Defendant tuition, fees, and/or room and board charges for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services.

100.    A material term of the bargain and contractual relationship, whether express or implied, was that Defendant would provide on-campus courses and access to on-campus facilities and services. Plaintiffs and Class Members have fulfilled all requirements of their mutually agreed contracts, having followed the Bulletin's policies, procedures, and requirements for registering and paying for on-campus courses and access to on-campus facilities and services.

-26-

Plaintiffs and Class Members have paid Defendants for all Spring 2020 term financial assessments.

101.    However, Defendant has breached such contracts, failed to provide those on-campus classes and/or services, and has not otherwise performed as obligated and required by the contracts between Plaintiffs and Class Members and Defendant. Defendant moved all classes to online classes, restricted or eliminated Class Members' ability to access university facilities, and/or evicted Plaintiffs and/or their children and Class Members from campus housing. In doing so, Defendant has deprived and continues to deprive Plaintiffs and Class Members from the benefit of their bargains with Defendant.

102.    Plaintiffs and Class Members have been damaged as a direct and proximate result of Defendant's breach. The online classes provided by Defendant are objectively different from, and less valuable than, the on-campus classes for which the parties contracted.

103.    Plaintiffs and Class Members are entitled to damages, including but not limited to tuition refunds, fee refunds, and/or room and board refunds.

## COUNT II
## BREACH OF IMPLIED CONTRACT

104.    Plaintiffs restate and re-allege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein.

105.    Plaintiffs plead this Count in the alternative to Count I.

106.    Plaintiffs and Class Members entered into an implied contract by accepting Defendant's offer to register for on-campus classes and use of Defendant's facilities in accordance with Defendant's usual and customary practice of providing on-campus courses.

107.    Under the implied contract, Plaintiffs and Class Members registered for on-campus courses.

108.     It was the reasonable expectation of Plaintiffs and Class Members that Defendant would provide them with on-campus—as opposed to online—classes and instruction and use of Defendant's facilities as mutually agreed and intended in accordance with Defendant's publications including, brochures, advertisements, and other promotional materials and Defendant's usual and customary practice of providing on-campus courses.

109.     Plaintiffs and Class Members accepted and intended to use and enjoy Defendant's on-campus classes and facilities.

110.     Plaintiffs and Class Members have fulfilled all expectations of their mutual agreement, by registering and paying for on-campus courses and access to on-campus facilities and services for the Spring 2020 semester. Plaintiffs and Class Members have paid Defendant for all Spring 2020 semester financial assessments.

111.     However, Defendant breached the implied contract, failed to provide those on-campus classes and/or services, and has not otherwise performed as obligated and required by the implied-in-fact contract between Plaintiffs and Class Members and Defendant. Defendant moved all classes to online classes, restricted or eliminated Class Members' ability to access university facilities, and/or evicted Plaintiffs and/or their children and Class Members from campus housing. In doing so, Defendant has deprived and continues to deprive Plaintiffs and Class Members from the benefit of their bargains with Defendant.

112.     Plaintiffs and Class Members have been damaged as a direct and proximate result of Defendant's breach. The online classes provided by Defendant are objectively different from, and less valuable than, the on-campus classes for which the parties entered into an implied contract. Plaintiffs and Class Members are entitled to damages, including but not limited to tuition refunds, fee refunds, and/or room and board refunds.

## COUNT III
## UNJUST ENRICHMENT

113.    Plaintiffs restate and re allege, and incorporate herein by reference, the preceding

paragraphs as if fully set forth herein.

114.    Plaintiffs plead this Count in the alternative to Counts I and II.

115.    To the extent Defendant contends that the Bulletin permits it to unilaterally and

without notice change the terms under which Plaintiffs and/or their children and Class Members

were to receive instruction—from on-campus to online—the promises made by Defendant to

Plaintiffs and Class Members to provide on-campus instruction were illusory and no contract

exists between the parties.

116.    At all times relevant hereto, Plaintiffs and Class Members directly conferred non-

gratuitous benefits upon Defendant, *i.e.*, monetary payments for tuition, fees, and/or room and

board, so that Plaintiffs and Class Members could avail themselves of in-person educational

opportunities and utilize campus facilities, including campus dormitories.

