UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ZOEY METZNER, DOMINIC GRAVINO, | : | |
| DAVE BRUNEAU, and RICHARD HOTTER, | : | |
| individually and on behalf of all others | : | |
| similarly situated, | : | CIVIL NO. 3:20-cv-00784 |
| | : | |
| Plaintiffs, | : | |
| V. | : | |
| | : | |
| QUINNIPIAC UNIVERSITY, | : | OCTOBER 12, 2020 |
| | ; | |
| | ; | |
| Defendant. | : | |

**QUINNIPIAC UNIVERSITY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS RENEWED MOTION TO STAY DISCOVERY**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.   BACKGROUND ........................................................................................................ 1

II.  LEGAL ARGUMENT ............................................................................................... 4

    A.   Legal Standard ................................................................................................. 4

    B.   A Stay of Discovery is Appropriate Because Quinnipiac's Motion to Dismiss is Based on Substantial Legal Grounds and Will Likely Eliminate or Narrow the Issues ........................................................................................... 6

    C.   The Breadth of Discovery Weighs in Favor of Staying Discovery ................... 12

    D.   The Balance of Hardships Weighs in Favor of Staying Discovery ................... 16

III. CONCLUSION ........................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Bank v. City of Menasha*,
627 F.3d 261 (7th Cir. 2010) ................................................17

*United States ex rel. Ameti v. Sikorsky Aircraft Corp.*,
No. 3:14-CV-1223(VLB), 2016 WL 10490528 (D. Conn. Nov. 28, 2016) ....................6, 16

*Aztec Energy Partners, Inc. v. Sensor Switch, Inc.*,
531 F. Supp. 2d 226 (D. Conn. 2007) ................................................10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................4

*Belloso v. Asplundh Tree Expert, Co.*,
No. 618CV460ORL40TBS, 2018 WL 4407088 (M.D. Fla. Sept. 17, 2018) ..........................13

*Boelter v. Hearst Comms., Inc.*,
15 Civ. 03934, 2016 WL 361554 (S.D.N.Y. Jan. 28, 2016)................................................11

*CenCor, Inc. v. Tolman*,
868 P.2d 396 (Colo. 1994) (en banc)................................................7

*Chudasama v. Mazda Motor Corp.*,
123 F.3d 1353 (11th Cir. 1997) ................................................11

*Coster v. Duquette*,
119 Conn. App. 827 (2010) ................................................10

*Cross v. Univ. of Toledo*,
No. 2020-00274-JD, 2020 WL 4726814 (Ohio Ct. Cl. Jul. 8, 2020) ......................................7

*Cuartero v. United States*,
No. 3:05CV1161 RNC, 2006 WL 3190521 (D. Conn. Nov. 1, 2006) ...............5, 6, 10, 11, 17

*Daniels v. Dataworkforce LP*,
No. 14-CV-00822-KMT, 2014 WL 4783670 (D. Colo. Sept. 25, 2014)................................13

*Deming v. Nationwide Mut. Ins. Co.*,
275 Conn. 745 (2006) ................................................10

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)..................................................................................................4

*In re First Constitution Shareholders Litig.*,
    145 F.R.D. 291 (D. Conn. 1991)........................................................................6, 12, 16

*Granite Commc'ns, Inc. v. One Commc'ns Corp.*,
    No. 3:07-CV-1354 (PCD), 2008 WL 11381494 (D. Conn. Apr. 24, 2008) ...........................12

*Gupta v. New Britain Gen. Hosp.*,
    239 Conn. 574 (1996) ...............................................................................7, 8, 9, 10

*Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*,
    No. 09 CV 5874 (RPP), 2009 WL 2777076 (S.D.N.Y. Sept. 1, 2009) ..................................18

*ITT Corp. v. Travelers Cas. & Surety Co.*,
    No. 3:12-cv-38 (RNC), 2012 WL 2944357 (D. Conn. July 18, 2012) .......................4, 5, 6, 12

*Jarvis v. Regan*,
    833 F.2d 149 (9th Cir. 1987) ....................................................................................11

*Landis v. North Am. Co.*,
    299 U.S. 248 (1936)..................................................................................................4

*Madej v. Yale Univ.*,
    No. 3:20-cv-133 (JCH), 2020 WL 1614230 (D. Conn. Mar. 31, 2020) ..................................9

*Main St. Legal Servs. v. NSC*,
    811 F.3d 542 (2d Cir. 2016)........................................................................................4

*McDermott v. Ohio State Univ.*,
    No. 2020-00286JD, 2020 WL 5239892 (Ohio Ct. Cl. Aug. 24, 2020)....................................8

*McNeil v. Yale Univ.*,
    436 F. Supp. 3d 489 (D. Conn. 2020) ............................................................................8, 9

*Mellowitz v. Ball State Univ.*,
    No. 49D14-2005-PL-015025 (Ind. Super. Ct., Marion Cty. Aug 14, 2020).............................8

*Milanov v. Univ. of Michigan*,
    No. 20-000054-MK, 2020 Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. Jul. 27, 2020)......................8

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*,
    712 F.3d 705 (2d Cir. 2013)........................................................................................4, 17

*Peter W. v. San Francisco Unified Sch. Dist.*,
    60 Cal. App. 3d 814, 131 Cal. Rptr. 854 (1976)......................................................7

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
    No. 20-CV-00363-BLF, 2020 WL 2843369 (N.D. Cal. Apr. 10, 2020) ................................13

