UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ZOEY METZNER, DOMINIC GRAVINO, DAVE BRUNEAU, and RICHARD HOTTER, individually and on behalf of all others similarly situated, | : : : : | CIVIL NO. 3:20-cv-00784 |
| Plaintiffs, V. | : : : | |
| QUINNIPIAC UNIVERSITY, | : : : | |
| Defendant. | : | |

### DECLARATION OF ANNALISA J. ZINN, Ph.D., IN SUPPORT OF QUINNIPIAC UNIVERSITY'S MOTION TO STAY DISCOVERY

I, Annalisa J. Zinn, Ph.D., being duly sworn, do hereby depose and say:

1. I am over the age of 18 and understand the obligations of an oath.

2. I am the Vice President for Academic Innovation and Effectiveness for Quinnipiac University for Quinnipiac University ("Quinnipiac"), and I make this Declaration on behalf of Quinnipiac in support of its Renewed Motion to Stay Discovery in the above-captioned matter.

3. As a result of my position, I am familiar with the Quinnipiac's recordkeeping practices.

4. I have reviewed the Form 26(f) Report of Parties' Planning Meeting ("26(f) Report"), filed by the Parties on August 17, 2020 in connection with the above-captioned action.

5. Based on my review of the 26(f) Report, the subjects on which the Plaintiffs anticipate pursuing discovery would cause Quinnipiac to engage in broad and burdensome efforts at considerable expense. Specifically, it appears that the Plaintiffs are seeking the production of extensive financial information relating to the tuition and fees Quinnipiac charges, how Quinnipiac determines its tuition and fees, insurance information, and steps Quinnipiac took in response to the coronavirus.

6. Responding to these requests, if necessary, would require the expenditure of extensive resources including hours of employee time that must be focused on addressing issues relating to the 2020-21 academic year, including, but not limited to, keeping Quinnipiac's students, faculty, and staff safe during this pandemic.

7. It also appears that the Plaintiffs will request broad information on Quinnipiac's students, including student enrollment information, student involvement in on-campus operations and other programs, and potential complaints regarding Quinnipiac's shift to virtual learning.

8. Such records are protected by the Family Educational Rights and Privacy Act ("FERPA") (20 U.S.C. § 1232g; 34 C.F.R. Part 99), which protects the privacy of student education records. Pursuant to this law, Quinnipiac may only disclose information pertaining to student records without the student's or parent's written consent under certain circumstances, including, but not limited to pursuant to a judicial order or lawfully issued subpoena, and then only after a "reasonable effort" to notify the student that it intends to release the student's protected education records. 34 C.F.R. § 99.31(a)(9)(ii). That notice provides each student with an opportunity to object to the disclosure of his or her records.

9.   Thus, even if this Court were to require Quinnipiac to produce these many categories of student records that the Plaintiff apparently intends to seek, Quinnipiac would be required to make a "reasonable effort" to notify each of the approximately 7,000 undergraduate students and 3,000 graduate, medical, and law students that were enrolled at Quinnipiac during the Spring 2020 semester.

10.   The burden on Quinnipiac to make such a "reasonable effort" would be substantial inasmuch as a general notice to students does not satisfy the "reasonable effort" standard. (*See* Letter from L. Rooker, Family Policy Compliance Office, to E. Opton, Jr., University Counsel, The Regents of the University of California, dated Sept. 17, 1999 ("Notice on campus bulletin boards or in campus newspapers would not be adequate to meet this requirement."), which may be found at: https://www2.ed.gov/policy/gen/guid/fpco/ferpa/library/oakland_ca.html.)

11.   Furthermore, Quinnipiac would be required to provide notice to each student by possibly more than one means and with enough time to allow each student the opportunity to limit or quash the court order or subpoena. (*See* Letter from L. Rooker, Family Policy Compliance Office, to L. Cochran, President, Youngstown Univ., dated Feb. 16, 1999 (emphasizing the importance of providing notice in a timely manner and through a method that is most likely to quickly reach the student), which may be found at: https://www2.ed.gov/policy/gen/guid/fpco/ferpa/library/youngstown_oh.html.)

12.   These efforts to comply with FERPA in the face of a valid court order or subpoena would require significant expenditures of time and money by Quinnipiac.

13. To the extent that the Plaintiffs were to request faculty contracts of employment and/or other information from Quinnipiac's personnel files, responding to those requests would implicate serious privacy and confidentiality concerns, and would involve gathering information on approximately 800 faculty members.

14. Finally, the broad range of internal documents and communications, including, but not limited to, e-mail communications and materials related to meetings conducted by Zoom and telephone, concerning all aspects of Quinnipiac's transition to online operations would be very burdensome to collect.

15. Decisions relating to the transition to online operations were made by Quinnipiac's leadership and Quinnipiac's Coronavirus Task Force. The members of Quinnipiac's leadership who were involved include members of the President's Management Committee and of the University's Leadership Council. There were fifteen members of the Coronavirus Task Force at the end of the Spring 2020 semester, including university executives, medical professionals, members of the emergency management team, and faculty. As of this date, there are twenty-two members of the Coronavirus Task Force.

16. To locate potentially responsive documents concerning all aspects of Quinnipiac's transition to online operations, Quinnipiac would need to perform wide-ranging electronic searches and ask numerous members of its faculty and staff to collect documents individually at substantial cost to Quinnipiac and loss of countless hours of time that would must be focused on, among other things, the continuation of the 2020-21 academic year and keeping Quinnipiac's students, faculty, and staff safe during this pandemic.

17.  At this time, during a worldwide pandemic, I do not believe it would be appropriate for Quinnipiac's employees, who are responsible for ensuring the safety of our community and providing a quality education to our students, to be required to focus their efforts on litigation-related requests.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 12 day of October, 2020.

_Annalisa J. Zinn_
Annalisa J. Zinn, Ph.D.