**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ZOEY METZNER, DOMINIC GRAVINO, DAVID BRUNEAU, and RICHARD HOTTER, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>   v.<br><br>QUINNIPIAC UNIVERSITY,<br><br>                            Defendant. | Case No. 3:20-cv-00784-KAD |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ....................................................................................................................1

LEGAL STANDARD............................................................................................................3

ARGUMENT .........................................................................................................................4

I.     PLAINTIFFS DO NOT ALLEGE EDUCATIONAL MALPRACTICE...........................4

II.    PLAINTIFFS STATE A CLAIM FOR BREACH OF CONTRACT .............................10

      A.    Plaintiffs Allege that Defendant Breached a Specific Contractual Promise......... 10

      B.    Plaintiffs State a Claim for Breach of Implied Contract...................................... 14

      C.    Defendant's Proffered Cases Do Not Warrant Dismissal..................................... 17

III.   PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT .................................19

      A.    *Gupta* Does Not Bar Plaintiffs' Claim For Unjust Enrichment........................... 19

      B.    Plaintiff May Plead Unjust Enrichment in the Alternative .................................. 20

      C.    Plaintiff Sufficiently Pleads the Elements of Unjust Enrichment........................ 22

IV.   PLAINTIFFS STATE A CLAIM FOR CONVERSION...................................................24

CONCLUSION......................................................................................................................25

i

## TABLE OF AUTHORITIES

PAGE(S)

## CASES

*A & R Body Specialty v. Progressive Cas. Ins. Co.*,
2013 WL 718622 (D. Conn. Feb. 27, 2013) ................................................................. 20

*A Slice of Pie Prods., LLC v. Wayans Bros. Entm't*,
392 F. Supp. 2d 297 (D. Conn. 2005) ........................................................................ 16

*Alliance Group Serv., Inc. v. Grassi & Co.*,
406 F.Supp.2d 157 (D. Conn. 2005) .......................................................................... 11

*Alpha Crane Service, Inc. v. Capitol Crane Co.*,
6 Conn. App. 60 (1986) .............................................................................................. 14

*Ansari v. New York University*,
1997 WL 257473 (S.D.N.Y. May 16, 1997) ................................................................ 9

*Banerjee v. Roberts*,
641 F. Supp. 1093 (D. Conn. 1986) ...................................................................... 15, 19

*Bolmer v. Kocet*,
6 Conn. App. 595 (1986) ............................................................................................ 15

*Bouchard v. Sundberg*,
80 Conn. App. 180 (2003) .......................................................................................... 11

*Brighenti v. New Britain Shirt Corp.*,
167 Conn. 403 (1974) ........................................................................................... 14, 15

*Burns v. Quinnipiac Univ.*,
120 Conn. App. 311, 991 A.2d 666 (2010) .................................................................. 2

*Chong v. Northeastern Univ.*,
2020 WL 5847626 (D. Mass. Oct. 1, 2020) .......................................................... 17, 18

*Coppola v. St. Bernadette's Catholic Sch.*,
2019 WL 3220388 (Conn. Super. Ct. June 6, 2019) .................................................... 6

*Cross v. University of Toledo*,
2020 WL 4726814 (Ohio Ct. Cl. July 8, 2020) ......................................................... 21

*Deen v. New School University*,
2007 WL 1032295 (S.D.N.Y. Mar. 27, 2007) ....................................................... 9, 16

*Doe v. Quinnipiac Univ.*,
404 F. Supp. 3d 643 (D. Conn. 2019) ..................................... 2, 3, 6, 8, 10, 13, 15

*Easton v. Sundram*,
   947 F.2d 1011 (2d Cir. 1991) .................................................... 4

*ESI, Inc. v. Coastal Power Prod. Co.*,
   995 F. Supp. 419 (S.D.N.Y. 1998) .......................................... 21

*Frasier v. General Elec. Co.*,
   930 F.2d 1004 (2d Cir. 1991) .................................................. 4

*Gally v. Columbia Univ.*,
   22 F. Supp. 2d 199 (S.D.N.Y. 1998) ..................................... 19

*Gupta v. New Britain Gen. Hosp.*,
   239 Conn. 574 (1996) ................................................. 7, 8, 12

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984) ................................................................ 4

*Hu v. City of New York*,
   927 F.3d 81 (2d Cir. 2019) .................................................... 25

*Johnson v. Schmitz*,
   119 F. Sup. 2d 90 (D. Conn. 2000) .......................... 6, 8, 12, 13, 16

*Knelman v. Middlebury Coll.*,
   898 F. Supp. 2d 697 (D. Vt. 2012) ....................................... 19

*Lieberman v. Emigrant Mortg. Co.*,
   436 F. Supp. 2d 357 (D. Conn. 2006) ................................... 14

*McDermott v. Ohio State Univ.*,
   2020 Ohio Misc. LEXIS 127 (Ohio Ct. Cl. Aug. 24, 2020) ...................... 5

*McNeil v. Yale Univ.*,
   436 F. Supp. 3d 489 (D. Conn. 2020) .................................... 19

*MedPricer.com Inc. v. Becton, Dickinson & Co.*,
   2014 WL 3700992 (D. Conn. July 25, 2014) ........................ 20

*Mellowitz v. Ball State Univ. & Bd. of Trs. of Ball State Univ.*,
   2020 Ind. Super. LEXIS 854 (Marion Sup. Ct. Ind. Aug. 12, 2020) .......... 5

*Mirkin v. XOOM Energy, LLC*,
   931 F.3d 173 (2d Cir. 2019) .................................................. 4

*Morris v. Yale Univ. Sch. of Med.*,
   2006 WL 908155 (D. Conn. Apr. 4, 2006) ........................ 8, 12, 19

*NovaFund Advisors, LLC v. Capitala Grp., LLC*,
  2019 WL 1173019 (D. Conn. Mar. 13, 2019) ............................................ 20, 21, 22

*Novio v. New York Academy of Art*,
  317 F. Supp. 3d 803 (S.D.N.Y. 2018) ........................................................... 9

*O'Neill v. New York Univ.*,
  97 A.D.3d 199 (1st Dep't 2012) ................................................................... 9

*Osberg v. Yale Univ.*,
  2009 WL 659072 (Conn. Super. Ct. Feb. 11, 2009) .................................... 12, 16, 20

*Paladino v. Adelphi Univ.*,
  89 A.D.2d 85 (N.Y. App. Div. 1982) ............................................................ 8

*Papelino v. Albany College of Pharm. of Union Univ.*,
  633 F.3d 81 (2d Cir. 2011) ............................................................................ 16

*Paynter v. New York University*,
  66 Misc.2d 92 (N.Y. App. Div. 1971) ........................................................... 9

*Pecoraro v. New Haven Register*,
  344 F. Supp. 2d 840 (D. Conn. 2004) ........................................................... 14

*Roe v. Loyola Univ. New Orleans*,
  2007 WL 4219174 (E.D. La. Nov. 26, 2007) ............................................... 22, 23

*Ross v. Creighton Univ.*,
  957 F.2d 410 (7th Cir. 1992) ........................................................................ 13

*RWP Consol., L.P. v. Salvatore*,
  460 F. Supp. 2d 351 (D. Conn. 2006) ........................................................... 11

*Salerno v. Fla. S. Coll.*,
  2020 WL 5583522 (M.D. Fla. Sept. 16, 2020) ........................................ 5, 13, 16, 21

