UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ZOEY METZNER, | : |
| | : |
| Plaintiff, | : |
| V. | : CIVIL NO. 3:20-cv-00784 |
| | : |
| QUINNIPIAC UNIVERSITY, | : |
| | : |
| | : |
| Defendant. | : OCTOBER 26, 2020 |

**QUINNIPIAC UNIVERSITY'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION TO STAY DISCOVERY**

The Defendant Quinnipiac University ("Quinnipiac"), by and through its counsel, respectfully submits this reply memorandum in further support of its Renewed Motion to Stay Discovery, (Dkt. 37), pending the Court's ruling on Quinnipiac's Motion to Dismiss the Plaintiffs' First Amended Class Action Complaint ("Motion to Dismiss"), (Dkt. 35, 36).

**I.   INTRODUCTION**

As demonstrated in Quinnipiac's Renewed Motion to Stay Discovery, a temporary stay of discovery pending the resolution of Quinnipiac's potentially dispositive Motion to Dismiss would bring an efficient and measured approach to the management of discovery in this case. Given the unprecedented challenges presently facing Quinnipiac to ensure the health and safety of its campus community in light of the COVID-19 pandemic, the particular circumstances here weigh strongly in favor of staying the commencement of discovery, including class discovery, until Quinnipiac's Motion to Dismiss is resolved (at which point the Court, Quinnipiac, and both parties' counsel also may be closer to resuming normal operations). The Plaintiffs' Opposition to Quinnipiac's Renewed Motion to Stay Discovery largely relies on vague and generalized assertions about the

strength of Quinnipiac's Motion to Dismiss, the efficiency of court-moderated discovery disputes, and the potential prejudice that the Plaintiffs and the putative class would allegedly face by delaying the commencement of discovery for a short period of time. These factors do not outweigh the primary factors that this Court should consider in deciding this Motion to Stay—the avoidance of potentially expensive and wasteful discovery that would place an undue burden on Quinnipiac in the midst of a pandemic for a short time while the Motion to Dismiss is pending, the outcome of which could significantly narrow, if not eliminate, the issues in this case. *Cuartero v. United States*, No. 3:05CV1161 RNC, 2006 WL 3190521, at *3 (D. Conn. Nov. 1, 2006). Good cause exists for this Court to enter a stay and this motion should be granted.

## II.   LEGAL ARGUMENT

### A.   Quinnipiac's Pending Motion to Dismiss Has Raised "Substantial Grounds" For Dismissal

The Plaintiffs argue that there is a "high bar" that must be met in order for Quinnipiac to obtain a stay of discovery. (Dkt. 39, at 2.) This is incorrect. This Court need only find that Quinnipiac's Motion to Dismiss raises "substantial grounds or, stated another way, [does] not appear to be without foundation in law." *ITT Corp. v. Travelers Cas. & Surety Co.*, No. 3:12-cv-38 (RNC), 2012 WL 2944357, at *2 (D. Conn. July 18, 2012); *Cuartero*, 2006 WL 3190521, at *3. This standard does not require the Court to be fully persuaded of the merits of the Motion to Dismiss before granting a stay. Rather, the Court may determine that a stay is warranted if it finds that the motion raises substantial arguments for dismissal. *Cuartero*, 2006 WL 3190521, at *2; *United States ex rel. Ameti v. Sikorsky Aircraft Corp.*, No. 3:14-CV-1223(VLB), 2016 WL 10490528, at *2 (D. Conn. Nov. 28, 2016) (granting motion to stay pending resolution of motion to dismiss because the defendant's motion to dismiss was "not unfounded in law"); *Turner v.*

*Zickefoose*, No. 3:08 CV 01180 DJS, 2009 WL 2983190, at *3 (D. Conn. Sept. 14, 2009) (staying discovery based on "issues raised in the motion to dismiss").

Quinnipiac has raised "substantial issues" regarding the viability of the Plaintiffs' claims. Specifically, Quinnipiac's Motion to Dismiss argues that each and every one of the Plaintiffs' counts is subject to dismissal under Connecticut's educational malpractice doctrine and that, even if the educational malpractice doctrine does not bar the Plaintiffs' claims, they have failed to state legally cognizable claims for breach of contract (Count One), breach of implied contract (Count Two), unjust enrichment (Count Three), and conversion (Count Four) for other independent reasons. (Dkt. 36, at 10-34.)

