UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ZOEY METZNER, DOMINIC GRAVINO, | : | |
| DAVE BRUNEAU, and RICHARD HOTTER, | : | |
| individually and on behalf of all others | : | |
| similarly situated, | : | CIVIL NO. 3:20-cv-00784-KAD |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| QUINNIPIAC UNIVERSITY, | : | NOVEMBER 9, 2020 |
| | : | |
| | : | |
| Defendant. | : | |

**THE DEFENDANT QUINNIPIAC UNIVERSITY'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  LEGAL ARGUMENT.......................................................................................... 2

    A.  The Plaintiffs' Claims Are Non-Actionable Educational Malpractice
        Claims ........................................................................................................ 2

    B.  The Plaintiffs Have Failed to State Any Claim for Breach of Contract ................ 6

    C.  The Plaintiffs Have Failed to State a Claim for Unjust Enrichment...................... 8

    D.  The Plaintiffs Have Failed to State a Claim for Conversion ................................ 9

III.  CONCLUSION................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................5

*Brodsky v. Mead Sch. for Human Dev.*,
  No. DNX05CV970156788S, 1999 WL 391580 (Conn. Super. Ct. June 4,
  1999) .......................................................................................................................4

*Burns v. Quinnipiac Univ.*,
  120 Conn. App. 311 (2010) ......................................................................................9

*Chong v. Northeastern Univ.*,
  No. 20-10844-RGS, 2020 WL 5847626 (D. Mass. Oct. 1, 2020) ...........................6

*City of Clinton v. Goldner*,
  885 N.E.2d 67 (Ind. Ct. App. 2008) .........................................................................5

*Coppola v. St. Bernadette's Cath. Sch.*,
  No. NNHCV186080356S, 2019 WL 3220388 (Conn. Super. Ct. June 6, 2019) .....5

*Deming v. Nationwide Mut. Ins. Co.*,
  275 Conn. 745 (2006) .............................................................................................10

*Doe v. Quinnipiac Univ.*,
  404 F. Supp. 3d 643 (D. Conn. 2019) ......................................................................8

*In re Estate of Hernansaiz*,
  No. 348729, 2020 WL 4728929 (Mich. Ct. App. Aug. 13, 2020) ...........................5

*Faigel v. Fairfield Univ.*,
  75 Conn. App. 37 (2003) ..........................................................................................7

*Gupta v. New Britain Gen. Hosp.*,
  239 Conn. 574 (1996) ...................................................................................... *passim*

*Hendrickson v. Haven Place, Inc.*,
  No. 100816, 2014 WL 4261947 (Ohio Ct. App. Aug. 28, 2014) .............................5

*Hope Acad. v. Friel*,
  No. CV030081183S, 2004 WL 1888909 (Conn. Super. Ct. July 22, 2004) (en
  banc) ........................................................................................................................7

*Johnson v. Schmitz*,
  119 F. Supp. 2d 90 (D. Conn. 2000) .....................................................................5, 8

*Kloth-Zanard v. Amridge Univ.*,
  No. 3:09CV606 JBA, 2012 WL 2397161 (D. Conn. June 25, 2012) ...................................4, 7

*Knelman v. Middlebury Coll.*,
  898 F. Supp. 2d 697 (D. Vt. 2012)................................................................................................7

*Macomber v. Travelers Prop. & Cas. Corp.*,
  261 Conn. 620 (2002) ................................................................................................................10

*Madej v. Yale Univ.*,
  No. 3:20-cv-133 (JCH), 2020 WL 1614230 (D. Conn. Mar. 31, 2020) ..............................2, 3

*McDermott v. The Ohio State Univ.*,
  No. 2020-00286JD, 2020 WL 5239892 (Ohio Ct. Cl. Aug. 24, 2020)......................................5

*McNeil v. Yale Univ.*,
  436 F. Supp. 3d 489 (D. Conn. 2020)........................................................................................6