117.    Defendant knowingly accepted the benefits conferred upon it by Plaintiffs and

Class Members.

118.    Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by

Plaintiffs and members of the Class.

119.    Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs

and members of the Class, with full knowledge and awareness it would be unjust and inequitable

to retain the benefit provided by Plaintiffs and Class Members for in-person instruction, access to

Defendant's facilities and housing services under the circumstances because Defendant moved

all classes online, restricted or eliminated Plaintiffs and/or their children and Class Members'

ability to access university facilities, and/or evicted Plaintiffs and/or their children and Class

Members from campus housing.

120.    Due to Defendant's unjust and inequitable actions, Plaintiffs and members of the

Class are entitled to refunds for tuition, fees, and/or room and board.

121.    Defendant knew Plaintiffs enrolled at Quinnipiac and paid Defendant non-

gratuitous benefits for a comprehensive academic experience, including in-person classes,

opportunities to network with students and professors in-person, access to campus buildings and

dormitories, and to avail themselves of school programs and events.

122.    Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and

members of the Class under these circumstances made Defendant's retention of the non-

gratuitous benefits unjust and inequitable.

123.    Because Defendant's retention of the non-gratuitous benefits conferred by

Plaintiffs and Class Members is unjust and inequitable, Plaintiffs and Class Members are entitled

to, and seek disgorgement and restitution of, the benefits unjustly retained, whether in whole or

in part, including through refunds for tuition, fees, and/or room and board.

## COUNT IV
## CONVERSION

124.    Plaintiffs restate and re-allege, and incorporate herein by reference, the preceding

paragraphs as if fully set forth herein.

125.    Plaintiffs and/or their children and Class Members had an undisputed right to

receive educational services, activities, and access Defendant's facilities for the Spring 2020

term. Plaintiffs and Class Members obtained such rights by paying Defendant tuition, fees,

and/or room and board and by otherwise remaining in good standing with Defendant.

010920-30/1343505 V1

126.     Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiffs and Class Members by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while, Defendant has unlawfully retained the monies Plaintiffs and Class Members paid Defendant as well as barred Plaintiffs and Class Members from Defendant's facilities.

127.     Defendant deprived Plaintiffs and Class Members of the rights and benefits for which they paid Defendant tuition, fees, and/or room and board.

128.     Plaintiffs and/or Class Members have requested and/or demanded that Defendant issue refunds.

129.     Defendant's interference with the rights and services for which Plaintiffs and Class Members paid damaged Plaintiffs and Class Members, in that they paid for rights, benefits, services, and/or facility access, but Defendant has deprived Plaintiffs and Class Members of their rights, benefits, services, and/or facility access.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class Members request that the Court enter an order or judgment against Defendant including:

A.     Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

B.     Damages in the amount of unrefunded tuition, fees, and/or room and board;

C.     Actual damages and all such other relief as provided under the law;

D.     Pre-judgment and post-judgment interest on such monetary relief;

-31-

E.      Other appropriate injunctive relief as permitted by law or equity, including an

order enjoining Defendant from retaining refunds for tuition, fees, and/or room and board;

F.      The costs of bringing this suit, including reasonable attorney's fees; and

G.      All other relief to which Plaintiffs and members of the Class may be entitled by

law or in equity.

## JURY DEMAND

Plaintiffs demand trial by jury on their own behalf and on behalf of Class Members.

Dated: September 14, 2020                   Respectfully submitted,

By: */s Craig A. Raabe*
        Craig A. Raabe (ct04116)
IZARD KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
T: (860) 493-6292
F: (860) 493-6290
craabe@ikrlaw.com

Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Daniel J. Kurowski (*Pro Hac Vice*)
Whitney K. Siehl (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

Sarah N. Westcot (*Pro Hac Vice* forthcoming)
BURSOR & FISHER, P.A.
701 Brickell Ave, Suite 1420
Miami, FL 33131
(305) 330-5512
swestcot@bursor.com

Joseph I. Marchese (*Pro Hac Vice* forthcoming)
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, NY 10019
(646) 837-7410
jmarchese@bursor.com

*Attorneys for Plaintiffs, individually and on behalf of all others similarly situated*

-33-