*Rivera v. Heyman*,
    No. 96 Civ. 4489, 1997 WL 86394 (S.D.N.Y. Feb. 27, 1997) ................................12

*Roe v. Loyola Univ. New Orleans*,
    No. 07-1828, 2007 WL 4219174 (E.D. La. Nov. 26, 2007)......................................9

*Salerno v. Fla. So. College*,
    No. 8:20-cv-1494-30SPF, 2020 WL 5583522 (M.D. Fla. Sept. 16, 2020)................................8

*Schmaltz v. Smithkline Beecham Corp.*,
    No. 08-CV-00119-WDM- MEH, 2008 WL 3845260 (D. Colo. Aug. 15, 2008) ...................13

*Scoma Chiropractic, P.A. v. Jackson Hewitt Inc.*,
    No. 2:17-CV-24-FTM-38CM, 2017 WL 5256861 (M.D. Fla. Nov. 13, 2017)......................13

*Spearman v. I Play, Inc.*,
    No. 2017CV01563TLNKJN, 2018 WL 1382349 (E.D. Cal. Mar. 19, 2018)........................13

*Stone v. Vail Resorts Dev. Co.*,
    No. 09-CV-02081-WYD-KLM. 2010 WL 148278 (D. Colo. Jan. 7, 2010) ..........................17

*Transunion Corp. v. PepsiCo, Inc.*,
    811 F.2d 127 (2d Cir. 1987)....................................................................11

*Turner v. Zickefoose*,
    No. 3:08 CV 01180 DJS, 2009 WL 2983190 (D. Conn. Sept. 14, 2009)................................6

*Vertex, Inc. v. Waterbury*,
    278 Conn. 557 (2006) ..........................................................................9

**Statutes**

20 U.S.C. § 1232g..........................................................................................14

**Other Authorities**

Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g; 34
    C.F.R. Part 99..............................................................................14

Fed. R. Civ. P. 26(c)(1)(A) ..........................................................................4

Rule 12 ...........................................................................................................................4

Rule 12(b) ....................................................................................................................11

Rule 12(b)(6) ............................................................................................................4, 11

Rule 26(c) ......................................................................................................................4

Rule 26(f) ..................................................................................................................3, 13

The Defendant Quinnipiac University ("Quinnipiac"), by and through its counsel, respectfully submits this Memorandum of Law in support of its Renewed Motion to Stay Discovery in this matter pending the Court's ruling on Quinnipiac's Motion to Dismiss the First Amended Class Action Complaint, which was filed on October 5, 2020 (Dkt. 35, 36).

## I.      BACKGROUND

This case is one of numerous putative class actions filed nationwide against colleges and universities alleging that, when classes had to be shifted to online format during the COVID-19 pandemic, students or their parents should have received refunds of tuition and fees. The Plaintiffs, Zoey Metzner, Dominic Gravino, Dave Bruneau, and Richard Hotter, seek to represent a class defined as "All people paying Defendant, in whole or in part, personally and/or on behalf of others, for tuition, fees, and/or room and board for in-person instruction and use of campus facilities, but who were denied use of and/or access to in-person instruction and/or campus facilities by Defendant for the Spring 2020 academic term or any subsequent term." (First Amended Class Action Complaint, Dkt. 25 ("Amended Complaint" or "Am. Compl.") ¶ 83.) The Plaintiffs allege that Quinnipiac did not provide them, their children who attended Quinnipiac during the spring 2020 semester, and/or other Quinnipiac students with the "comprehensive academic experience" that they paid for and "did not receive the full-value of the services paid" after Quinnipiac was forced to transition to online learning because of the COVID-19 pandemic. (*Id.* ¶¶ 2, 7.)

In the Amended Complaint, the Plaintiffs assert claims for breach of contract (Count I), breach of implied contract (Count II), unjust enrichment (Count III), and conversion (Count IV). (*Id.* ¶¶ 65-86.) The Plaintiffs seek to recover a refund of tuition and fees for the alleged

difference between the value of in-person classes and classes delivered remotely. (*Id.* ¶¶ 103, 112, 123, 128.) They also seek to recover payments made for room and board, even though the Amended Complaint acknowledges that Quinnipiac provided credits for housing and dining to returning students and refunds for departing students for the time that campus was closed (and the Amended Complaint does not allege how those credits/refunds were purportedly inadequate). (*Id.* ¶¶ 80, 103, 112, 123, 128.)

On October 5, 2020, Quinnipiac filed its Motion to Dismiss the Amended Complaint in its entirety. (Dkt. 35, 36.) As detailed in the Motion to Dismiss, all of the Plaintiffs' claims are barred by the educational malpractice doctrine, which precludes claims like the Plaintiffs' challenging the "value" of educational services. Additionally, each of the Plaintiffs' specific claims—for breach of contract, breach of implied contract, unjust enrichment, and conversion— is subject to dismissal for the following reasons:

(1)     The Plaintiffs have failed to state a claim for breach of contract because, despite an amendment of the Complaint, they have not identified a specific identifiable promise to either exclusively provide in-person on-campus instruction (even during a pandemic) or to provide a prorated refund of tuition and fees in the event an instructional format change becomes necessary. None of the provisions of Quinnipiac's 2019-2020 Official Bulletin ("Bulletin") that the Plaintiffs cite in the Amended Complaint is a specific promise to provide in-person on-campus instruction at all times. Nor is there any provision in the Bulletin that governs the manner or format in which Quinnipiac was to deliver education or services to its students. The Plaintiffs cite only broad aspirational language in the Bulletin regarding the residential on-campus experience. In contrast, specific provisions of the Bulletin make clear that tuition refunds are only available in certain limited situations—none of which apply here. The Bulletin does **not** provide that refunds are available if the means of instruction changes or if a student is dissatisfied with how a class was taught. The Plaintiffs have also failed to state a breach of contract claim because they have not adequately alleged that the educational program provided by Quinnipiac was defective in a fundamental respect that is objectively measurable, or that Quinnipiac acted in bad faith by closing its

campus and transitioning to online learning in response to the pandemic (to the contrary, the Plaintiffs expressly acknowledge that this decision was justified).