*Samuels v. Air Transport Local 504*,
  992 F.2d 12 (2d Cir. 1993) ............................................................................ 4

*Scheuer v. Rhodes*,
  416 U.S. 232 (1974) ....................................................................................... 4

*Sheppard v. Beerman*,
  18 F.3d 147 (2d Cir. 1994) ............................................................................ 4

*Smith v. The Ohio State University*,
  2020 WL 5694224 (Ohio Ct. Cl. Sept. 9, 2020) .......................................... 13

*Squeri v. Mount Ida College,*
    954 F.3d 56 (1st Cir. 2020) ...................................................................................... 18

*Stanley Works Israel Ltd. v. 500 Grp., Inc.,*
    332 F. Supp. 3d 488 (D. Conn. 2018) ........................................................................ 20

*Therrien v. Safeguard Mfg. Co.,*
    180 Conn. 91 (1980) .................................................................................................. 14

*Thys v. Fortis Secs. LLC,*
    74 A.D.3d 546 (N.Y. App. 2010) ............................................................................... 25

*Union Bank, N.A. v. CBS Corp.,*
    2009 WL 1675087 (S.D.N.Y. June 10, 2009) ............................................................ 21

*United States v. Yale–New Haven Hosp.,*
    727 F. Supp. 784 (D. Conn. 1990) ............................................................................... 4

*United Steel, Inc. v. Haynes Const. Co.,*
    2006 WL 164812 (Conn. Super. Jan. 4, 2006) .......................................................... 21

*Village Community School v. Adler,*
    124 Misc.2d 817 (N.Y. City Civ. Ct. 1984)................................................................. 9

*Walker v. People's United Bank,*
    305 F. Supp. 3d 365 (D. Conn. 2018) ........................................................................ 20

*Wilenta Feed, Inc. v. Arnold Food Co.,*
    2006 WL 798916 n.2 (D. Conn. Mar. 29, 2006) ........................................................ 24

*Williams Ford, Inc. v. Hartford Courant Co.,*
    232 Conn. 559 (1995) ................................................................................................ 24

*Zahn v. Ohio Univ.,*
    2020 Ohio Misc. LEXIS 230 (Ohio Ct. Cl. Oct. 19, 2020) ........................................ 6

**RULES**

Fed. R. Civ. P. 15(a) ........................................................................................................ 3

Fed. R. Civ. P. 15(a)(2)................................................................................................... 25

## <u>INTRODUCTION</u>

Beginning in March 2020, the COVID-19 global pandemic disrupted the daily lives of nearly all Americans.  Among the hardest hit were students and their parents, like Plaintiffs Zoey Metzner, Dominic Gravino, Dave Bruneau, and Richard Hotter (collectively, "Plaintiffs"), who paid tens of thousands of dollars in tuition and fees to get an in-person educational experience, including all of the services, facilities, opportunities, and activities that come with it, only to have that in-person experience ripped away.  Students, like Plaintiffs, could have enrolled in one of the country's many online learning institutions—at a far cheaper cost—but opted to pay a premium for an in-person educational experience.  Many students and parents undertook significant debt to make these tuition and fee payments.  Nonetheless, although it has an endowment exceeding $550 million, Defendant Quinnipiac University ("Defendant") has refused to refund a penny of the tuition that Plaintiffs paid for an in-person educational experience.  As is clear from its motion to dismiss, Defendant believes that its students should bear all of the costs of the COVID-19 pandemic.  *See* Def.'s Memo. of Law (ECF No. 36) ("MTD").  The Court should not permit this inequity.

Defendant's attempts to avoid liability fail.  Defendant first argues its educational judgment should be granted special deference.  MTD at 16-20.  That is simply not the law regarding a university's commercial activities, and does not apply to any and all actions that may be brought against an educational institution as Defendant seems to suggest.  Universities are not entitled to judicial deference in transactions involving more than pure academic judgment.  For example, if a university contracts to sell one of its buildings and then reneges on the deal, the putative buyer does not have to prove that the university acted arbitrarily or in bad faith in a breach of contract action.

Plaintiffs' claims are not academic in nature, but rather commercial, based on fundamental principles of contract law.  The Complaint does not take issue with the specific ways that individual professors elected to teach their classes once remote learning was mandated. Plaintiffs do not suggest, for example, that classes should have been taught differently online. Rather, Plaintiffs and the putative class paid millions of dollars to Defendant to purchase an on-campus educational experience with multiple benefits, services, experiences, and opportunities. But once the switch to remote learning occurred, Plaintiffs were denied that experience for which they bargained and paid, including interaction with other students and the use of Defendant's infrastructure, buildings, libraries, labs, computers, etc. in the particular student's chosen discipline.  Plaintiffs, like all parties to a contract, are entitled to receive the benefit of their bargain.  The denial and deprivation of the rights, privileges, and in-person education afforded students of Defendant for the past 91 years was a breach of contract between Plaintiffs and Defendant.  Defendant intended for students to rely upon the promises Defendant made as part of its offers of admission and course registration, and the students did, in fact, rely upon Defendant's offers, to their detriment.

Defendant also argues Plaintiffs have not pled a breach of a specific contractual promise. MTD at 20-26.  But this is incorrect.  As Quinnipiac must concede given its prior litigation of the issue, the relationship between a student and a private university "'is contractual in nature' and 'there seems to be no dissent from [the] proposition that the catalogues, bulletins, circulars, and regulations of the institution determine the contractual relationship between the student and the educational institution.'" *Doe v. Quinnipiac Univ.,* 404 F. Supp. 3d 643, 667 (D. Conn. 2019) (quoting *Burns v. Quinnipiac Univ.*, 120 Conn. App. 311, 320-21, 991 A.2d 666 (2010)) (alteration in original) (denying summary judgment request by Quinnipiac on breach of contract

claim and rejecting educational malpractice argument).  Here, the Complaint alleges all elements of a breach of contract: existence of a contract, Plaintiffs' performance, Defendant's breach, and resulting damages.  *See* Amended Class Action Complaint (ECF No. 25) ("Compl.") ¶¶ 96-112. A review of Quinnipiac's Bulletin, admissions materials, Course Finder function, website, class policies, and long history of prior dealings, in totality, lead to only one conclusion: that before COVID-19, Defendant promised to provide on-campus in-person education, and that Plaintiffs and class members paid handsomely for and expected to receive the same.  *See id.* ¶ 42.  That Defendant may dispute the terms does not warrant dismissal as "[i]nterpretation of the written terms of a contract and the degree of compliance by the parties are questions of fact to be determined by the trier of fact."  *Doe*, 404 F. Supp. 3d at 667.

Simply put, Defendant did not provide Plaintiffs with the services it marketed to the public to distinguish itself from other competitors, even though Plaintiffs bargained and paid for them.  The law does not permit Defendant to retain the monies Plaintiffs paid.  To no surprise, an emerging body of judicial decisions in other COVID-19 university class actions has led to the rejection of schools' early attempts to dismiss claims similar to those asserted by Plaintiffs.  *See infra* at §§ I & III(C)(3) (collecting cases).  Given the stage of the case and the applicable pleading standards, which require viewing Plaintiffs' well-pled allegations and contractual ambiguities in their favor, Plaintiffs respectfully request that this Court deny Defendant's motion in its entirety.  Should the Court be inclined to dismiss any aspect of Plaintiffs' claims, Plaintiffs respectfully request that the dismissal be without prejudice and with leave to amend under the liberal amendment standards inherent in Fed. R. Civ. P. 15(a).

## LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most

favorable to the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 (1984); *Easton v. Sundram*, 947 F.2d 1011, 1014-15 (2d Cir. 1991), *cert. denied*, 504 U.S. 911 (1992).  Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Frasier v. General Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991).  "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims."  *United States v. Yale–New Haven Hosp.*, 727 F. Supp. 784, 786 (D. Conn. 1990) (citing *Scheuer*, 416 U.S. at 232).  Thus, a motion to dismiss under 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), *cert. denied*, 513 U.S. 816 (1994).  In its review of a 12(b)(6) motion to dismiss, the Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).[1]  "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Mirkin v. XOOM Energy*, *LLC*, 931 F.3d 173, 176-77 (2d Cir. 2019).

## **ARGUMENT**

## I. **PLAINTIFFS DO NOT ALLEGE EDUCATIONAL MALPRACTICE**

Defendant attempts to recast Plaintiffs' allegations as claims of "impermissible educational malpractice claims that would require this Court to evaluate whether the quality and

---

[1] Internal citations and quotation omitted and emphasis added throughout unless otherwise indicated.

value of the Plaintiffs' education was diminished by the transition to online learning."  MTD at

10.  As Defendant repeats throughout, "courts are not permitted to make these types of

evaluations regarding the value of services provided by educational institutions."  MTD at 11.

Defendant neglects to mention, however, that every court to consider similar facts and

allegations in the COVID-19 context have rejected the defendants' "educational malpractice"

arguments.  *See Salerno v. Fla. S. Coll.*, 2020 WL 5583522 at *4 (M.D. Fla. Sept. 16, 2020)

(finding complaint sufficiently alleged "that the College's publications clearly implied that

courses would be conducted in-person" and "underscore[ing] that this case is not about the

quality of the College's education… This case is simply about an alleged promise to provide in-

person learning that was allegedly breached."); *Milanov v. Univ. of Mich.*, Case No. 20-000056-

MK, 2020 Mich. Ct. Cl. LEXIS 1, *8-9 (Mich. Ct. Cl. July 27, 2020) ("[Plaintiffs] are arguing

that the university promised one method of instruction, charged tuition and fees commensurate

with that method of instruction, yet provided a different (allegedly lesser) method of instruction.

This is a claim potentially sounding in contract or in quasi-contract, not in due process" and

"while [case law] describes a number of areas into which a Court should be hesitant to intrude,

principles of contract and quasi-contract are not among those areas."); *McDermott v. Ohio State

Univ.*, No. 2020-00286JD, 2020 Ohio Misc. LEXIS 127, *5 (Ohio Ct. Cl. Aug. 24, 2020)

("Plaintiff's complaint does not merely assert that the education she received was substandard

due to the clinic being closed. Rather, plaintiff alleges that defendant charged a fee specifically

to support the dental clinic and then closed the clinic. That is sufficient to assert an unjust

enrichment claim."); *Cross v. Univ. of Toledo*, No. 2020-00274JD, 2020 Ohio Misc. LEXIS 121,

*7-8 (Ohio Ct. Cl. July 8, 2020); *Mellowitz v. Ball State Univ. & Bd. of Trs. of Ball State Univ.*,

2020 Ind. Super. LEXIS 854, *1 (Marion Sup. Ct. Ind. Aug. 12, 2020); *Waitt v. Kent State Univ.*,

2020-00392JD, 2020 WL 5894543, *2 (Ohio Ct. Cl. Sept. 28, 2020) ("Waitt's first amended class action complaint does not present a claim of 'educational malpractice' as KSU suggests."); *Garland v. Western Michigan Univ.*, 20-0063-MK, 2020 Mich. Ct. Cl. LEXIS 7, *9 (Mich. Ct. Cl. Sept. 15, 2020) ("the Court disagrees that plaintiff's complaint asks the Court to interfere with WMU's academic autonomy…"); *Smith v. The Ohio State Univ.*, 2020 WL 5694224, at *2 (Ohio Ct. Cl. Sept. 9, 2020) ("Plaintiff alleges that when she paid tuition to defendant a contract was created and that by holding classes virtually and not refunding a portion of the previously paid tuition and fees, defendant breached said contract…The mere mention of possible consequences to plaintiff's educational or professional future does not render plaintiff's complaint a claim for educational malpractice."); *Zahn v. Ohio Univ.*, 2020 Ohio Misc. LEXIS 230 (Ohio Ct. Cl. Oct. 19, 2020).  Plaintiffs are not aware of any tuition and fee refund cases dismissed as improper educational malpractice actions.

Indeed, Connecticut courts explicitly recognize that not every action by a student against a school reflects an educational malpractice claim.  *See, e.g.*, *Doe*, 404 F. Supp. 3d at 667 (rejecting educational malpractice argument raised by Quinnipiac where, as here, "Plaintiff's breach of contract claims neither sound in tort, nor challenge any aspect of the quality of QU's educational program"); *Coppola v. St. Bernadette's Catholic Sch.*, No. HHD-CV-18-6080356 S, 2019 WL 3220388, at *3 (Conn. Super. Ct. June 6, 2019) (rejecting defendant's argument that claims constituted educational malpractice because "[t]urning to the facts of this case, the allegations of the First and Second Counts do not allege a failure by the defendant to educate the minor plaintiff effectively"); *Nasuta v. Hartford Roman Catholic Diocesan Corp.*, No. HHD-CV-13-6042534 S (Conn. Super. Ct. Sept. 30, 2014) (denying motion to strike, in part, where "the plaintiffs are not challenging the duty of the defendants to educate effectively but instead

the duty not to cause physical harm through negligent conduct"); *Johnson v. Schmitz*, 119 F. Sup. 2d 90, 100 (D. Conn. 2000) (holding that plaintiff's claim was not one of educational malpractice, concluding that, "if, as [the plaintiff] alleges, [the defendant's] rules for protecting its students were inadequate if [the defendant] failed to enforce them adequately to protect [the plaintiff], it is foreseeable that one of its graduate students could suffer emotional distress and economic harm").

This holds especially true here, given that Plaintiffs do not ask the Court to "second-guess Quinnipiac's decision to transition to online learning." MTD at 16. Instead, they dispute Defendant's decision to retain 100% of tuition and fee money while failing to provide promised services. Compl. ¶¶ 7, 66. Specifically, Plaintiffs allege that they paid tuition and fees in exchange for the full rights and privileges of on-campus student status at Defendant's University. *Id.* ¶ 65. Plaintiffs allege that such rights included the right to access campus buildings, participate in campus activities, receive hands-on training and face-to-face instruction, and numerous other services and opportunities, as promised by Defendant. *Id.* ¶¶ 20, 24, 37, 40, 64, and 67. It is undisputed that Defendant failed to provide these things during the majority of the Spring 2020 semester, and instead provided Plaintiffs with online remote learning devoid of any campus experience—a materially different product. Put simply, Plaintiffs' claims sound in ordinary contract law.

Defendant's reliance on *Gupta v. New Britain Gen. Hosp.*, 239 Conn. 574 (1996), only serves to undermine its own argument. As the court in *Gupta* recognized, there are "at least two situations wherein courts will entertain a cause of action for institutional breach of a contract for educational services":

> The first would be exemplified by a showing that the educational program
> failed in some fundamental respect, as by not offering any of the courses

necessary to obtain certification in a particular field. ***The second would
arise if the educational institution failed to fulfil a specific contractual
promise distinct from any overall obligation to offer a reasonable
program***.