The recent non-binding decisions from trial courts in other states denying motions to dismiss in similar tuition refund class actions that the Plaintiffs cite in their opposition brief have no bearing on whether the Plaintiffs in this case have stated viable causes of action ***under Connecticut law***. For instance, *Salerno v. Florida So. College*, -- F. Supp. 3d --, 2020 WL 5583522 (S.D. Fla. Sept. 16, 2020), cited by the Plaintiffs, is inapposite. There, the court denied Florida Southern College's motion to dismiss the breach of contract claim after reviewing certain language in Florida Southern College's publications and determining that the plaintiff had sufficiently alleged (1) the existence of a contract, (2) a material breach of that contract, and (3) damages resulting from the breach. *Id.* at *4-5. This is ***not*** the standard for breach of contract claims asserted against educational institutions in Connecticut that this Court must utilize in determining whether the Plaintiffs have stated a breach of contract claim. Rather, as discussed more fully in Quinnipiac's initial memorandum, there are only three circumstances in which a claim may be brought against an institution for breach of a contract for educational services. The first circumstance exists when "the educational program failed in some fundamental respect, as by not

offering any of the courses necessary to obtain certification in a particular field." *McNeil v. Yale Univ.*, 436 F. Supp. 3d 489, 531 (D. Conn. 2020). The second circumstance occurs if the school "failed to fulfill a specific contractual promise distinct from any overall obligation to offer a reasonable program."[1] *Id.* And the third circumstance occurs if the institution acted "arbitrarily, capriciously, or in bad faith," in a "substantial departure from academic norms." *Gupta v. New Britain Gen. Hosp.*, 239 Conn. 574, 595 (1996). For the reasons discussed more fully in Quinnipiac's memorandum in support of the Motion to Dismiss, the Plaintiffs' breach of contract claims do not fall within any of these circumstances. (Dkt. 36, at 17-28.)

Furthermore, the vast majority of the cases cited by the Plaintiffs as purported support for their opposition to the Motion to Dismiss are distinguishable because these courts, largely applying liberal state court rules in notice pleading jurisdictions, not the federal pleading standard, merely accepted the allegations in the complaint regarding the existence of an alleged contract between the institutions of higher education and their students, and did not look specifically at the contractual language to determine whether a specific promise to always provide in-person instruction had been made (as required by federal pleading standards). (*See also* Dkt. 36, at 7-8 n.2.) Conversely, in *Chong v. Northeastern Univ.*, No. 20-10844-RGS, 2020 WL 5847626 (D. Mass. Oct. 1, 2020), the court examined the relevant contract language governing the relationship between Northeastern and its students and dismissed the breach of contract claims, finding that the contract tied the payment of tuition to registration for courses, but not to the receipt of any particular method of course instruction. *Id.* at *3.

---

[1] The Plaintiffs' citation to *Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643 (D. Conn. 2019), is inapposite. There, the court denied Quinnipiac's motion for summary judgment as to the plaintiff's breach of contract claim, which alleged that Quinnipiac had breached its own policies and procedures with respect to the plaintiff's disciplinary action, relying on specific promises in Quinnipiac's Title IX policy and Student Handbook to comply with Title IX. *Id.* at 667-68. Here, the Plaintiffs have not cited to any specific promises in the Bulletin or elsewhere made by Quinnipiac to always provide in-person instruction, and there are none.

Here, the Plaintiffs have failed to state a claim for breach of contract because, among other reasons, they have not identified a specific identifiable promise to either exclusively provide in-person on-campus instruction (even during a pandemic) or to provide a prorated refund of tuition and fees in the event an instructional format change becomes necessary. None of the provisions of the Bulletin that the Plaintiffs cite in the Amended Complaint is a specific promise to provide in-person on-campus instruction at all times. Nor is there any provision in the Bulletin that governs the manner or format in which Quinnipiac was to deliver education or services to its students. The Plaintiffs cite only broad aspirational language in the Bulletin regarding the residential on-campus experience. In contrast, specific provisions of the Bulletin make clear that tuition refunds are only available in certain limited situations—none of which apply here. The Bulletin does *not* provide that refunds are available if the means of instruction changes or if a student is dissatisfied with how a class was taught. (*See also* Dkt. 36, at 20-27.)

Quinnipiac's Motion to Dismiss raises "substantial grounds" and is not without foundation in law, which is sufficient for this Court to exercise its inherent authority to enter a stay. Moreover, even if the Court were to dismiss some but not all of Plaintiffs' allegations, that could substantially narrow the scope of appropriate discovery. For example, discovery on a breach of contract claim tied to specific documents forming an alleged contractual promise would be narrower than discovery on vaguely-pled tort claims.