*Milanov v. Univ. of Mich.*,
  No. 20-000056-MK, 2020 Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. July 27,
  2020) ............................................................................................................................................5

*Molaver v. Thomas*,
  125 Conn. App. 88 (2010) ..........................................................................................................8

*Morris v. Yale Univ. Sch. of Med.*,
  No. 05CV848 (JBA), 2006 WL 908155 (D. Conn. Apr. 4, 2006)..............................................8

*Nasuta ex rel. Nasuta v. Hartford Roman Cath. Dioc. Corp.*,
  No. HHDCV136042534S, 2014 WL 5472087 (Conn. Super. Ct. Sept. 30,
  2014) ............................................................................................................................................5

*Osberg v. Yale Univ.*,
  No. CV085021879S, 2009 WL 659072 (Conn. Super. Ct. Feb. 11, 2009) ..............................8

*Papelino v. Albany College of Pharm. of Union Univ.*,
  633 F.3d 81 (2d Cir. 2011)..........................................................................................................8

*Paynter v. New York Univ.*,
  319 N.Y.S.2d 893 (App. Div. 1st Dept. 1971)...........................................................................3

*Reynolds v. Sterling Coll., Inc.*,
  750 A.2d 1020 (Vt. 2000) ............................................................................................................7

*Roe v. Loyola Univ. New Orleans*,
  No. 07-1828, 2007 WL 4219174 (E.D. La. Nov. 26, 2007).......................................................9

*Rosado v. Barry Univ.*,
  No. 1:20-CV-21813-JEM, 2020 WL 6438684 (S.D. Fla. Oct. 30, 2020)..................................5

*Ross v. Creighton Univ.*,
　957 F.2d 410 (7th Cir. 1992) ...................................................................8

*RWP Consol., L.P. v. Salvatore*,
　460 F. Supp. 2d 351 (D. Conn. 2006)......................................................6

*Salerno v. Florida So. College*,
　-- F. Supp. 3d --, 2020 WL 5583522 (S.D. Fla. Sept. 16, 2020).............4, 5

*Soderbloom v. Yale Univ.*,
　No. CV-91-0324553S, 1992 WL 24448 (Conn. Super. Ct. Feb. 3, 1992)................3

*Tankoos v. Mead Sch. for Human Dev.*,
　No. X05CV950145853S, 1999 WL 391350 (Conn. Super. Ct. June 4, 1999).........8

*Therrien v. Safeguard Mfg. Co.*,
　180 Conn. 91 (1980) ...................................................................8

*Thys v. Fortis Secs. LLC*,
　74 A.D.3d 546 (N.Y. App. Div. 1st Dept. 2010) ....................................10

The Defendant Quinnipiac University ("Quinnipiac"), by and through its counsel, respectfully submits this reply memorandum in further support of its Motion to Dismiss the Plaintiffs' First Amended Class Action Complaint ("Motion to Dismiss"), (Dkt. 35, 36).

## I.    INTRODUCTION

The Plaintiffs claim that they paid tuition and fees "to get an in-person educational experience" and that they are entitled to a refund of the difference between the undefined and subjective educational "value" of on-campus in-person instruction as compared to the undefined and subjective "value" of instruction that was provided to them online so that they could stay safe during this global pandemic. (Opposition Brief ("Opp.") (Dkt. 40), at 1.) The Court cannot decide such a question without delving into educational "value" judgments that, under Connecticut Supreme Court authority, courts cannot decide. The educational "value" judgment that the Plaintiffs seek here is not functionally any different from a student alleging, prior to COVID-19, that she chose to attend Quinnipiac based on a prominent professor or certain dormitories, and the professor unexpectedly died or left for another university or the dormitories were altered in a way the student disfavors, and, therefore, the student deserves a partial refund. There can be no doubt that such a claim would have to be dismissed under Connecticut law.