(2)     The Plaintiffs' unjust enrichment claim cannot be sustained because there is an enforceable contract that regulates the relations of the parties, because they have not alleged the existence of an illusory contract, and because there are no allegations to support the claim that Quinnipiac unjustly retained non-gratuitous benefits conferred by the Plaintiffs.

(3)     The Plaintiffs have failed to state a claim for conversion because their assertion that they are entitled to a refund of tuition and fees sounds in contract, not the tort of conversion. The Plaintiffs' conversion claim is also unsupportable because they have not alleged sufficient facts to establish that the money they allege that they are owed belonged to them at all times, and because they have not specifically identified the amount of money that has been wrongfully withheld.

The Plaintiffs anticipate seeking broad-ranging, burdensome discovery on at least fourteen separate topics, as identified in the Rule 26(f) Report of Parties' Planning Meeting ("26(f) Report"), filed by the parties on August 17, 2020.[1] (*See* Dkt. 21.) Quinnipiac should not be required to incur the extensive burden and expense of discovery at this preliminary stage, especially when its resources are properly focused on maintaining the safety of its students, faculty, and staff during the pandemic.

If discovery proceeds and the Motion to Dismiss is later granted, then the parties will have wasted considerable expense and time.  If discovery is stayed and the Motion to Dismiss is later denied, then the Plaintiffs will have ample opportunity to conduct all of the discovery to which they are entitled at that time. Good cause exists for granting this Motion because the Motion to Dismiss would dispose of the entire action, the Motion to Dismiss is based upon substantial grounds, and the balance of equities weighs in favor of granting a stay.

---

[1] The Parties' Rule 26(f) Report was filed prior to the filing of the Amended Complaint, at which time Zoey Metzner was the only Plaintiff in this case.

## II.     LEGAL ARGUMENT

### A.     Legal Standard

The Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery. . . ." Fed. R. Civ. P. 26(c)(1)(A). The Court also has the inherent authority and broad discretion to stay proceedings "to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *see, e.g.*, *ITT Corp. v. Travelers Cas. & Surety Co.*, No. 3:12-cv-38 (RNC), 2012 WL 2944357, at *2 (D. Conn. July 18, 2012) (stay of discovery under Rule 26(c) "'is committed to the sound discretion of the court based on a showing of good cause'").

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court expressed a serious concern that, without rigorous scrutiny of the viability of a plaintiff's allegations on a Rule 12(b)(6) motion, "a plaintiff with a largely groundless claim [may] be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 558. By ratcheting up the standard a plaintiff must satisfy under Rule 12, the Supreme Court "hope[d] to avoid the potentially enormous expense of discovery" in cases that warrant dismissal. *Id.* at 559 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). Second Circuit authority is in accord, explaining that "[a] plaintiff who has failed adequately to state a claim is not entitled to discovery." *Main St. Legal Servs. v. NSC*, 811 F.3d 542, 567 (2d Cir. 2016) (finding no abuse of discretion by district court in denying party discovery where party had failed to allege a plausible claim); *see also Pension Benefit*

*Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 719 (2d Cir. 2013) (explaining that *Twombly* and *Ashcroft v. Iqbal*, 566 U.S. 662 (2009), were intended to prevent the defendant from being forced to undertake burdensome discovery if the complaint fails to state a claim).

Courts in this district nonetheless have invoked their authority to stay discovery "to avoid potentially expensive and wasteful discovery during the pendency of a determination which could potentially reshape pending claims." *ITT Corp.*, 2012 WL 2944357, at *2 (granting motion to stay discovery in class action) (internal quotation marks omitted).

Further, staying discovery is particularly appropriate pending a motion to dismiss which could significantly narrow, if not eliminate, the issues in the case, because proceeding with discovery while the motion is pending would waste the parties' resources and constitute an undue burden on the parties. *Cuartero v. United States*, No. 3:05CV1161 RNC, 2006 WL 3190521, at *3 (D. Conn. Nov. 1, 2006) (staying discovery because it would be unduly burdensome to the defendant and inefficient for both parties, the court's decision on the motion to dismiss may significantly narrow the issues, and discovery would likely result in additional motion practice).

Whether a court should stay discovery pending a motion to dismiss will depend on "the particular circumstances and posture of each case." *ITT Corp.*, 2012 WL 2944357, at *2 (internal quotation marks omitted). The Court should consider several factors, including: (1) the breadth of discovery sought by the plaintiff; (2) the burden on the defendant in responding to that discovery; (3) potential prejudice to the plaintiff; and (4) the merits of the motion to dismiss. *Id.* at *2-3. All of these factors weigh in favor of a stay of discovery here.