*Id.* at 592-93 (emphasis added). *See also Doe*, 404 F. Supp. 3d at 673 ("While *Gupta* thus

precludes negligence-based educational malpractice claims, it contemplated less difficulty in

permitting a specific subset of contract and tort claims against educational institutions in contrast

to tort claims relating to the provision of educational services and based on ordinary

negligence.").

Based on this guidance, courts have rejected defendants' "educational malpractice"

arguments so long as the plaintiffs' claims do not "implicate the jurisprudential considerations

associated with the rejected tort of educational malpractice" and so "the Court or fact finder will

not be required to evaluate subjective aspects of the quality of [Defendant's] … academic

program or otherwise make judgments on purely academic issues, but instead will determine

whether or not [Defendant] had a contractual duty … and, if so, whether that duty was

breached." *Morris v. Yale Univ. Sch. of Med.*, 2006 WL 908155, at *5 (D. Conn. Apr. 4, 2006)

(citing *Johnson v. Schmitz*, 119 F. Supp. 2d 90, 95-96 (D. Conn. 2000)).

The same reasoning applies here. As set forth *infra* § II.A, Plaintiffs' Complaint includes

several distinct contractual promises unrelated to the reasonableness of its programs offered. *See*

Compl. ¶¶ 34-52. *See also Morris*, 2006 WL 908155, at *5 (D. Conn. Apr. 4, 2006) ("While

plaintiff's state law claims do not fall within the first [*Gupta*] exception, they do fall within the

second exception because plaintiff has alleged that '[t]he provision of the student handbook

granting a student 3 opportunities to pass the examination before dismissal is a distinct

contractual promise independent of the defendant's obligation to offer a reasonable educational

program.'"); *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 92 (N.Y. App. Div. 1982) ("[I]f the

8

contract with the school were to provide for certain specified services … for example, a

designated number of hours of instruction, and the school failed to meet its obligation, then a

contract action with appropriate consequential damages might be viable."); *Ansari v. New York*

*University*, 1997 WL 257473, at *3 (S.D.N.Y. May 16, 1997) ("Plaintiff's claim does not require

an evaluation of uniquely professional academic decisions such as the adequacy of the courses or

methods of instruction.  Rather, plaintiff's claim requires an evaluation of whether defendants

promised to provide services and failed to do so."); *Deen v. New School University*, 2007 WL

1032295, at *3-4 & n.5 (S.D.N.Y. Mar. 27, 2007) (denying defendant's motion for summary

judgment against student plaintiff's breach of contract claims and noting the claims were not

rooted in educational malpractice); *Novio v. New York Academy of Art*, 317 F. Supp. 3d 803,

811-14 (S.D.N.Y. 2018) (denying defendant's motion to dismiss student plaintiff's breach of

contract claims and finding the claims were not rooted in educational malpractice); *Village*

*Community School v. Adler*, 124 Misc.2d 817, 820 (N.Y. City Civ. Ct. 1984) (same); *O'Neill v.*

*New York Univ.*, 97 A.D.3d 199, 212 (1st Dep't 2012) ("Although *Maas* noted that courts retain

a limited role in reviewing 'highly specialized' academic judgments, that kind of action is not at

issue in this case.  Rather, petitioner's allegations concern NYU's failure to follow its conduct

and disciplinary policies and not any 'highly specialized' judgment associated with the research

he and his colleagues were conducting in the Vaccine Lab.").[2]

In sum, the deference granted to educational institutions in certain matters is not as broad

---

[2] Defendant's heavy reliance on *Paynter v. New York University*, 66 Misc.2d 92 (N.Y. App. Div.
1971) is inapposite.  *Paynter* is a two-paragraph appellate decision of a small claims case
involving a judgment, not a motion to dismiss.  *Id.*  And in *Paynter*, the defendant suspended
classes in May "for the time remaining in the school year prior to the examination period."  *Id.*
That is a far-cry from suspending in-person classes and all on-campus activities for 50% of the
semester.  Compl. ¶ 52.  As discussed in the Introduction, *supra*, courts across the country
dealing with nearly identical actions have denied motions to dismiss on these grounds.

or all-encompassing as Defendant contends.  Instead, such deference is afforded only in cases involving highly specialized academic judgments.  The decision to retain monies paid for products and services never delivered involves a standard commercial business decision, one encountered by all market participants who take money in return for the promise to deliver services and/or products.  Defendant's decision to retain such monies in this case was not academic in nature and clearly not a highly specialized academic judgment.  Plaintiffs' claims do not rise in educational malpractice, and no special deference is afforded to Defendant.[3]  So just as in *Doe*, Quinnipiac's "argument that Plaintiff[s'] breach of contract claims 'amount to nothing more than an educational malpractice' claim, barred under *Gupta*, is unavailing."  *Doe*, 404 F. Supp. 3d at 671.

## II.    PLAINTIFFS STATE A CLAIM FOR BREACH OF CONTRACT

### A.    Plaintiffs Allege that Defendant Breached a Specific Contractual Promise

Defendant argues "Plaintiffs have not sufficiently alleged that Quinnipiac breached a specific promise to provide on-campus in-person instruction at all times or to provide any prorated refund of tuition or fees if in-person instruction was not possible."  MTD at 20.[4]  But Plaintiffs are not required to identify such overly-specific terms in order to advance a breach of contract claim past the pleadings.  Instead, to prevail on a breach of contract claim, the plaintiffs

---

[3] In a footnote, Defendant advances a policy argument that posits that "a potential flood of litigation against educational institutions could be unleashed" if Plaintiffs' claims here were permitted to proceed.  MTD at 17 n.10.  Defendant overlooks the irony, however, that consequences of its own position are far worse.  As the court in *Milanov v. Univ. of Michigan* put it, "the Court notes troubling aspects of defendants' position.  For instance, adopting defendants' position could lead to the conclusion that the university could simply cancel all classes and then retain tuition and fees, having made the academic judgment that instruction was unnecessary or unwarranted."  *Milanov,* 2020 Mich. Ct. Cl. LEXIS 1, *9 n. 1.

[4] Plaintiffs' breach of contract claims are not premised on any allegations that Defendant's educational program failed in some fundamental aspect, or that Defendant acted in bad faith.  Accordingly, Defendant's arguments in §§ III.C.1 & III.C.3 of its MTD are inapplicable.

must simply show "(1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and (4) damages." *RWP Consol., L.P. v. Salvatore*, 460 F. Supp. 2d 351, 355 (D. Conn. 2006) (citing *Alliance Group Serv., Inc. v. Grassi & Co.*, 406 F.Supp.2d 157, 163 (D. Conn. 2005)); *accord Bouchard v. Sundberg*, 80 Conn. App. 180, 834 A.2d 744, 751 (2003)).  Defendant's motion to dismiss does not challenge prongs (1), (2), or (4), but solely disputes whether there was a breach.  Thus, any arguments on those points in reply should be deemed waived.