**B.     Discovery is Likely to be Burdensome for the Parties and the Court**

The Plaintiffs argue the Motion to Stay should be denied because Quinnipiac is merely speculating that discovery will be extensive and burdensome since the Plaintiffs have not yet served their discovery requests. (Dkt. 39, at 7.) Contrary to the Plaintiffs' inference, this Court has the authority to stay discovery before a party serves discovery requests. *United States ex rel. Ameti*,

2016 WL 10490528, at *2 (granting motion to stay before discovery issued). Indeed, issuing a stay at this early stage reduces any potential prejudice to the Plaintiffs because their discovery requests are not pending. *See Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, No. 09 CV 5874 (RPP), 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009) (holding that the plaintiff would not be prejudiced where no discovery requests had yet been served in the case and the commencement of discovery would be delayed for only a few months).

The Plaintiffs appear to suggest that discovery may be streamlined and will not be burdensome because this is a putative class action. (Dkt. 39, at 8.) The fact that a class action "permits the courts to try common issues of law and fact that affect all class members together," *Fishon v. Peloton Interactive, Inc.*, No. 19-CV-11711 (LJL), 2020 WL 4284154, at *3 (S.D.N.Y. July 27, 2020) (cited by the Plaintiffs), does not mean that discovery in this matter will not be extensive and complex. Indeed, the Plaintiffs' decision to not yet serve their discovery requests would seem to be a strategic choice designed to enhance their chances of prevailing on this motion by not allowing Quinnipiac to point to the breadth of specific requests in demonstrating the burden that it is likely to face.

The likely breadth of the scope of discovery is evidenced by the Plaintiffs' statements in the Rule 26(f) Report, where they state that "discovery will be necessary regarding the Fed. R. Civ. P. 23 requirements necessary for Plaintiff to support her case that class certification should be granted" and they identify fourteen different topics on which they anticipate discovery will be necessary. (Dkt. 21, at 5, 9-10.) The topics that the Plaintiffs identify include seeking extensive information related to Quinnipiac's normal operations, measures taken to cope with the impacts of the coronavirus, information relating to approximately 10,000 students and approximately 800 faculty members, documents related to Quinnipiac's Board of Trustees meetings, and documents

and communications relating to Quinnipiac's transition to online learning. (*See* Dkt. 37-2, at ¶¶ 4-7, 9, 13, 14.) Searching for and providing this kind of information would impose a substantial burden and significant litigation expense on Quinnipiac. (*Id.* ¶¶ 4-7, 13, 14.) Taking depositions, which likely would need to be conducted remotely during the pandemic (or otherwise potentially expose attendees to health risks), would also be likely to take longer to complete and increase costs due to inevitable technology issues and delays with the witness, court reporter, and counsel on both sides all at different locations with different Internet connectivity levels.

The Plaintiffs' statement that they do not contemplate an expansion of the presumptive discovery limits, (Dkt. 39, at 8), stands in contrast to the broad range of topics on which Plaintiffs anticipate discovery, (Dkt. 21, at 5, 9-10). Further, their implication that discovery will not be overly broad because their "claims center on actions and will request information applicable in place during a single academic term: Spring 2020," is belied by the next sentence in their opposition brief which states that they "do anticipate extensive discovery into putative Class Members' individual experiences given Quinnipiac's common policies and practices applicable to students at large." (Dkt. 39, at 9.) Quinnipiac also would need to take discovery from putative class members in order to defend any motion for class certification, which would pose particular challenges during the pandemic to the extent that subpoenas (if necessary) would have to be served in person, and time-consuming virtual depositions arranged and conducted. Regardless of how the Plaintiffs characterize the volume of anticipated discovery, it is likely to be broad and burdensome and will require diverting resources that are currently committed to safeguarding Quinnipiac's operations and community during the COVID-19 pandemic.

The Plaintiffs further argue that "[a]ny specific concerns that Quinnipiac may have regarding the scope or burden of discovery should follow the routine course." (Dkt. 39, at 9.) While

Quinnipiac does intend to follow this routine course once discovery commences, this is not a factor that weighs against a stay. It is evident from the Rule 26(f) Report that the parties disagree on the scope of discovery necessary in this case and Quinnipiac anticipates making various objections to the Plaintiffs' requests as appropriate. The likelihood of motion practice relating to discovery weighs in favor of a stay. *See Cuartero*, 2006 WL 3190521, at *3 (staying discovery pending resolution of motion to dismiss, where, "[i]f discovery were to continue, it would also be likely to result in additional motion practice").