In an effort to avoid application of the educational malpractice doctrine, the Plaintiffs wrongly contend that Quinnipiac's decision to transition to online learning was a "commercial" decision, not a decision relating to the safe provision of educational services. (*Id.* at 2.) Quinnipiac's decision to close its campus and transition to online learning was an academic judgment directly related to how Quinnipiac could safely deliver appropriate educational services to its students. The university is entitled to deference on this decision and is protected from judicial interference under the educational malpractice doctrine. *Gupta v. New Britain Gen. Hosp.*, 239 Conn. 574, 590-92 (1996).

1

The Plaintiffs' breach of contract claims also fail because, contrary to their assertions, they have not identified *a specific identifiable promise* to either exclusively provide in-person on-campus instruction (even during a global pandemic) or to provide a prorated refund of tuition and fees in the event an instructional format change becomes necessary, as the Plaintiffs are required to do under the narrow test set forth in *Gupta* for breach of contract claims against educational institutions. *Id.* at 593. The Plaintiffs' quasi-contract claims also fail because, among other reasons, the Plaintiffs have alleged that the relationship between Quinnipiac and its students is governed by a contract.

The Plaintiffs have had two opportunities to state legally cognizable claims but have failed to do so. The Amended Complaint should be dismissed with prejudice.

## II.    LEGAL ARGUMENT

### A.    The Plaintiffs' Claims Are Non-Actionable Educational Malpractice Claims

The Plaintiffs' own hypothetical illustrates the fallacy of their contention that Quinnipiac's transition to online learning was a commercial activity, as opposed to one relating to the provision of educational services. (Opp., at 1-3.) Quinnipiac's transition to online learning is simply not analogous to the university "contract[ing] to sell one of its buildings and then reneg[ing] on the deal." (Opp., at 1.) The breach of an agreement to sell a building has nothing to do with (or, at most, is merely peripheral to) how Quinnipiac provides educational services to its students. In contrast, Quinnipiac's decision to transition to online learning during the early stages of the pandemic was directly linked to how it would continue to safely provide its students with the instruction and academic credits for which they paid tuition. The Connecticut Supreme Court has held that "questions concerning the reasonableness of conduct by educational institutions in providing particular educational services to students . . . [are] claims of 'educational malpractice' [that] are not cognizable." *Gupta*, 239 Conn. at 590-91; *see also Madej v. Yale Univ.*, No. 3:20-

2

cv-133 (JCH), 2020 WL 1614230, at *8 (D. Conn. Mar. 31, 2020) ("in matters involving academic judgment, courts must defer to academic institutions"); *Soderbloom v. Yale Univ.*, No. CV-91-0324553S, 1992 WL 24448, at *4 (Conn. Super. Ct. Feb. 3, 1992) ("universities must have the flexibility to make changes in furtherance of their educational responsibilities"); *Paynter v. New York Univ.*, 319 N.Y.S.2d 893, 894 (App. Div. 1st Dept. 1971) (reversing award of tuition refund for cancelled classes due to the Kent State riots, holding that private universities have inherent authority to make such decisions and that the trial court erred in substituting its judgment for that of university administrators).[1]

Quinnipiac's decision to restrict students' access to campus—the decision that the Plaintiffs complain most emphatically about—is a decision regarding how to provide educational services to its students that is protected under the educational malpractice doctrine. In their own words, the essence of the Plaintiffs' claims is that they "purchase[d] an on-campus ***educational*** experience with multiple benefits, services, experiences, and opportunities," including the "use of Defendant's infrastructure, buildings, libraries, labs, computers, etc." (Opp., at 2 (emphasis added).) At the core of those claims is the concept of the nature of the "educational experience" that Quinnipiac decided to provide under the particular (and dangerous) circumstances that arose in the Spring; thus, that decision is one within the educational malpractice doctrine. *Madej*, 2020 WL 1614230, at *8; *Soderbloom*, 1992 WL 24448, at *4.