**B.      A Stay of Discovery is Appropriate Because Quinnipiac's Motion to Dismiss is Based on Substantial Legal Grounds and Will Likely Eliminate or Narrow the Issues**

To stay discovery pending a ruling on the Motion to Dismiss, the Court need not predict the outcome of that motion. *See Cuartero*, 2006 WL 3190521, at *2. Rather, a stay of discovery is appropriate when a motion to dismiss appears to have "substantial grounds or, stated another way, [does] not appear to be without foundation in law." *ITT Corp.*, 2012 WL 2944357, at *2 (emphasis added) (quotation omitted). This standard does not require the Court to be fully persuaded of the merits of the motion to dismiss before granting a stay. A stay is warranted so long as the Court finds that the motion raises substantial arguments for dismissal. *Cuartero*, 2006 WL 3190521, at *2; *United States ex rel. Ameti v. Sikorsky Aircraft Corp.*, No. 3:14-CV-1223(VLB), 2016 WL 10490528, at *2 (D. Conn. Nov. 28, 2016) (granting motion to stay pending resolution of motion to dismiss based on finding that there was good cause to stay discovery because the defendant's motion to dismiss was "not unfounded in law"); *Turner v. Zickefoose*, No. 3:08 CV 01180 DJS, 2009 WL 2983190, at *3 (D. Conn. Sept. 14, 2009) (staying discovery based on "issues raised in the motion to dismiss").

Quinnipiac has raised "substantial issues" regarding the viability of all of the Plaintiffs' claims. Specifically, Quinnipiac's Motion to Dismiss argues that each and every one of the Plaintiffs' counts is subject to dismissal under Connecticut's educational malpractice doctrine and that the Plaintiffs' individual counts also fail to state legally cognizable claims for breach of contract (Count One), breach of implied contract (Count Two), unjust enrichment (Count Three), and conversion (Count Four).

***First***, all of the Plaintiffs' claims should be dismissed because they are impermissible

educational malpractice claims under Connecticut law. Under Connecticut law, an educational malpractice claim "'raise[s] questions concerning the reasonableness of conduct by educational institutions in providing particular educational services to students—questions that must be answered by reference to principles of duty, standards of care, and reasonable conduct associated with the law of torts.'" *Gupta v. New Britain Gen. Hosp.*, 239 Conn. 574, 590 (1996) (quoting *CenCor, Inc. v. Tolman*, 868 P.2d 396, 399 (Colo. 1994) (*en banc*)). "Because these tort principles are difficult, if not impossible to apply in the academic environment, courts have almost universally held that claims of 'educational malpractice' are not cognizable. Among other problems for adjudication, these claims involve the judiciary in the awkward task of defining what constitutes a reasonable educational program and of deciding whether that standard has been breached." *Id.* at 590-91 (citing *Peter W. v. San Francisco Unified Sch. Dist.*, 60 Cal. App. 3d 814, 825, 131 Cal. Rptr. 854 (1976) (finding no conceivable workability of a rule of care against which [teachers'] alleged conduct may be measured)). Here, the Plaintiffs' claims are premised on allegations that they suffered a decrease in the quality and value of education that was allegedly promised to them after Quinnipiac made the decision to close its campus and transition to online learning because of the pandemic. All of the Plaintiffs' claims are quintessential educational malpractice claims because they all arise out of the Plaintiffs' complaints about the subjective quality or value of the education received following Quinnipiac's decision to close its campus and transition to online learning due to the pandemic. Under the principles enunciated in *Gupta*, those claims are invalid. *Id.* at 591.[2]

---

[2] Recent decisions from the courts of other states denying motions to dismiss similar tuition class action cases brought against other universities have no bearing on whether the Plaintiffs' claims in the present action are impermissible educational malpractice claims under Connecticut law. *See, e.g., Cross v. Univ. of Toledo*, No. 2020-00274-JD, 2020 WL 4726814, at *3 (Ohio Ct. Cl. Jul. 8, 2020) (applying Ohio civil rule of "the principle of party

***Second***, Plaintiffs' breach of contract and breach of implied contract claims must be dismissed because they have not alleged (1) that the educational program provided by Quinnipiac failed in a fundamental respect that is objectively measurable, (2) a specific identifiable promise to provide in-person on-campus instruction exclusively or to provide a prorated refund of tuition and fees, or (3) that Quinnipiac acted in bad faith by closing its classes and transitioning to online learning in response to the pandemic. "The Supreme Court of Connecticut has recognized two situations 'wherein courts will entertain a cause of action for institutional breach of a contract for educational services.'" *McNeil v. Yale Univ.*, 436 F. Supp. 3d 489, 531 (D. Conn. 2020) (quoting *Gupta*, 239 Conn. at 592). "The first occurs when 'the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field[,]' and the second occurs when an 'educational institution failed to fulfill a specific contractual promise distinct from any overall

---

presentation" in refusing to look past plaintiff's characterization of his claims as breach of contract and unjust enrichment—not educational malpractice—to the actual substance of what was plead); *Milanov v. Univ. of Michigan*, No. 20-000054-MK, 2020 Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. Jul. 27, 2020) (analyzing defendant's educational malpractice argument under Constitutional due process considerations, not Connecticut law); *Mellowitz v. Ball State Univ.*, No. 49D14-2005-PL-015025, (Ind. Super. Ct., Marion Cty. Aug 14, 2020) (denying motion to dismiss without discussion); *McDermott v. Ohio State Univ.*, No. 2020-00286JD, 2020 WL 5239892 (Ohio Ct. Cl. Aug. 24, 2020) (denying motion to dismiss after applying Ohio law to plaintiffs' claims that defendant *completely denied* them a specific identifiable program necessary for graduation, which is an exception to the educational malpractice doctrine under Connecticut law, *see Gupta*, 239 Conn. at 592-93, in contrast to a general decrease in value of the educational experience). Therefore, these decisions from other states have little impact on whether the Plaintiffs' allegations are impermissible claims of educational malpractice under Connecticut law.