Here, Plaintiffs' Complaint identifies a specific contractual promise: "The combination of the express terms of the Bulletin, Defendant's publications and Defendant's usual and customary practice constituted an offer to any students attending Quinnipiac to register for on-campus classes.  If accepted by Plaintiffs and Class Members who did in fact register for such on-campus classes, in accordance with Quinnipiac's policies and procedures and usual custom and practice, and who timely paid tuition for those on-campus classes, Defendant became contractually obligated to provide on-campus classes to Plaintiffs and Class Members."  Compl. ¶¶ 44; *see also id.* ¶ 37 (Bulletin identifies specific benefits of on-campus courses); *id.* ¶ 42 (alleging usual and customary practice of providing in-person instruction in exchange for tuition).  And the Complaint alleges a breach:  "Defendant has breached such contracts, failed to provide those on-campus classes and/or services, and has not otherwise performed as obligated and required by the contracts between Plaintiffs and Class Members and Defendant.  Defendant moved all classes to online classes, restricted or eliminated Class Members' ability to access university facilities, and/or evicted Plaintiffs and/or their children and Class Members from campus housing.  In doing so, Defendant has deprived and continues to deprive Plaintiffs and Class Members from the benefit of their bargains with Defendant."  *Id.* ¶ 101.

Importantly, "where a breach of a specific, identifiable promise has been alleged, courts have found such a claim actionable." *Johnson v. Schmitz*, 119 F. Supp. 2d 90, 96 (D. Conn. 2000). As the Court in *Johnson* explained its reasoning:

> [T]here seems to be no dissent from [the] proposition that the catalogues, bulletins, circulars, and regulations of the institution determine the contractual relationship between the student and the educational institution ... [A] court that is asked to enforce an asserted contract between a student and his university must examine the oral and written expressions of the parties in light of the policies and customs of the particular institution ... ***Because a student bases his or her decision to attend a college or university, in significant part, on the documents received concerning core matters, such as faculty, curriculum, requirements, costs, facilities and special programs, application of contract principles based on these documents and other express or implied promises, consistent with the limitations expressed in Gupta v. New Britain General Hospital, 239 Conn. 574, 687 A.2d 111 (1996), appears sound***.

*Id.* at 93 (emphasis added); *see also id.* at 96 ("In the present case, Johnson does not claim that Schmitz, Skelly or Yale failed to 'provide an effective manner or course of instruction.' Instead, he claims that Yale failed to deliver on its express and implied contractual duties to safeguard students from academic misconduct, to investigate and deal with charges of academic misconduct, and to address charges of academic misconduct under its own procedures. These alleged promises are based on Yale's own representations and procedures related to conduct peripheral or ancillary to the central educational process."); *Morris*, 2006 WL 908155, at *5 (D. Conn. Apr. 4, 2006) ("plaintiff has presented a claim that defendant 'failed to deliver on its express ... contractual duties' to afford each student three opportunities to pass the USMLE before dismissal, and this 'alleged promise[ ][is] based on Yale's own representations and procedures related to conduct peripheral or ancillary to the central educational process.'") (citing *Johnson*, 119 F. Supp. 2d at 96)); *Osberg v. Yale Univ.*, No. CV085021879S, 2009 WL 659072,

12

at *3 (Conn. Super. Ct. Feb. 11, 2009) (finding that plaintiff's breach of contract claim that was premised on "express[] promises" in Yale's Bulletin could proceed, because "like the plaintiff's claim in *Johnson* … [the] plaintiff's claim here for breach of contract does not implicate the jurisprudential considerations associated with the rejected tort of educational malpractice, as the Court or fact finder will not be required to evaluate subjective aspects of the quality of Yale's ... academic program or otherwise make judgments on purely academic issues, but instead will determine whether or not Yale had a contractual duty ... and, if so, whether that duty was breached.").[5]

This should come as no surprise to Defendant, as the holdings in *Johnson*, *Morris*, *Osberg*, and *Ross* follow how courts have analyzed breach of contract claims in similar contexts. *See Doe*, 404 F. Supp. 3d at 667 (rejecting summary judgment where plaintiff based claims on "QU's own policies and procedures"); *Salerno*, 2020 WL 5583522, at *5 ("The crux of the College's motion is that the amended complaint does not identify a specific contractual provision that establishes that the College had an obligation to provide 'in-person educational services' for the entire Spring 2020 semester.  The Court disagrees … Throughout the amended complaint, Murillo alleges that the College's publications clearly implied that courses would be conducted in-person.  The College's materials also touted its many resources and facilities—all of which were located on the campus thereby implying in-person participation.  These allegations are sufficient at this early stage…."); *Smith*, 2020 WL 5694224, at *2 ("Plaintiff alleges that when she paid tuition to defendant a contract was created and that by holding classes virtually and not

---

[5] *See also Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992) (in exchange for his enrollment and participation on the basketball team, Ross alleged that the University had made a specific promise to provide adequate tutoring services, and had breached that promise by failing to provide any such services).

refunding a portion of the previously paid tuition and fees, defendant breached said contract. The essence of plaintiff's breach of contract claim is that she contracted for in-person classes and received online classes instead."); *Garland,* 2020 Mich. Ct. Cl. LEXIS 7, *8-9 ("Plaintiff alleges that there were express contracts making the promises contained in the complaint, and that defendants breached those agreements. Based on these allegations, she has properly alleged contract claims that can be enforced by the Court, and at this stage of the litigation, summary disposition is not warranted on these claims.").

**B.** **Plaintiffs State a Claim for Breach of Implied Contract**

Defendant's argument regarding Plaintiffs' claim for breach of implied contract is relegated to a single footnote where Defendant simply states "[t]o the extent that any implied contract between Quinnipiac and each of the Plaintiffs exists, it was, at most, that Quinnipiac would provide them the ability to earn academic credits and, ultimately, a degree, in exchange for tuition payments," and that "Plaintiffs fail to allege a 'meeting of the minds' between Quinnipiac and its students on anything more than that."  MTD at 20, n.11.  That is wrong.

While an implied contract under Connecticut law requires "a meeting of the minds and an actual agreement between the parties, by which the defendant undertakes a contractual commitment to the plaintiff," *Pecoraro v. New Haven Register*, 344 F. Supp. 2d 840, 844 (D. Conn. 2004), Defendant overlooks that a "contract implied in fact may be inferred from words, action or conduct." *Therrien v. Safeguard Mfg. Co.*, 180 Conn. 91, 94-95 (1980); *accord Alpha Crane Service, Inc. v. Capitol Crane Co.*, 6 Conn. App. 60, 81 (1986); *see also Lieberman v. Emigrant Mortg. Co.*, 436 F. Supp. 2d 357, 366 (D. Conn. 2006) ("An implied contract is an agreement between the parties which is not expressed in words but which is inferred from the acts and the conduct of the parties ... The test is whether the conduct and acts of the parties show an agreement.") (quoting *Brighenti v. New Britain Shirt Corp.*, 167 Conn. 403, 406 (1974)).

14

As an initial matter, the "existence and scope of such a contract is a question of fact for the trier, to be determined from all the evidence."  *Id.  See also Doe*, 404 F. Supp. 3d at 671 (noting "[w]hether QU's policies created an enforceable contract with Plaintiff must be determined by a factfinder").  Thus, whether an implied contract was formed is ill-suited for resolution on the pleadings.  *Bolmer v. Kocet*, 6 Conn. App. 595, 609 (1986) ("A prima facie case was established, and the court erred in granting Kocet's motion to dismiss as to the second count."); *Banerjee v. Roberts*, 641 F. Supp. 1093, 1105-1106 (D. Conn. 1986) (question of fact arises regarding resident's relationship with hospital where extrinsic statements made regarding terms of residency).