Finally, contrary to the Plaintiff's suggestion, Quinnipiac never asserted that FERPA provides a privilege that prevents the disclosure of student records. (Dkt. 39, at 10.) Rather, Quinnipiac noted that FERPA would require Quinnipiac to expend significant amounts of time and money if it were required to disclose any student records. (Dkt. 37-2, at ¶ 12.) Under FERPA, Quinnipiac may only disclose information pertaining to student records without the student's or parent's written consent under certain circumstances, including, but not limited to pursuant to a judicial order or lawfully issued subpoena, ***and then only after a "reasonable effort" to notify the student that it intends to release the student's protected education records***. 34 C.F.R. § 99.31(a)(9)(ii) (emphasis added). (*See also* Dkt. 37-2, at ¶ 8.) Each student would then have an opportunity to object to the disclosure of his or her records. (Dkt. 37-2, at ¶ 8.) Thus, if this Court were to require Quinnipiac to produce any student records, Quinnipiac would be required to make a "reasonable effort" to notify each student and a general notice may not satisfy the "reasonable effort" standard. *See* Letter from L. Rooker, Family Policy Compliance Office, to E. Opton, Jr., University Counsel, The Regents of the University of California, dated Sept. 17, 1999 ("Notice on campus bulletin boards or in campus newspapers would not be adequate to meet this requirement."), which may be found at:

https://www2.ed.gov/policy/gen/guid/fpco/ferpa/library/oakland_ca.html. These are all significant and expensive undertakings that may not be necessary if the Motion to Dismiss is granted. Similarly, redaction of approximately 10,000 student files prior to production would also require the expenditure of significant resources (likely to exceed the cost of notifying students). For all of these reasons, the burdensome nature of the anticipated discovery in this action weighs in favor of a stay.

### C. The Plaintiffs Would Not Be Prejudiced By a Stay

The Plaintiffs argue that a delay of several months while the Court decides the Motion to Dismiss unfairly prejudices them and the putative class members because it will delay their recovery of the tuition refunds they claim they are owed.[2] (Dkt. 39, at 11.) They also claim, without evidence, that delaying discovery may result in the loss of evidence or the inability of witnesses to recall specific facts. (*Id.* at 12.) The Plaintiffs have identified no evidence or records that are not preserved or could deteriorate, nor have they identified any witnesses who they would be unable to depose. Moreover, in light of the recent and unprecedented nature of Quinnipiac's switch to online learning and measures taken to combat the coronavirus, it is unlikely that material witnesses would be unable to recall specific facts or events as a result of a temporary stay of discovery. In short, the Plaintiffs have identified no reason why discovery is required on an urgent basis or absolutely necessary at the preliminary stage of this case. No trial date has been set and the Plaintiffs have yet to serve discovery requests. If Quinnipiac's Motion to Dismiss is denied, the parties simply can proceed with discovery with plenty of time to complete it. Because the

---

[2] To the extent the Plaintiffs suggest that there is a "true hardship" for students with little financial resources, (Dkt. 39, at 11), those likely would be students who received financial aid and likely would not be eligible for any significant cash recovery even if Plaintiffs were to prevail in this case.

adjudication of the pending Motion to Dismiss may obviate the need for burdensome discovery, a brief stay of discovery until the Motion to Dismiss is resolved is both reasonable and warranted.

## III. CONCLUSION

For all of these reasons, and the reasons set forth in Quinnipiac's initial memorandum, Quinnipiac respectfully requests that the Court enter an order staying discovery until the Court rules on Quinnipiac's Motion to Dismiss the First Amended Class Action Complaint.

                                          DEFENDANT,
                                          QUINNIPIAC UNIVERSITY,

                                        By   */s/ Edward J. Heath*
                                               Edward J. Heath (ct20992)
                                               Wystan M. Ackerman (ct24090)
                                               Elizabeth R. Leong (ct24453)
                                               Dan A. Brody (ct30301)
                                               Robinson & Cole LLP
                                               280 Trumbull Street
                                               Hartford, CT 06103-3597
                                               Tel. No.: (860) 275-8200
                                               Fax No.: (860) 275-8299
                                               E-mail: eheath@rc.com;
                                               wackerman@rc.com; eleong@rc.com;
                                               dbrody@rc.com

## CERTIFICATION

I hereby certify that on October 26, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

        */s/ Edward J. Heath*
        Edward J. Heath