Furthermore, the damages that the Plaintiffs seek are based on their perception that online learning reduced the value or quality of the education that Quinnipiac provided.[2] Under *Gupta*,

---

[1] The Plaintiffs attempt to distinguish *Paynter* by arguing that the decision is short in length and involved the suspension of classes for a shorter period of time than is at issue here. (Opp., at 9 n.2.) The legal principle upheld in this decision—that courts may not interfere with a private university's inherent authority to determine how to keep its students safe—does hinge on the time period involved. (*See also* Dkt. 36, at 14-15.)

[2] (*See, e.g.*, Am. Compl. ¶ 2 ("So while students enrolled and paid Defendant for a comprehensive academic experience, Defendant instead offers Plaintiffs and Class Members ***something far less*** . . . .") (emphasis added); *id.* ¶ 7 ("Plaintiffs bring this action because Plaintiffs and Class Members did not receive the ***full-value of the services paid*** . . . .") (emphasis added); *id.* ¶ 66 (alleging that Quinnipiac provided "only emergency and unplanned online

these types of claims are also not cognizable under Connecticut law. *Gupta*, 239 Conn. at 591-92 (holding that contract claims based on allegedly inadequate educational services or the overall quality of educational programs fall within the educational malpractice doctrine). Even assuming for the sake of argument that the Plaintiffs are correct that the "value" of online instruction is lower than the "value" of in-person instruction, under *Gupta*, the Court cannot decide how much Quinnipiac (or a hypothetical similar university) would have "reasonably" charged for a hybrid semester of partial in-person and partial online instruction because that involves educational "value" judgments that Connecticut courts do not make, just like Connecticut courts would not decide a dispute over whether a Yale University program is too expensive or worth every penny. *See, e.g.*, *Brodsky v. Mead Sch. for Human Dev.*, No. DNX05CV970156788S, 1999 WL 391580, at *11 (Conn. Super. Ct. June 4, 1999) (holding that an inquiry that requires an examination of the quality and value of educational services provides cannot be maintained under *Gupta*).

The Plaintiffs' reliance upon a number of out-of-state decisions in similar tuition refund putative class actions is misplaced because none of those cases apply the same test that this Court must apply here.

- In *Salerno v. Florida So. College*, -- F. Supp. 3d --, 2020 WL 5583522 (S.D. Fla. Sept. 16, 2020), the court denied Florida Southern College's motion to dismiss the plaintiffs' breach of contract claim after reviewing certain language in Florida Southern College's publications and determining that the plaintiffs had sufficiently alleged (1) the existence of a contract, (2) a material breach of that contract, and (3) damages resulting from the breach. *Id.* at *4-5.[3] This is ***not*** the standard applicable to the Plaintiffs' breach of contract claim here. Rather, the Plaintiffs must allege that Quinnipiac breached a specific contractual promise that is precise and based on specific contractual terms to always provide on-campus, in-person instruction, regardless of the circumstances. *Gupta*, 239 Conn. at 593; *Kloth-Zanard v. Amridge Univ.*, No. 3:09CV606 JBA, 2012 WL 2397161, at *4 (D. Conn. June 25, 2012) (citation omitted). As discussed in Quinnipiac's initial

---

educational experiences that are ***vastly different from what Plaintiffs and Class Members contracted and paid for***") (emphasis added); *id.* ¶ 102 ("The online classes provided by Defendant are objectively different from, and ***less valuable than***, the on-campus classes for which the parties contracted.") (emphasis added); *id.* ¶ 112 ("The online classes provided by Defendant are objectively different from, and ***less valuable than***, the on-campus classes for which the parties entered into an implied contract.") (emphasis added).)