Further the denial of a college's motion to dismiss in *Salerno v. Fla. So. College* supports the finding Plaintiffs' claims are prohibited under Connecticut's educational malpractice doctrine. Case No. 8:20-cv-1494-30SPF, 2020 WL 5583522, at *1 (M.D. Fla. Sept. 16, 2020). In *Salerno*, a plaintiff brought claims of breach of contract, unjust enrichment, and conversion against a college in a tuition class action that shares similarities with the present action. *Id*. The court denied defendant's motion to dismiss the breach of contract and unjust enrichment claims under Florida's educational malpractice doctrine finding that a promise to provide in-person instruction could have been implied from the defendant's statements in published materials such as its academic catalog. *Id*. at *1, 5. In doing so, however, the court emphasized that the plaintiff's claims—to the extent such an alleged implied promise existed—could not be based on the "quality" of education provided by defendant. *Id*. at *5. That distinction is instructive here as the Plaintiffs' claims are all based on the quality and value of instruction provided by Quinnipiac. As a result, the Plaintiffs' claims are quintessential educational malpractice claims under Connecticut law and should be dismissed.

obligation to offer a reasonable program.'" *Id.* (quoting *Gupta*, 239 Conn. at 592). A plaintiff may also state a claim for breach of contract if she can establish that the institution acted "arbitrarily, capriciously, or in bad faith," in a "substantial departure from academic norms." *Gupta*, 239 Conn. at 595. As detailed in Quinnipiac's Memorandum of Law in support of the Motion to Dismiss, the Plaintiffs have not stated a claim under any of these limited situations. (*See* Dkt. 35, at 17-25.)

**Third**, the Plaintiffs' unjust enrichment claim must be dismissed because they have alleged the existence of an enforceable contract. (Am. Compl. ¶ 44.) In addition to the Plaintiffs' own allegations, Connecticut courts have recognized a contractual relationship between students and educational institutions that is "defined by the catalogues, bulletins, circulars and regulations of the institution." *Madej v. Yale Univ.*, No. 3:20-cv-133 (JCH), 2020 WL 1614230, at *9 (D. Conn. Mar. 31, 2020). An unjust enrichment claim cannot be maintained where, as here, there is an enforceable contract. *See Vertex, Inc. v. Waterbury,* 278 Conn. 557, 570 n.12 (2006) ("[P]roof of an operative contract [is] incompatible with recovery on an unjust enrichment theory"). Additionally, the Plaintiffs have neither alleged the existence of an illusory contract nor sufficient allegations to support the claim that Quinnipiac unjustly retained non-gratuitous benefits conferred by the Plaintiffs, (Am. Compl. ¶¶ 113-123). *Roe v. Loyola Univ. New Orleans*, No. 07-1828, 2007 WL 4219174, at *3 (E.D. La. Nov. 26, 2007) (dismissing unjust enrichment claim brought by student against university where student paid tuition to university and received academic credits, noting that "if [the university] were required to reimburse plaintiff for the . . . tuition payments he made, plaintiff would be unjustly enriched as a result."). As such, the

Plaintiffs' allegations are insufficient to state a claim for unjust enrichment. (*See also* Dkt. 36, at 28-32.)

**Finally**, the Plaintiffs' conversion claim must be dismissed for three independent reasons. First, the Plaintiffs' conversion claim is prohibited by the educational malpractice doctrine. *Gupta*, 239 Conn. at 590. Second, the Plaintiffs' claim that they are entitled to a refund of tuition and fees sounds in breach of contract, not conversion. *Aztec Energy Partners, Inc. v. Sensor Switch, Inc.*, 531 F. Supp. 2d 226, 230-231 (D. Conn. 2007) ("Clearly, Aztec expected to receive a refund in exchange for returning the products and relinquishing title to them, but that is a claim sounding in breach of contract, not conversion."). Third, the Plaintiffs have not alleged sufficient facts to establish that "the money claimed . . . at all times belonged to the plaintiff and that the defendant converted it to his own use." *Deming v. Nationwide Mut. Ins. Co.*, 275 Conn. 745, 772 (2006).[3] Accordingly, the Plaintiffs have not alleged sufficient factual allegations to state a claim for conversion. (*See also* Dkt. 36, at 32-35.)

Because Quinnipiac's Motion to Dismiss presents several "substantial argument[s] for dismissal" and "could significantly narrow, if not eliminate, the issues in the case," proceeding with discovery pending the outcome of that motion "would waste the parties' resources and constitute an undue burden" on Quinnipiac. *See Cuartero*, 2006 WL 3190521, at *2 (internal quotation marks omitted).

Further, each of Quinnipiac's arguments for dismissal raises a question of law based solely on the allegations in the Amended Complaint, if they are taken as true for purposes of the

---

[3] To state a claim for conversion, the Plaintiff must allege "that (1) the material at issue belonged to the plaintiff, (2) that [the defendant] deprived the plaintiff of that material for an indefinite period of time, (3) that [the defendant's] conduct was unauthorized and (4) that [the defendant's] conduct harmed the plaintiff." *Coster v. Duquette*, 119 Conn. App. 827, 832 (2010) (internal quotations omitted).