Nonetheless, here, Plaintiffs' allegations are sufficient to support their claim for breach of implied contract.  Specifically, Plaintiffs' Complaint provides that:

> Defendant's usual and customary practices when students register for on-campus courses and pay tuition for such courses is to provide on-campus instruction. Plaintiffs' and Class Members' reasonable expectation when registering for classes for the Spring 2020 semester was that those classes would be provided on-campus, consistent with Defendant's usual and customary practice.

> Plaintiffs and Class Members had the reasonable expectation that Defendant would provide the in-person educational experience and use of its facilities provided in Defendant's publications, including but not limited to the Bulletin, catalogs, handbooks, brochures, advertisements, and other promotional materials.

> The combination of the express terms of the Bulletin, Defendant's publications and Defendant's usual and customary practice constituted an offer to any students attending Quinnipiac to register for on-campus classes. If accepted by Plaintiffs and Class Members who did in fact register for such on-campus classes, in accordance with Quinnipiac's policies and procedures and usual custom and practice, and who timely paid tuition for those on-campus classes, Defendant became contractually obligated to provide on-campus classes to Plaintiffs and Class Members.

15

> In light of the terms laid out in the Bulletin, Defendant's
> publications, and Defendant's usual and customary practice,
> Plaintiffs and Plaintiffs' children registered for on-campus courses
> for the Spring 2020 semester. Defendant accepted their registration
> as an on-campus student taking on-campus courses and charged
> Plaintiffs and undergraduate … for the Spring 2020 semester[.]

Compl. ¶¶ 42-45; *see also, e.g.*, *id.* ¶¶ 106-112.  Defendant does not argue, nor could it in good

faith, that these allegations cannot state a claim for breach of implied contract.  *See Johnson*, 119

F. Supp. 2d at 93 (denying motion to dismiss implied contract claims even where plaintiff did not

"delineat[e] as to which promises are express and which are implied"); *see also Papelino v.*

*Albany College of Pharm. of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) ("an implied contract

is formed when a university accepts a student for enrollment.  …  The terms of the implied

contract are contained in the university's bulletins, circulars and regulations made available to

the student."); *Deen*, 2007 WL 1032295, at *2 ("The terms of the contract between university

and student include the rights and obligations of the parties stated in the university's catalogue

and other publications."); *Salerno*, 2020 WL 5583522, at *4 ("The university's publications are

terms of an 'implied-in-fact contract'"); *Osberg*, 2009 WL 659072, at *3 ("application of

contract principles based on these documents and other express or implied promises, consistent

with the limitations expressed in *Gupta* [], appears sound"); *A Slice of Pie Prods., LLC v.*

*Wayans Bros. Entm't*, 392 F. Supp. 2d 297, 310 (D. Conn. 2005) ("[E]vidence of the parties'

conduct in the context of evidence of industry custom and practice could indicate mutual assent

and formation of an implied contract between Gold and Slice of Pie.  Accordingly, Gold's

motion to dismiss Count VI of the complaint against it for breach of implied contract is

denied.").

C.      **Defendant's Proffered Cases Do Not Warrant Dismissal**

Defendant relies heavily on the *without* prejudice and partial dismissal in *Chong v. Northeastern Univ.*, 2020 WL 5847626 (D. Mass. Oct. 1, 2020), to argue that Plaintiffs fail to state a claim for breach of contract.  MTD at 21-23.  However, the *Chong* decision is inapposite for multiple reasons.  And it runs counter to the many (and growing) number of cases rejecting similar motions to dismiss.  *See supra* at pp. 5-6.

First, as Defendant concedes, the ruling in *Chong* was based in part on the fact that "[b]efore registering for courses for the spring semester of 2020, Gallo and Chong (and all similarly situated students) executed an Annual Financial Responsibility Agreement (FRA) with the university."  *Id.* at *1.  Thus, the contract claims were premised on the allegation that Northeastern contacted to provide in-person education under the FRA.  But the court reasoned that the FRA "ties the payment of tuition to registration for courses, not to the receipt of any particular method of course instruction."  *Id.* at *3.  Here, no such agreement exists that would tie payment strictly to the registration of courses and nothing else.  Nor does Defendant contend otherwise.

Second, *Chong* also based its decision on the fact that Plaintiffs "do not plead that the course descriptions provided by the Northeastern Registrar comprised part of the parties' contract."  *Chong*, 2020 WL 5847626, at *3.  And the complaint "lack[ed] any allegation which might allow the court to reasonably infer that these descriptions were meant to be read 'in conjunction with' the FRA—for example, that the descriptions appear on the registration website and are part of the enrollment process itself or that students generally understand the information in the description to be definitive."  *Id.*  Here, Plaintiffs allege that, prior to registering for courses, they used Defendant's Course Finder function in order to search and register for on-campus courses, and that they purposefully did not click on the Course Finder's "Online Courses

17

Only" option, as they specifically sought in-person classes.  Compl. ¶¶ 40-41, 44.  Plaintiffs also allege that Defendant's "Bulletin differentiates between the 'traditional on-campus programs' and online-only programs.  These online-only offerings are separately marketed and must be affirmatively selected, distinct from the in-person, on-campus education experience chosen by the vast majority of Quinnipiac students."  *Id.* ¶¶ 38-39.  So, here, unlike in *Chong*, Plaintiffs' breach is based on the totality of circumstances, including Defendant's Bulletin, Course Finder function, publications, and usual and customary practices.  *Id*. ¶ 44.

Defendant further posits that *Squeri v. Mount Ida College*, 954 F.3d 56 (1st Cir. 2020), is "instructive."  MTD at 23.  *Squeri* concerned a lawsuit against Mount Ida college which "permanently closed after six weeks' notice to its students that it was closing."  *Id.* at 61. Despite this notice, the plaintiffs' contract claims were based on the allegation "that the defendants knew that Mount Ida was on the brink of insolvency but concealed this information, instead assuring current and prospective students that Mount Ida was financially stable."  *Id.* The court held that the plaintiffs' claims were insufficiently pled because they merely alleged "that they 'applied for admission to Mount Ida,' they were each accepted, and that 'a contract was formed.'"  *Id.* at 71.  The plaintiffs did "not allege the terms of any such contract or that specific terms required earlier disclosure of the closing.  The amended complaint also makes passing reference to enrollment deposits and the fact that students gave up the chance to enroll at other schools by choosing Mount Ida but fails to explain how these actions formed an express or implied contract which obliged Mount Ida to provide earlier notice of its difficulties to its students than it did."  *Id.* at 71-72.  Here, as set forth *supra*, Plaintiffs' Complaint alleges, in

detail, the terms and circumstances surrounding their claim for breach of express and implied

contract.  Accordingly, *Squeri* bears no resemblance to the instant case.[6]

## III.     PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT

### A.     *Gupta* **Does Not Bar Plaintiffs' Claim For Unjust Enrichment**

Defendant first argues that "Plaintiffs' unjust enrichment claim fails as a matter of law

under the holdings in *Gupta*."  MTD at 28.  That is wrong.  As set forth above, Plaintiffs' claims

satisfy the second *Gupta* exception, consistent with this District's holdings in *Johnson*, *Morris*,

and *Osberg*.  Thus, the same reasoning disposes of Defendant's arguments under *Gupta* as to

unjust enrichment.  *Morris*, 2006 WL 908155, at *5 ("Because plaintiff's breach of contract

claim as pleaded satisfies the second *Gupta* exception, that claim will not be dismissed.