[3] Florida Southern did not raise the educational malpractice doctrine as a defense. *Id.*

memorandum and below, the Plaintiffs have not done so. (*See* Dkt. 36, at 10-17; *see also id.* at 12 n.9.)[4]

- The state court cases that the Plaintiffs cite, (Opp., at 4-5), were not decided under the rigorous federal pleading standard that this Court must apply, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, they were decided under more liberal notice pleading standards that are inapplicable here. *See, e.g.*, *Hendrickson v. Haven Place, Inc.*, No. 100816, 2014 WL 4261947, at *2 (Ohio Ct. App. Aug. 28, 2014) (noting that Ohio courts have "not adopted the [federal] modification of notice pleading standards"); *In re Estate of Hernansaiz*, No. 348729, 2020 WL 4728929, at *3 (Mich. Ct. App. Aug. 13, 2020) ("Michigan is a 'notice pleading' state"); *City of Clinton v. Goldner*, 885 N.E.2d 67, 74 (Ind. Ct. App. 2008) ("Notice pleading merely requires pleading the operative facts so as to place the defendant on notice as to the evidence to be presented at trial.").[5] In each of the decisions cited by the Plaintiffs, the court denied the motions to dismiss on the ground that the plaintiffs had sufficiently alleged the elements of their claims and did not determine whether the claims stated "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face,'" which is the inquiry that this Court must make here. *Iqbal*, 556 U.S. at 678.[6]

---

[4] The recently decided *Rosado v. Barry Univ.*, No. 1:20-CV-21813-JEM, 2020 WL 6438684 (S.D. Fla. Oct. 30, 2020), relied on *Salerno* to deny Barry University's motion to dismiss and is distinguishable for the same reasons. *Id.* at *3-4. As in *Salerno*, Barry did not raise the educational malpractice doctrine and there is no restriction under Florida law regarding the circumstances under which a plaintiff may assert a breach of contract claim as there is in Connecticut.

[5] *McDermott v. The Ohio State Univ.*, No. 2020-00286JD, 2020 WL 5239892 (Ohio Ct. Cl. Aug. 24, 2020), is also inapposite because the plaintiff alleged that she and putative class members were entitled to a prorated refund of a student union fee and a dental clinic fee that they paid for use of those buildings that were closed because of the pandemic. *Id.* at *1. No such fees are at issue here, where the Plaintiffs allege only that they paid a technology fee. The Plaintiffs also point to dicta in *Milanov v. Univ. of Mich.*, No. 20-000056-MK, 2020 Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. July 27, 2020), for the proposition that "adopting defendants' position could lead to the conclusion that the university could simply cancel all classes and then retain tuition and fees, having made the academic judgment that instruction was unnecessary or unwarranted." (Opp., at 10 n.3.) However, the provision of no education is quite different from a change in how the education is provided. The former is a claim that would be allowed under the exceptions to the educational malpractice doctrine, while the latter is not. *Gupta*, 293 Conn. at 591-92.

[6] Similarly, the Connecticut cases that the Plaintiffs cite provide no support for their contention that their claims, which arise out of Quinnipiac's decisions about how it would provide educational services to its students, are not prohibited by the educational malpractice doctrine. Two of the cases that the Plaintiffs cite are negligence cases that arose out of the institution's alleged failures to protect the plaintiffs from personal injuries, not whether the institution provided an effective education. *See Coppola v. St. Bernadette's Cath. Sch.*, No. NNHCV186080356S, 2019 WL 3220388, at *3 (Conn. Super. Ct. June 6, 2019) (permitting negligence claims against school which alleged that the school failed to protect plaintiff from physical and emotional harm); *Nasuta ex rel. Nasuta v. Hartford Roman Cath. Dioc. Corp.*, No. HHDCV136042534S, 2014 WL 5472087, at *3 (Conn. Super. Ct. Sept. 30, 2014) (holding allegations did not implicate school's ability to educate effectively, but instead concerned school's duty not to cause physical harm to student through negligent conduct where student assaulted while at school). *Johnson v. Schmitz*, 119 F. Supp. 2d 90 (D. Conn. 2000), is also inapplicable because the court there found that the plaintiff had sufficiently alleged that Yale had violated alleged promises that were "based on Yale's own representations and procedures relating to conduct peripheral or ancillary to the central educational process." *Id.* at 96. This is not the case here, where the decision to close campus and transition to online learning was central to the issue of how Quinnipiac provided educational services to its students.