Motion to Dismiss. Where, as here, discovery is unnecessary to rule on a pending motion to dismiss, it would be inefficient and likely waste the resources of this Court and the parties to allow discovery to proceed. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (finding district court's decision to compel discovery to be an abuse of discretion and noting that "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . , be resolved before discovery begins. Such a dispute always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true. Therefore, neither the parties nor the court has any need for discovery before the court rules on the motion") (internal citation and footnote omitted); *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987) (affirming stay of discovery because discovery "is only appropriate where there are factual issues raised by a Rule 12(b) motion"). Rather than expend vital time and resources managing discovery that might soon be rendered moot, it would be far more efficient for the Court to pause discovery until after ruling on the dispositive motion.

This Court should exercise its discretion to stay discovery because Quinnipiac's Motion to Dismiss is based on substantial legal grounds. Consequently, staying discovery pending a ruling on the Motion to Dismiss will further the aims of Rule 12(b)(6). *See Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 130 (2d Cir. 1987) (affirming order staying discovery pending ruling on motion to dismiss claims for *forum non conveniens*); *Cuartero,* 2006 WL 3190521, at *2 (granting stay of discovery where "the defendant's memorandum of law does appear to raise substantial issues based on statutes, caselaw and the facts of this case"); *see also Boelter v. Hearst Comms., Inc.*, 15 Civ. 03934, 2016 WL 361554, at *4-6 (S.D.N.Y. Jan. 28, 2016)

(granting motion to stay discovery pending decision on motion to dismiss where "an initial review of the arguments presented in its support suggest[ed] that none are frivolous"); *Rivera v. Heyman*, No. 96 Civ. 4489, 1997 WL 86394, at *1 (S.D.N.Y. Feb. 27, 1997) (granting motion for stay of discovery pending court's ruling on motion to dismiss where there was a "substantial argument for dismissal" and where the motion to dismiss could significantly narrow, if not eliminate the issues in the case, proceeding with discovery "would waste the parties' resources and would constitute an undue burden . . . ."). Accordingly, because the Motion to Dismiss raises several substantial arguments for dismissal of the Complaint in its entirety, discovery should be stayed pending a ruling on that motion.

### C.      The Breadth of Discovery Weighs in Favor of Staying Discovery

This motion should also be granted because the breadth of discovery that will be sought by the Plaintiffs in this putative class action appears to be considerable and may be subject to objections and motion practice. A stay would save the parties, and likely this Court, "expensive and wasteful discovery during the pendency of a determination which could potentially reshape pending claims." *ITT Corp.*, 2012 WL 2944357, at *2. Despite this District's Standing Order that discourages staying discovery based solely on the filing of a motion to dismiss, (*see* D. Conn. Standing Order On Scheduling in Civil Cases at 2(b)), courts in this District have granted stays of discovery in cases where discovery is likely to be complex, such as putative class actions, *see, e.g.*, *Granite Commc'ns, Inc. v. One Commc'ns Corp.*, No. 3:07-CV-1354 (PCD), 2008 WL 11381494, at *1 (D. Conn. Apr. 24, 2008) (granting motion to stay discovery where plaintiff sought discovery into "hundreds (if not thousands)" of potential class members); *In re First*

*Constitution Shareholders Litig.*, 145 F.R.D. 291, 294 (D. Conn. 1991) (granting motion to stay discovery in putative class action based on burden to defendant).[4]

In Section E(2)(a) of the Parties' Rule 26(f) Report, the Plaintiffs identify fourteen different topics on which they anticipate discovery will be necessary. (Dkt. 21, at 9-10.) The Plaintiffs anticipate that their discovery requests will seek extensive information from Quinnipiac both related to its normal operations as well as measures taken to cope with the impacts of the COVID-19/coronavirus, confidential personnel and/or student information, documents related to Quinnipiac's Board of Trustees meetings, and documents and communications relating to Quinnipiac's shift from on-campus to online learning. (*See* Declaration of Annalisa Zinn, Ph.D. in Support of Quinnipiac University's Renewed Motion to Stay Discovery ("Zinn Decl.") ¶¶ 4-7, 13, 14.) The Plaintiffs' anticipated discovery appears to request information on approximately 10,000 students and approximately 800 faculty members. (*Id.* ¶¶ 9, 13.) Searching for and providing this kind of information would impose on Quinnipiac a substantial burden and significant litigation expense. (*Id.* ¶¶ 4-7, 13, 14.) In addition,