Because, as noted above, defendant's argument as to plaintiff's other state law claim hinges upon

---

[6] Defendant's remaining authority fares no better.  *Gally* and *Knelman* involve instances where the plaintiffs were unable to identify anything contractual and specific that a defendant breached. *See Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998) ("Indeed, the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted."); *Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 713 (D. Vt. 2012), *aff'd*, 570 F. App'x 66 (2d Cir. 2014) ("Essentially, Mr. Knelman asks the court to extend the disciplinary procedures of the Handbook to athletics, even though the 'Athletics' section of the Handbook does not reflect that intent. … Mr. Knelman fails to point to any 'specific and concrete term of the contract[,]' which supports his breach of contract claim based upon Middlebury's alleged failure to follow its own disciplinary procedures as set forth in the Handbook.").  *McNeil* concerns a university's failure to adhere to an aspirational goal as opposed to a specific, bargained-for service.  *See McNeil v. Yale Univ.*, 436 F. Supp. 3d 489, 532 (D. Conn. 2020) ("[T]he promise contained in these contracts is to have educational programs and student organizations that are free of discrimination on the basis of sex; to prohibit sexual misconduct; and to seek to eradicate sexual misconduct at the University.").  Finally, *Soderbloom v. Yale Univ.*, 1992 Ct. Sup. 1514 (Conn. Super. Ct. 1992), concerned Yale's decision to terminate its varsity wrestling program, which was clearly a decision involving academic judgment whereby "universities must have the flexibility to make changes in furtherance of their educational responsibilities."  *Id.* at 1520.  This is a far cry from a decision to retain all profits while not delivering what was originally promised and bargained for.

failure to satisfy this exception, defendant's motion as to plaintiff's other state law claims will also be denied.").[7]

### B.       Plaintiff May Plead Unjust Enrichment in the Alternative

Next, Defendant argues that "an unjust enrichment claim cannot be maintained where, as here, there is an enforceable contract."  MTD at 29.  But this argument runs afoul of repeated holdings within this Circuit that permit plaintiffs to plead unjust enrichment in the alternative, particularly where, as here, the parties dispute the contours of a contractual agreement. *NovaFund Advisors, LLC v. Capitala Grp., LLC*, 2019 WL 1173019, at *15 (D. Conn. Mar. 13, 2019) ("Capitala argues that NovaFund's unjust enrichment claim is precluded by the existence of the Agreement, which addressed the same subject matter.  NovaFund responds that Rule 8 permits it to plead claims in the alternative.  I agree that Rule 8 permits pleading unjust enrichment claims in the alternative where, as here, the existence of an enforceable contract is in dispute."); *accord MedPricer.com Inc. v. Becton, Dickinson & Co.*, 2014 WL 3700992, at *3 (D. Conn. July 25, 2014); *A & R Body Specialty v. Progressive Cas. Ins. Co.*, 2013 WL 718622, at *6 (D. Conn. Feb. 27, 2013) ("It is well established that plaintiffs may plead in the alternative for recovery under contract or unjust enrichment."); *Walker v. People's United Bank*, 305 F. Supp. 3d 365, 379 (D. Conn. 2018) ("At this stage in the proceedings, the complaint's inconsistent allegations do not preclude Walker from alleging unjust enrichment in the alternative.  As such, PUB's motion to dismiss Walker's claim of unjust enrichment is denied."); *Stanley Works Israel Ltd. v. 500 Grp., Inc.*, 332 F. Supp. 3d 488, 509 (D. Conn. 2018) ("In the event that the fact-

---

[7] *See also Osberg*, 2009 WL 659072, at *4 ("Nevertheless, for the same reasons that the plaintiff's claim for breach of contract would not be intrusive, the adjudication of the plaintiff's CUTPA claim would not require intrusion upon the defendant's educational decision making in the manner prohibited by *Gupta*.").

finder disagrees with Plaintiff that the Settlement Agreement contemplated tax withholding, Plaintiff is entitled to pursue a claim for unjust enrichment, in the alternative.").[8]

For this reason, nearly every court presented with similar facts have denied the defendant's motions to dismiss unjust enrichment claims as premature. The Court should do so here. *See, e.g.*, *Cross*, 2020 WL 4726814, at *3 ("Based on the Court's review, it does not appear beyond doubt that, after all reasonable inferences are afforded in favor of Cross, Cross can prove no set of facts entitling him, or members of the proposed class, to relief based on claims of unjust enrichment. … UT's request for a Civ. R. 12(B)(6) dismissal of Cross's claims of unjust enrichment is not well taken."); *Salerno*, 2020 WL 5583522, at *5 ("Regardless of whether a contract exists, the College disputes the merits of the breach of contract claim. Even more important, this Court has consistently held that a plaintiff may allege alternative claims in her complaint.").

Defendant predictably cites a handful of cases in support of the proposition that no unjust enrichment claim can lie where there exists an enforceable contract. However, "[t]he federal cases cited by [Defendant] do not address the availability of alternative pleading under Rule 8, and, in any event, involved cases where the existence of a valid contract does not appear to have been in dispute." *NovaFund Advisors*, 2019 WL 1173019, at *16.[9]

---

[8] *See also United Steel, Inc. v. Haynes Const. Co.*, 2006 WL 164812, at *3 (Conn. Super. Jan. 4, 2006) (finding that claims for breach of implied contract and unjust enrichment could be pleaded as alternative claims where an remedy under a contract may exist); *Union Bank, N.A. v. CBS Corp.*, 2009 WL 1675087, at *8 (S.D.N.Y. June 10, 2009) (declining to dismiss the claim for unjust enrichment where the contracts at issue did not unambiguously address the precise issue in dispute); *ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 436 (S.D.N.Y. 1998) ("Should a jury decide that these contracts did not grant [plaintiff] enforceable rights against the defendants, [plaintiff] could still seek recovery on the alternative, quasi-contract theory of unjust enrichment.").

[9] Defendant argues repeatedly that its Bulletin is "not an illusory contract." MTD at 30 ("[a]n implied obligation to use good faith is enough to avoid the finding of an illusory promise."); *id.*

### C.        Plaintiff Sufficiently Pleads the Elements of Unjust Enrichment

Relying entirely on *Roe v. Loyola Univ. New Orleans*, 2007 WL 4219174, *1 (E.D. La. Nov. 26, 2007), the only element of Plaintiffs' unjust enrichment claim Defendant appears to challenge is that Plaintiffs "have not alleged any supporting allegations that Quinnipiac unjustly retained non-gratuitous benefits conferred by the Plaintiffs."  MTD at 30.  To the contrary, Plaintiffs allege that "Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class, with full knowledge and awareness it would be unjust and inequitable to retain the benefit provided by Plaintiffs and Class Members for in-person instruction, access to Defendant's facilities and housing services under the circumstances because Defendant moved all classes online, restricted or eliminated Plaintiffs and/or their children and Class Members' ability to access university facilities, and/or evicted Plaintiffs and/or their children and Class Members from campus housing."  Compl. ¶ 119; *see also, e.g.*, *id.* ¶¶ 116-118, 120-22.  Thus, as a result of the closure of campus, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, etc.  At the same time, Defendant received a multi-million-dollar bailout from the Federal Government under the CARES Act.  All the while, Defendant is supported by endowment north of $550 million while its students are incurring debt to pay the very fees and tuition Defendant seeks to retain.  This is a textbook example of an unjust and inequitable arrangement.