The recent decision in *Chong v. Northeastern Univ.*, No. 20-10844-RGS, 2020 WL 5847626 (D. Mass. Oct. 1, 2020), is more directly on point. There, the district court examined the relevant contract language and dismissed the breach of contract claims upon finding that the contract tied the payment of tuition to registration for courses, but not to the receipt of any particular method of course instruction. *Id.* at *3. The same reasoning applies here, where the Plaintiffs have not identified any specific contractual provision promising that courses would be provided in-person at all times. (*See also* Dkt. 36, at 21-23.) The Plaintiffs' claims are barred by the educational malpractice doctrine and should be dismissed.

### B.   The Plaintiffs Have Failed to State Any Claim for Breach of Contract

The Plaintiffs ignore the Connecticut Supreme Court's holding in *Gupta* and instead argue that they "are not required to identify . . . overly specific terms in order to advance a breach of contract claim past the pleadings," and that "they simply must show '(1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and (4) damages.'" (Opp., at 10-11 (quoting *RWP Consol., L.P. v. Salvatore*, 460 F. Supp. 2d 351, 355 (D. Conn. 2006) (involving a commercial dispute over failed investment).) The test that this Court must apply is much narrower than that. Specifically, in order for the Plaintiffs to state a claim for breach of contract for educational services, they must allege that Quinnipiac "failed to fulfill a ***specific contractual promise*** distinct from any overall obligation to offer a reasonable program." *Gupta*, 239 Conn. at 593; *McNeil v. Yale Univ.*, 436 F. Supp. 3d 489, 529 (D. Conn. 2020) (emphasis added) (citations omitted).[7]

In order "[t]o constitute a 'specific contractual promise,' ***the promise on which a plaintiff relied must have been precise and based on specific contractual terms or provisions***."

---

[7] The Plaintiffs concede that their claims are not premised on any allegation that Quinnipiac's educational program failed in some fundamental respect or that Quinnipiac acted in bad faith, which are the two other exceptions to the educational malpractice doctrine. (Opp., at 10 n.4.) *See also Gupta*, 239 Conn. at 592, 595; *McNeil*, at 531.

*Kloth-Zanard*, 2012 WL 2397161, at *4 (citing *Faigel v. Fairfield Univ.*, 75 Conn. App. 37, 42 (2003)) (emphasis added). It is not enough to cite general, vague, or aspirational language, or to suggest that the requisite specificity can be implied from such general language. *Hope Acad. v. Friel*, No. CV030081183S, 2004 WL 1888909, at *2 (Conn. Super. Ct. July 22, 2004) ("The second *Gupta* exception is narrow. It requires proof by a fair preponderance of the evidence, that the educational institution 'failed to provide ***specifically promised*** educational services.'") (*en banc*) (quotation omitted)) (emphasis supplied); *see also Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 708-09 (D. Vt. 2012) ("Not all terms in a student handbook are enforceable contractual obligations, however, and courts will only enforce terms that are 'specific and concrete.'") (quoting *Reynolds v. Sterling Coll., Inc.*, 750 A.2d 1020, 1022 (Vt. 2000)).

As detailed in Quinnipiac's initial memorandum, the Plaintiffs do not allege that Quinnipiac breached a precise promise that is based on specific contractual terms or provisions. (Dkt. 36, at 24-27.) The Plaintiffs concede this when they argue that the "***combination*** of express terms of the Bulletin, Defendant's publications and Defendant's usual and customary practice constituted an offer to any students attending Quinnipiac to register for on-campus classes." (Opp., at 11 (emphasis added) (citing Am. Compl. ¶ 44).) The Plaintiffs have not and cannot point to any precise promise based on specific contractual terms that Quinnipiac made to provide exclusively in-person learning at all times, even when it would have been unsafe. At most, the Plaintiffs have relied on general and aspirational statements ***about*** on-campus instruction and campus life. These are insufficient. *Gupta* and its progeny make clear that the alleged promise must be specific and cannot be implied based on various and general impressions or statements. As such, the Plaintiffs have not stated any claim for breach of contract, be it express or implied.[8]

---

[8] Pursuant to *Gupta*, a breach of contract claim against an educational institution may only be based upon an alleged failure "to fulfill a specific contractual promise distinct from any overall obligation to offer a reasonable program." *Gupta*, 239 Conn. at 593. Furthermore, as the Plaintiffs acknowledge, "the terms of the implied contract are

*Gupta*, 239 Conn. at 593.