---

[4] The same holds true in other districts. *See, e.g., Reveal Chat Holdco, LLC v. Facebook, Inc.*, No. 20-CV-00363-BLF, 2020 WL 2843369, at *4 (N.D. Cal. Apr. 10, 2020) (granting motion to stay discovery in putative class action where defendant's motion to dismiss was "potentially dispositive of the entire" case, plaintiffs were not prejudiced by stay because discovery was not necessary to rule on the motion to dismiss, and noting that allowing discovery to proceed while motion to dismiss was pending could amount to a waste of resources); *Belloso v. Asplundh Tree Expert, Co.*, No. 618CV460ORL40TBS, 2018 WL 4407088, at *3 (M.D. Fla. Sept. 17, 2018) (granting motion to stay in putative class action after finding that "Defendant's motion to dismiss has merit and is potentially case dispositive"); *Spearman v. I Play, Inc.*, No. 2017CV01563TLNKJN, 2018 WL 1382349, at *2 (E.D. Cal. Mar. 19, 2018) (granting motion to stay putative class action where pending motion to dismiss was potentially dispositive and had merit); *Scoma Chiropractic, P.A. v. Jackson Hewitt Inc.*, No. 2:17-CV-24-FTM-38CM, 2017 WL 5256861, at *2 (M.D. Fla. Nov. 13, 2017) (granting motion to stay discovery in class action after taking a "preliminary peak" at defendant's motion to dismiss and finding it to be meritorious and where stay would cause plaintiff little harm and promote judicial efficiency); *Daniels v. Dataworkforce LP*, No. 14-CV-00822-KMT, 2014 WL 4783670, at *2 (D. Colo. Sept. 25, 2014) (granting motion to stay discovery and noting that "decisions from this District have recognized the propriety of staying the significant discovery associated with class-actions claims while a dispositive motion to dismiss is pending"); *Schmaltz v. Smithkline Beecham Corp.*, No. 08-CV-00119-WDM- MEH, 2008 WL 3845260, at *1–2 (D. Colo. Aug. 15, 2008) (granting motion to stay discovery as to class claims which may be disposed of in their entirety through resolution of defendant's motion to dismiss).

Quinnipiac anticipates making various objections to such requests (depending on the specific wording of any requests) that may require discovery motion practice and adjudication by the Court.

Furthermore, beyond the typically broad and expensive efforts related to document discovery, there would also be legal issues and additional costs that will arise with respect to requests for discovery of any student records pursuant to the Family Educational Rights and Privacy Act ("FERPA"). 20 U.S.C. § 1232g; 34 C.F.R. Part 99. (*See also* Zinn Decl. ¶ 8.) Under FERPA, Quinnipiac may only disclose information pertaining to student records without the student's or parent's written consent under certain circumstances, including, but not limited to pursuant to a judicial order or lawfully issued subpoena, and ***then only after a "reasonable effort" to notify the student that it intends to release the student's protected education records***. 34 C.F.R. § 99.31(a)(9)(ii) (emphasis added). (*See also* Zinn Decl. ¶ 8.) That notice provides each student with an opportunity to object to the disclosure of his or her records. (*Id*.) As a result, even if this Court were to require Quinnipiac to produce these many categories of student records that the Plaintiffs apparently intend to seek, Quinnipiac would be required to make a "reasonable effort" to notify each of the approximately 7,000 undergraduate students and 3,000 graduate, medical, and law students that were enrolled at Quinnipiac during the Spring 2020 semester. (*Id*. ¶ 9.)

The burden on Quinnipiac to make such a "reasonable effort" would be substantial inasmuch as a general notice to students may not satisfy the "reasonable effort" standard. *See* Letter from L. Rooker, Family Policy Compliance Office, to E. Opton, Jr., University Counsel, The Regents of the University of California, dated Sept. 17, 1999 ("Notice on campus bulletin

boards or in campus newspapers would not be adequate to meet this requirement."), which may be found at: https://www2.ed.gov/policy/gen/guid/fpco/ferpa/library/oakland_ca.html. (*See also* Zinn Decl. ¶ 10.)[5] Furthermore, Quinnipiac may be required to provide notice to each student by possibly more than one means and with enough time to allow each student an opportunity to limit or quash the order or subpoena. *See* Letter from L. Rooker, Family Policy Compliance Office, to L. Cochran, President, Youngstown Univ., dated Feb. 16, 1999 (emphasizing importance of providing notice in timely manner and through method most likely to quickly reach student), which may be found at:

https://www2.ed.gov/policy/gen/guid/fpco/ferpa/library/youngstown_oh.html. (*See also* Zinn Decl. ¶ 11.) These efforts to comply with FERPA in the face of a valid court order or subpoena would require significant expenditures of time and money by Quinnipiac. (*Id*. ¶ 12.) Likewise, efforts to redact information relating to approximately 10,000 student files prior to production would require the expenditure of significant resources.

Consequently, the proposed discovery would be a substantial drain on Quinnipiac's resources, which must be focused on maintaining the safety of Quinnipiac's students, faculty, and staff for the ongoing 2020-2021 school year and/or the education of Quinnipiac's students during this pandemic. (*Id.* ¶¶ 6, 12, 17.) If this case were to proceed beyond the Motion to Dismiss stage, it is virtually certain that discovery will include detailed interrogatories and voluminous document production, as well as expert discovery. While the Plaintiffs have not yet served discovery requests, they could do so at any time, which would require Quinnipiac to

---

[5] The Family Policy Compliance Division, known as the Family Policy Compliance Office is the unit of the United States Department of Education that is responsible for administering two federal laws that provide parents and students with certain privacy rights: FERPA and the Protection of Pupil Rights Amendment (PPRA).

divert personnel and resources away from efforts to protect the health and safety of its students, faculty and staff during this pandemic, in order to respond to and/or challenge the Plaintiffs' discovery requests in court. (*Id.* ¶¶ 6, 17.)[6]

A temporary stay pending the resolution of Quinnipiac's potentially dispositive Motion to Dismiss would bring an efficient and measured approach to the management of discovery in this case. The scope of the Plaintiffs' intended discovery requests is broad and burdensome,[7] and the burden that would be imposed on Quinnipiac is not justified while the potentially dispositive Motion to Dismiss is pending. The burden is unjustified where the Motion to Dismiss, if granted, would obviate the need for any discovery. Forcing Quinnipiac to respond to discovery **prior** to deciding the Motion to Dismiss would require Quinnipiac to "expend significant resources for no purpose whatsoever" if the Motion to Dismiss is granted. *In re First Constitution Shareholders Litig.*, 145 F.R.D. 291, 293 (D. Conn. 1991) (internal quotation marks omitted).