---

("The fact that Quinnipiac reserved the right to change certain provisions of the Bulletin at any time does not render the contract illusory."); *id.* ("Moreover, Quinnipiac's obligation to use good faith "is enough to avoid the finding of an illusory promise."); *id.* ("There is simply no basis for finding an illusory contract between Quinnipiac and the Plaintiffs.").  That argument is of no import because regardless of whether the Bulletin was an illusory contract, it has no bearing on Plaintiffs' ability to plead in the alternative.

Furthermore, Defendant's reliance on *Roe* is misplaced as it is not analogous to the present case.  In *Roe*, the university provided *the option* for its students to attend other accredited law schools as visiting students (in-person and on-campus) during the aftermath of Hurricane Katrina without paying tuition to those schools, so long as they paid tuition to Loyola.  *Roe*, 2007 WL 4219174 at *2-3.  In dismissing Roe's unjust enrichment claim, the court explained "[p]laintiff has pointed to no provision … that would entitle him to a free semester of law school. Rather, by attending classes during the Fall 2005 semester at SMU, plaintiff received the benefit of the emergency policy made possible by Loyola."  *Id.* at *5-6.  Contrasting to the situation at hand, Plaintiffs were not given an option when Defendant shut down its campus mid-semester— they were forced to either accept a product that was not bargained for (online education) or receive no education at all and forfeit the tuition and fees they had already paid in full.  This Hobson's choice was no option at all.  Moreover, Plaintiffs here do not seek a tuition-free semester as did the plaintiff in *Loyola*.  Plaintiffs only seek a prorated refund based on the difference between tuition for on-campus and online courses, as well as a prorated refund of the fees for access and services for which they did not receive the benefit.

Finally, Defendant argues "[i]f Quinnipiac was required to refund any portion of the Plaintiffs' tuition for the Spring 2020 semester, then it would be the Plaintiffs who would be unjustly enriched, not Quinnipiac."  MTD at 32.  In support, Defendant pats itself on the back for its self-proclaimed "smooth transition to online education." *Id*.  But this argument misses the mark.  Equity and good conscience require disgorgement not because Defendant switched Plaintiffs' classes to a virtual format, but because Defendant did so while retaining the tuition and fee monies Plaintiffs paid for an in-person education, experience, and services.  Compl. ¶¶

116-122.  Expecting students to continue to pay for 100% of the products, programs, access, and

services never provided is the inequity here.

## IV.    PLAINTIFFS STATE A CLAIM FOR CONVERSION

Defendant first argues that "the Plaintiffs' conversion claim is prohibited by the

educational malpractice doctrine because adjudication of this claim would require this Court to

second-guess Quinnipiac's academic decision-making."  MTD at 33.  However, Plaintiffs'

claims do not sound in educational malpractice as stated *supra* § I.  Defendant offers no authority

in support of this argument because there is none.  *Gupta* has nothing to do with claims for

conversion.

Next, Defendant argues "the Plaintiffs' claim that they are entitled to a refund of tuition

and fees is a claim sounding in breach of contract, not conversion."  MTD at 34.  But the

parameters of the disputed contract are uncertain, and Plaintiffs may plead in the alternative.

*Wilenta Feed, Inc. v. Arnold Food Co.*, 2006 WL 798916, at *2 n.2 (D. Conn. Mar. 29, 2006)

("Defendants assert that the contract does not restrict the use of plaintiff's equipment.  Given the

ambiguity of the contract, this issue cannot be resolved on a motion to dismiss."); *see also id.* at

*2 ("Defendants' argument that these allegations have no utility independent of a breach of

contract claim is therefore unavailing."); *Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn.

559, 579 (1995) ("The [plaintiffs] were not barred from pursuing a negligence claim solely

because they also might have had a breach of contract claim.").

Finally, Defendant argues that "the Plaintiffs have not alleged sufficient facts to establish

that "the money claimed . . . at all times belonged to the plaintiff and that the defendant

converted it to his own use" and that Plaintiffs "have not specifically identified the funds at

issue."  MTD at 34.  But Plaintiffs allege an "undisputed right to receive educational services,

activities, and access Defendant's facilities for the Spring 2020 term.  Plaintiffs and Class

24

Members obtained such rights by paying Defendant tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant."  Compl. ¶ 125.  They further allege that Defendant has wrongfully exercised control over Plaintiffs' and Class Members' rights by closing its campus and switching to online education.  *Id.* ¶ 126.  That is sufficient.

Moreover, Defendant cites no authority holding that Plaintiffs are required to "identify the funds at issue" with specificity.  Nonetheless, the Complaint identifies how much Defendant charges in tuition and fees, Compl. ¶ 45, and also states the exact day the bargained-for services ceased being provided.  *Id.* ¶ 52.  And "allegations that specified funds were entrusted to [the defendants'] custody only for a particular purpose . . . and that instead defendants improperly retained the funds without making [use of them for that purpose], state a cause of action for conversion."  *Thys v. Fortis Secs. LLC*, 74 A.D.3d 546, 547 (N.Y. App. 2010).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss.  In the event the Court determines Plaintiffs' allegations are deficient in any respect, Plaintiffs respectfully request leave to amend. *See Hu v. City of New York*, 927 F.3d 81, 107 (2d Cir. 2019) ("[C]ourts should 'freely give leave' to amend pleadings 'when justice so requires.'") (quoting Fed. R. Civ. P. 15(a)(2)).

Dated: October 26, 2020                   Respectfully submitted,


                                          By:  _/s/ Craig A. Raabe_____

                                          Craig A. Raabe (ct04116)
                                          IZARD KINDALL & RAABE, LLP
                                          29 South Main Street, Suite 305
                                          West Hartford, CT 06107
                                          T: (860) 493-6292
                                          F: (860) 493-6290
                                          craabe@ikrlaw.com

                                          Steve W. Berman (*Pro Hac Vice*)
                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                          1301 Second Avenue, Suite 2000
                                          Seattle, WA 98101
                                          (206) 623-7292
                                          steve@hbsslaw.com

                                          Daniel J. Kurowski (*Pro Hac Vice*)
                                          Whitney K. Siehl (*Pro Hac Vice*)
                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                          455 N. Cityfront Plaza Dr., Suite 2410
                                          Chicago, IL 60611
                                          (708) 628-4949
                                          dank@hbsslaw.com
                                          whitneys@hbsslaw.com

                                          Sarah N. Westcot (*Pro Hac Vice* forthcoming)
                                          BURSOR & FISHER, P.A.
                                          701 Brickell Ave, Suite 1420
                                          Miami, FL 33131
                                          (305) 330-5512
                                          swestcot@bursor.com

                                          Joseph I. Marchese (*Pro Hac Vice* forthcoming)
                                          Alec M. Leslie (*Pro Hac Vice* forthcoming)
                                          BURSOR & FISHER, P.A.
                                          888 Seventh Avenue
                                          New York, NY 10019
                                          (646) 837-7410
                                          jmarchese@bursor.com
                                          aleslie@bursor.com

                                          *Attorneys for Plaintiffs, individually and on behalf*
                                          *of all others similarly situated*

26