The Plaintiffs' failure to point to any precise promise based on a specific contractual term distinguishes this case from the cases that the Plaintiffs cite. (Opp., at 12-13.) In those cases, the courts found that the plaintiffs alleged that specific promises had been breached. *See Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643, 667-68 (D. Conn. 2019) (alleging breach of specific promises in Quinnipiac's Title IX policy and Student Handbook); *Johnson*, 119 F. Supp. 2d at 96 (alleging breach of Yale's own procedures); *Morris v. Yale Univ. Sch. of Med.*, No. 05CV848 (JBA), 2006 WL 908155, at *5 (D. Conn. Apr. 4, 2006) (alleging breach of specific provision of student handbook); *Osberg v. Yale Univ.*, No. CV085021879S, 2009 WL 659072, at *3 (Conn. Super. Ct. Feb. 11, 2009) (alleging breach of specific procedure to earn academic credit); *see also Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992) (alleging breach of five specific promises). That is not the case here.

## C.   The Plaintiffs Have Failed to State a Claim for Unjust Enrichment

The Plaintiffs erroneously contend that *Gupta* does not bar their unjust enrichment claim. (Opp., at 19.) *Gutpa* applies because adjudication of this claim would require this Court to second-guess Quinnipiac's academic decision-making. *Gupta*, 239 Conn. at 591-92 (citations omitted); *Tankoos v. Mead Sch. for Human Dev.*, No. X05CV950145853S, 1999 WL 391350, at *9 (Conn. Super. Ct. June 4, 1999) (dismissing unjust enrichment claim seeking tuition refund and holding that inquiry into the quality and value of educational services cannot be maintained under *Gupta*). (*See also* Dkt. 36, at 12-13, 28.)

---

contained in the university's bulletins, circulars and regulations made available to the student." *Papelino v. Albany College of Pharm. of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) (cited as authority by the Plaintiffs). Just as the Plaintiffs have not alleged any specific express contractual provision as to this alleged promise to provide in-person instruction at all times, they also have not alleged that there was an actual agreement or meeting of the minds between the parties to always provide in-person on-campus instruction. *Therrien v. Safeguard Mfg. Co.*, 180 Conn. 91, 94-95 (1980) (holding that a breach of implied contract claim requires an actual agreement and that there be an obligation created by law that imposes a duty to perform); *Molaver v. Thomas*, 125 Conn. App. 88, 96 (2010) (implied contracts require a "meeting of the minds"). Nothing in the Bulletin supports any conclusion that such a specific promise was ever made. (Dkt. 36, at 20-27.) Accordingly, the Plaintiffs have failed to state a claim for breach of implied contract as well.

The Plaintiffs also contend that they may plead unjust enrichment in the alternative because the "contours of the contractual agreement" between the parties is in dispute. (Opp., at 20.) Pleading unjust enrichment in the alternative, however, is not a possibility where, as here, there is an enforceable contract between the parties. It is settled law in Connecticut that the relationship between student and university is contractual in nature. *Burns v. Quinnipiac Univ.*, 120 Conn. App. 311, 320-21 (2010). (*See also* Am. Compl. ¶ 35 (alleging the existence of an enforceable contract).) The Plaintiffs may not plead in the alternative merely because the contract, or its "contours," does not say what the Plaintiffs want it to say.