### D.     The Balance of Hardships Weighs in Favor of Staying Discovery

The breadth of discovery in this case will necessarily make responding to discovery burdensome, expensive, and time-consuming. In the absence of a stay of discovery, Quinnipiac likely will have to respond to extensive interrogatories and requests for production, undertake a voluminous document review and production, and make many of its personnel available for depositions when they should be focusing their efforts on trying to ensure the safety of the Quinnipiac community during the COVID-19 pandemic. (Zinn Decl. ¶¶ 6, 10-14, 16-17.) The

---

[6] The Court has the authority to issue a stay of discovery before discovery is issued. *See United States ex rel. Ameti*, 2016 WL 10490528, at *2 (granting motion to stay before discovery issued where "the allegations in the complaint 'are extensive and deal with complicated engineering issue'" and defendant would be forced "to expend significant resources on a complaint that might ultimately fail as a matter of law.").

[7] If this motion to stay is not granted, Quinnipiac reserves the right to serve and pursue its specific objections to particular discovery requests. The parties have not yet conferred on this issue and Quinnipiac does not seek adjudication of that in this motion.

parties also would have to engage in substantial class certification-related discovery. Such discovery will require a tremendous amount of effort and would impose substantial costs and expenses on both parties that will be unnecessary if the Motion to Dismiss is granted. (*Id.*)

The burden of responding to discovery will be far greater for Quinnipiac than for the Plaintiffs due to asymmetrical discovery demands. *See Pension Ben. Guar. Corp.*, 712 F.3d at 719 (stating that the pleading requirements must be met in order to avoid "using discovery to impose asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit") (quoting *Am. Bank v. City of Menasha*, 627 F.3d 261, 266 (7th Cir. 2010)). Moreover, because the Plaintiffs have indicated that they believe that they are entitled to discovery far broader than what Quinnipiac believes is warranted in this case, there are likely to be discovery disputes that will require judicial intervention to resolve. *See Cuartero*, 2006 WL 3190521, at *3 ("If discovery were to continue, it would also be likely to result in additional motion practice."). By hinting at discovery disputes that will require judicial intervention, the Plaintiffs have confirmed that discovery will be burdensome not only for the parties, but possibly for the Court as well. This burden factor further weighs in favor of a stay. *See id*; *see also Stone v. Vail Resorts Dev. Co.*, No. 09-CV-02081-WYD-KLM. 2010 WL 148278, at *1-3 (D. Colo. Jan. 7, 2010) (granting motion to stay discovery in putative class action, reasoning that "[w]here a pending motion may dispose of an action, however, a stay of proceedings may allow the Court to avoid expending resources in managing an action that ultimately will be dismissed" even though the "district's general policy disfavor[ed] a complete stay of discovery").

In contrast to Quinnipiac, the Plaintiffs will not be prejudiced by a stay of discovery. Discovery will only be stayed until the Motion to Dismiss is decided. *Cuartero*, 2006 WL 3190521, at *3 ("The prejudice to plaintiff from a stay of discovery will be minimal, as discovery will only be stayed until a decision is reached on the Motion to Dismiss."). If the Motion to Dismiss is granted, then both parties will have saved considerable needless expense. If the Motion to Dismiss is denied, then the Plaintiffs will have ample opportunity to conduct all of the discovery to which they may be entitled at that time. Additionally, as this case remains in its early stages and the Plaintiffs have not yet pursued discovery, prejudice to the Plaintiffs from a stay is negligible. *See Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, No. 09 CV 5874 (RPP), 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009) (holding that the plaintiff would not be prejudiced where no discovery requests had yet been served in the case and the commencement of discovery would be delayed for only a few months). Proceeding with discovery at this juncture will only place an unnecessary burden on the resources of the parties and the Court in the face of a strong Motion to Dismiss that warrants dismissal of all of the claims asserted in the Complaint. Moreover, even if the Court dismisses some but not all of the claims alleged, the narrowing of the Plaintiffs' claims potentially could focus discovery and reduce the burden and expense for the parties and the Court.

III.    **CONCLUSION**

For all of the foregoing reasons, the Defendant Quinnipiac University respectfully requests that the Court enter an order staying discovery until the Court rules on Quinnipiac's Motion to Dismiss the First Amended Class Action Complaint.

DEFENDANT,
QUINNIPIAC UNIVERSITY,


By    */s/ Edward J. Heath*
    Edward J. Heath (ct20992)
    Wystan M. Ackerman (ct24090)
    Elizabeth R. Leong (ct24453)
    Dan A. Brody (ct30301)
    Robinson & Cole LLP
    280 Trumbull Street
    Hartford, CT 06103-3597
    Tel. No.: (860) 275-8200
    Fax No.: (860) 275-8299
    E-mail: eheath@rc.com;
    wackerman@rc.com; eleong@rc.com;
    dbrody@rc.com

**CERTIFICATION**

I hereby certify that on October 12, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Edward J. Heath*
Edward J. Heath