The Plaintiffs attempt to distinguish *Roe v. Loyola Univ. New Orleans*, No. 07-1828, 2007 WL 4219174 (E.D. La. Nov. 26, 2007), by arguing that the students in *Roe* were given the "option" to attend other universities when their law school was damaged by Hurricane Katrina. (Opp. at 23.) The court's holding in *Roe*, however, was not based on the presence of an "option." Instead, the court held that the plaintiff had received a benefit, in the form of full academic credit and his degree, from the university and thus the university was justified in retaining his tuition. *Roe*, 2007 WL 4219174, at *3. Here, the Plaintiffs likewise received academic instruction and earned full course credit for it. Consequently, they cannot state a claim for unjust enrichment.

**D.     The Plaintiffs Have Failed to State a Claim for Conversion**

The Plaintiffs raise three arguments in an attempt save their conversion claim: (1) that *Gupta* is not applicable to claims for conversion, (2) that Plaintiffs may plead conversion in the alternative of their breach of contract claims, and (3) that their allegations are sufficient to state a claim for conversion. None of these arguments is correct.  (Opp., at 24-25.)

First, *Gupta* applies to all claims, no matter how they are pleaded, that implicate how an educational institution provides educational services to its students or that seek to adjudicate the quality or value of education. *Gupta*, 239 Conn. at 591-92. Second, the Plaintiffs cannot plead

conversion in the alternative of their breach of contract claims because there is an enforceable contract here. *Deming v. Nationwide Mut. Ins. Co.*, 275 Conn. 745, 772 (2006) (holding that when an action arises from a claim under an express or implied contract, a claim in tort is inappropriate). Third, the Plaintiffs have not alleged sufficient facts to establish that "the money claimed . . . **at all times belonged to the plaintiff** and that the defendant converted it to his own use," as required to state a claim for conversion. *Id*. at 772 (emphasis added). Rather, the Plaintiffs allege that they willingly paid Quinnipiac tuition and fees in exchange for educational services. (Am. Compl. ¶ 125.) Thus, the money claimed did not at all times belong to them as required to state a claim for conversion. *Deming*, 275 Conn. at 772.

The Plaintiffs cite a single case from New York for the proposition that they do not have to identify the funds at issue with specificity in order to maintain a claim for conversion. (Opp., at 25.) However, the court in *Thys v. Fortis Secs. LLC*, 74 A.D.3d 546 (N.Y. App. Div. 1st Dept. 2010), stated that "[a]n action for conversion of money may be made out '**where there is a specific, identifiable fund**'" and "must be for recovery of a particular and definite sum of money[.]" *Id*. at 547 (emphasis added) (quotation omitted). Connecticut law requires identification of the funds at issue, as if they were a chattel. *Macomber v. Travelers Prop. & Cas. Corp.,* 261 Conn. 620, 651 (2002). The Plaintiffs have not identified a sum certain subject to conversion. Indeed, in order to identify a sum certain, the Plaintiffs would need to measure the alleged difference in value between traditional and online educational instruction. That inquiry is the precise claim prohibited by the educational malpractice doctrine.

## III.   CONCLUSION

For these reasons and the reasons set forth in its initial memorandum, the Defendant Quinnipiac University respectfully requests that its Motion to Dismiss the First Amended Class Action Complaint be granted and the Amended Complaint be dismissed with prejudice.

DEFENDANT,
QUINNIPIAC UNIVERSITY,


By_____*/s/ Edward J. Heath*_____
    Edward J. Heath (ct20992)
    Wystan M. Ackerman (ct24090)
    Elizabeth R. Leong (ct24453)
    Dan A. Brody (ct30301)
    Robinson & Cole LLP
    280 Trumbull Street
    Hartford, CT 06103-3597
    Tel. No.: (860) 275-8200
    Fax No.: (860) 275-8299
    E-mail: eheath@rc.com;
    wackerman@rc.com; eleong@rc.com;
    dbrody@rc.com

**CERTIFICATION**

I hereby certify that on November 9, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Edward J. Heath*
Edward J. Heath