UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ZOEY METZNER, individually and on behalf of all others similarly situated, DOMINIC GRAVINO, DAVE BRUNEAU, RICHARD HOTTER,<br><br>*Plaintiffs*,<br><br>v.<br><br>QUINNIPIAC UNIVERSITY,<br><br>*Defendant* | No. 3:20-cv-00784 (KAD)<br><br><br><br>November 12, 2020 |

MEMORANDUM OF DECISION
RE: DEFENDANT'S MOTION TO STAY DISCOVERY (ECF NO. 37)

Kari A. Dooley, United States District Judge:

Plaintiff Zoey Metzner ("Metzner") filed this putative class action on June 5, 2020, bringing claims against Quinnipiac University ("Quinnipiac," or the "Defendant") for breach of contract, unjust enrichment, and conversion arising out of Quinnipiac's alleged failure to issue tuition or fee refunds to students following its decision to transition to online learning during the Spring 2020 semester in response to the COVID-19 pandemic. After Quinnipiac moved to dismiss the complaint and moved for a stay of discovery, Metzner, along with co-plaintiffs Dominic Gravino ("Gravino"), Dave Bruneau ("Bruneau") and Richard Hotter ("Hotter," and collectively, the "Plaintiffs") filed a First Amended Complaint (the "FAC," ECF No. 25) on September 14, 2020. Therein, Plaintiffs reallege the breach of contract, unjust enrichment, and conversion claims against Quinnipiac and add a claim for breach of implied contract. On October 5, 2020, Quinnipiac filed a motion to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 35), and on October 12, 2020, it filed a renewed motion to stay discovery, including the parties' Rule 26(f)

1

obligations (ECF No. 37), both of which Plaintiffs oppose. (ECF Nos. 40 and 39, respectively.) The Court heard oral argument on the motion to stay discovery on November 9, 2020. (ECF No. 45.) For the reasons that follow, the motion to stay is DENIED.

**Legal Standard**

Federal Rule of Civil Procedure 26(c) provides, in relevant part, that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including," an order "forbidding . . . discovery." Fed. R. Civ. P. 26(c)(1)(A). "[A] request for a stay of discovery, pursuant to Rule 26(c) is committed to the sound discretion of the court based on a showing of good cause." *Stanley Works Israel Ltd. v. 500 Grp., Inc.*, No. 3:17-CV-01765 (CSH), 2018 WL 1960112, at *2 (D. Conn. Apr. 26, 2018) (internal quotation marks omitted). The party seeking the stay bears the burden of demonstrating good cause. *Id*.

Generally, it is not the practice of this Court to stay discovery upon the filing of a motion to dismiss. *See, e.g.*, *Kollar v. Allstate Ins. Co.*, No. 3:16-CV-01927 (VAB), 2017 WL 10992213, at *1 (D. Conn. Nov. 6, 2017) ("[T]his Court's regular practice normally requires the parties to commence discovery, even while a motion to dismiss is pending"); *see also, e.g.*, *Republic of Turkey v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018) ("Discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed") (quotation marks omitted); *Moss v. Hollis*, No. CIV. B-90-177 (PCD), 1990 WL 138531, at *1 (D. Conn. June 29, 1990) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, they would contain such a provision"). Indeed, the Court's Standing Order on Pretrial Deadlines states that "[t]he filing of a motion to dismiss shall not result in a stay of discovery or extend the time for completing discovery." (ECF No. 2.)

Nonetheless, "[i]n determining whether good cause exists for a stay of discovery" while a potentially dispositive motion is pending, this Court considers three factors: "(1) the strength of the dispositive motion; (2) the breadth of the discovery sought; and (3) the prejudice a stay would have on the non-moving party." *Lithgow v. Edelmann*, 247 F.R.D. 61, 62 (D. Conn. 2007). In assessing the second factor the Court may consider the burden of responding to discovery. *See, e.g.*, *Country Club of Fairfield, Inc. v. New Hampshire Ins. Co.*, No. 3:13-CV-00509 (VLB), 2014 WL 3895923, at *3 (D. Conn. Aug. 8, 2014).

**Background and Allegations**

Quinnipiac is an institution of higher education located in Hamden, Connecticut, which has a current enrollment of approximately 10,290 students across its College of Arts and Sciences and eight professional schools. (FAC ¶¶ 21–22.) Metzner and Gravino were both enrolled as full-time students at Quinnipiac during the 2019-2020 academic year and are residents of Massachusetts and California, respectively. (*Id.* ¶¶ 10–11.) Bruneau and Hotter are each parents of undergraduate students who were enrolled full-time at Quinnipiac during the 2019-2020 academic year and are residents of Connecticut and New Jersey, respectively. (*Id.* ¶¶ 12–13.) All Plaintiffs remain in good financial standing with Quinnipiac, "having paid in whole or in combination tuition, fees, costs, and/or room and board charges assessed and demanded by Defendant for the Spring 2020 term." (*Id.* ¶ 14.)

On March 15, 2020, Quinnipiac informed Plaintiffs that beginning on March 18, 2020, classes would be held online for the remainder of the Spring 2020 semester in response to the COVID-19 pandemic. (*Id.* ¶ 4.) Quinnipiac has allegedly refused to reimburse or refund Plaintiffs and others similarly situated for the tuition and fees they have expended for on-campus instruction and for programs, services, activities, facilities, events, and other resources and benefits that were

no longer available to Plaintiffs and Plaintiffs' children as a result of the transition to remote learning. *(E.g.*, *id*. ¶¶ 5–6, 16–18.)  Plaintiffs allege that while they and/or their children could have pursued online degrees, they specifically opted for an in-person classroom experience and that Quinnipiac did not previously offer Plaintiffs' or Plaintiffs' children's degree programs online. (*Id*. ¶ 15.)  Plaintiffs further allege that the transition to online learning rendered it difficult to access and communicate with Quinnipiac's professors, many of whom were unprepared to deliver an effective educational experience using remote learning technologies.  (*Id*. ¶¶ 19–20.)

The FAC includes a number of examples of how Quinnipiac allegedly emphasizes in-person interactions and experiences and the unique attraction of its campus and facilities in its effort to recruit prospective students, while neglecting to highlight remote learning opportunities as a core educational feature.  (*Id*. ¶¶ 24–33.)  Plaintiffs allege that they specifically contracted for on-campus instruction for the Spring 2020 semester and principally cite Quinnipiac's 2019-2020 Official Bulletin (the "Bulletin") as setting forth the terms of this contract.  (*Id*. ¶¶ 34–35; Ex. C.) Plaintiffs allege that the Bulletin describes many of its in-person offerings in such terms as providing a "hands-on experience," "a supportive learning environment characterized by small classes with access to faculty and well-equipped laboratory facilities," "state-of-the-art facilities," and other characteristics that are germane only to on-campus instruction.  (*Id*. ¶ 37.)  According to Plaintiffs, Quinnipiac's default or customary mode of educational delivery is to provide in-person instruction, and when registering for classes for the Spring 2020 semester, Plaintiffs and/or their children did not otherwise select the box available on Quinnipiac's website which would have enabled them to search and register for "Online Courses Only."  (*Id*. ¶¶ 41–42.)  Thus, it was "Plaintiffs' and Class Members' reasonable expectation when registering for classes for the Spring 2020 semester . . . that those classes would be provided on-campus" and Plaintiffs allege that

Quinnipiac became contractually obligated to deliver in-person instruction via the Bulletin's express terms in combination with Quinnipiac's other publications and promotional materials. (*Id*. ¶¶ 42, 44.)

For the Spring 2020 semester Quinnipiac charged its undergraduate students $24,280 in full-time tuition plus a $720 technology fee. (*Id*. ¶ 45.) The annual fees for room and board ranged from $14,360 to $18,270 and fees for dining services ranged from $1,685 to $1,885 per semester. (*Id*.) Plaintiffs allege that these fees "are significantly higher than online-only programs" offered both by Quinnipiac and other institutions of higher education. (*Id*. ¶¶ 46–47.) For example, for the Spring 2020 semester, Plaintiffs allege that Quinnipiac charged students between $515 and $575 per credit for undergraduate online degree programs, whereas students taking 12-16 credits per semester for on-campus courses were charged between $1,517.50 and $2,023.33 per credit. (*Id*. ¶¶ 45, 48.) Despite having allegedly bargained and paid for on-campus courses and access to campus facilities and other resources for the entire Spring 2020 semester, Plaintiffs and Plaintiffs' children have not been permitted to attend classes in person since March 15, 2020. (*Id*. ¶¶ 51–52.)

While Quinnipiac made the decision in April 2020 to provide students housing and dining credits for the Spring 2020 semester, it has not offered tuition or fee refunds. (*Id*. ¶¶ 80–81.) Plaintiffs acknowledge that Quinnipiac's decision to close its campus and to offer its classes exclusively online in March of 2020 in response to the COVID-19 pandemic was justified but assert that they have suffered significant losses as a result of Quinnipiac's refusal to offer a prorated reimbursement of tuition and fees to students who paid for full-time on-campus instruction for the Spring 2020 semester. (*Id*. ¶¶ 63–67.) Put simply, Plaintiffs allege that "[t]he online classes Plaintiffs and their peers have been provided are not equivalent to the in-person, campus

experience that Plaintiffs and other Quinnipiac students chose for their university education." (*Id.* ¶ 68.)

As noted previously, Plaintiffs bring claims sounding in breach of contract (Count One); breach of implied contract (Count Two); unjust enrichment in the alternative to the contract claim in counts one and two (Count Three); and conversion (Count IV).  Plaintiffs seek to certify a class pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and:

> All people paying Defendant, in whole or in part, personally and/or on behalf of others, for tuition, fees, and/or room board for in-person instruction and use of campus facilities, but who were denied use of and/or access to in-person instruction and/or campus facilities by Defendant for the Spring 2020 academic term or any subsequent term.[1]

(*Id.* ¶ 83.)

**Discussion**

**The Strength of Quinnipiac's Pending Motion to Dismiss**

The Court begins its analysis by considering the strength of Quinnipiac's motion to dismiss.  "In evaluating this factor, courts will look to see whether there are 'substantial arguments for dismissal,' or, stated differently, whether 'there has been a strong showing that the plaintiff's claim is" without merit.  *Stanley Works*, 2018 WL 1960112, at *3 (quoting *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013)).[2]

---

[1] Throughout the FAC Plaintiffs often do not distinguish between the parent and student Plaintiffs, to include in the class definition, which identifies the putative class as those that are allegedly "paying" Quinnipiac for in-person instruction "but who were denied use of and/or access to in-person instruction and/or campus facilities."  It is difficult and perhaps impossible to reconcile the proposed class definition with the allegations in the FAC. Per the allegations in the complaint, the "payer" in the case of the parent-Plaintiffs is not the party to whom an alleged contractual obligation to provide in-person instruction was owed and therefore not the party that has suffered an alleged injury-in-fact as a result of Quinnipiac's alleged breach of that obligation.  At oral argument on the motion to dismiss the Court may seek clarification from Plaintiffs as to their basis for establishing Article III standing on behalf of the parent-Plaintiffs.

[2] The district courts in this Circuit are not uniform in their analysis of this factor.  For example, in *ITT Corp. v. Travelers Cas. & Sur. Co.*, No. 3:12-CV-38 (RNC), 2012 WL 2944357, at *2 (D. Conn. July 18, 2012), a case cited by the Defendant, the court noted that "[a] stay of discovery is appropriate pending resolution of a potentially dispositive motion where the pending dispositive motion 'appears to have substantial grounds or, stated another way, *does not appear to be without foundation in law*.'" (quoting *Johnson v. New York Univ. Sch. of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002)) (emphasis added; alterations omitted); *see also, e.g.*, *Boost Oxygen, LLC v. Rocket Oxygen*,

In its memorandum in support of its motion to dismiss the FAC (ECF No. 36), Quinnipiac principally argues that all of Plaintiffs' claims are barred by the educational malpractice doctrine, which precludes courts from adjudicating disagreements that turn on the efficacy or quality of a particular teaching method. *See Gupta v. New Britain Gen. Hosp.*, 239 Conn. 574, 590–91, 687 A.2d 111 (1996) (explaining the difficulty of resolving "questions concerning the reasonableness of conduct by educational institutions in providing particular educational services to students," which not only renders tort claims sounding in educational malpractice without legal basis but also informs "analysis of a *contract* claim based on inadequate educational services" under Connecticut law) (emphasis in original).³ While the doctrine recognizes exceptions for claims that allege "that the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field," or that "the educational institution failed to fulfil[l] a specific contractual promise distinct from any overall obligation to offer a reasonable program," *id*. at 592–93, and also does not prohibit claims alleging that the institution "act[ed] arbitrarily, capriciously, or in bad faith," *id*. at 595, Quinnipiac argues that the FAC invokes none

---

No. 3:16-CV-01992 (VLB), 2017 WL 10768482, at *1 (D. Conn. Mar. 21, 2017) (articulating same principle). However, at least one court in this Circuit has rejected the "without foundation in law" threshold as inappropriately "encompass[ing] a motion with little chance of succeeding—arguably equivalent to the 'nonfrivolous' benchmark that prevents the triggering of a sanction under Fed. R. Civ. P. 11(b)(2)," and thus declined to apply such "an overly lenient standard for granting motions to stay all discovery [that] is likely to result in unnecessary discovery delay in many cases." *Hong Leong*, 297 F.R.D. at 72 (quotation marks omitted). Given the Court's broad discretion in determining whether to issue a protective order, *see, e.g.*, *Bryant v. City of Hartford*, No. 3:17-CV-1374 (VAB), 2020 WL 3619789, at *4 (D. Conn. July 2, 2020) ("The denial or issuance of a protective order is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion") (quotation marks omitted), the Court is not strictly bound by either formulation. But even if the Court concludes that a pending dispositive motion "does not appear to be without foundation in law," a stay of discovery is not automatic. Rather, "[t]he caselaw makes it clear that no one factor is dispositive of a discovery stay motion" and "[e]ven if a motion to dismiss 'appears to have substantial grounds,' a stay of discovery pending the outcome of that motion is appropriately denied where, . . . the other factors 'disfavor a stay.'" *Morgan Art Found. Ltd. v. McKenzie*, No. 18-CV-4438 (AT) (BCM), 2020 WL 6135113, at *3 (S.D.N.Y. Oct. 18, 2020) (quoting *Computer Assocs. Int'l, Inc. v. Simple.com, Inc*., 247 F.R.D. 63, 69 (E.D.N.Y. 2007)). In any event, these varied articulations for assessing the "merits" factor are not so different as to counsel alternative outcomes in most cases, to include this case, and the Court resolves the instant motion without regarding any one formulation as controlling.

³ Quinnipiac represents that this action is governed by the substantive law of Connecticut (Def.'s Mem. in Support of Mot. to Dismiss at 11 n.8), a proposition that Plaintiffs do not dispute.

of these exceptions.  On the question of a "specific contractual promise," Quinnipiac further asserts that the language that Plaintiffs rely upon in the Bulletin for their breach of contract claims fails to establish either an express or an implied promise to provide on-campus instruction exclusively or to offer prorated refunds for tuition and fees in the event that Quinnipiac changed its mode of instructional delivery.  Quinnipiac repeats these arguments in urging this Court to find that it has presented substantial arguments warranting dismissal of Plaintiffs' claims so as to support its motion for a stay of discovery.

In response, Plaintiffs characterize their claims as commercial as opposed to academic; rather than challenge the manner with which Quinnipiac and its faculty implemented online teaching instruction, Plaintiffs contest Quinnipiac's decision to retain tuition and fees for educational services that Plaintiffs allege that the institution promised but never provided. Therefore, Plaintiffs assert, this case does not implicate the concerns expressed in *Gupta* regarding improper judicial forays into evaluations of the quality or value of academic instruction, to which institutions of higher education are normally afforded deference.  Instead, Plaintiffs argue that this case falls into the exception recognized by the Connecticut Supreme Court in *Gupta* for claims that allege a failure to fulfill a specific contractual promise.  Plaintiffs cite the Court to recent decisions from around the country that have confronted similar issues in the context of the current public health crisis, in which courts have denied motions to dismiss filed by educational institutions.  *See, e.g.*, *Salerno v. Fla. S. Coll.*, No. 8:20-CV-1494-30SPF, 2020 WL 5583522, at *5 (M.D. Fla. Sept. 16, 2020) (finding breach of contract claim sufficient to withstand motion to dismiss under Florida law where plaintiff alleged that the defendant's publications and materials implied that courses would be held in-person and finding that such allegations did not implicate the educational malpractice doctrine because "this case is not about the quality of the College's

education," but, rather, "is simply about an alleged promise to provide in-person learning that was allegedly breached"); *McDermott v. Ohio State Univ.*, No. 2020-00286JD, 2020 Ohio Misc. LEXIS 127, at *5 (Ohio Ct. Cl. Aug. 24, 2020) (holding that plaintiff sufficiently pleaded unjust enrichment claim where she alleged that the defendant charged a clinical support fee for a dental clinic that was subsequently closed and concluding that the complaint's "mere mention of possible consequences to plaintiff's educational or professional future does not render plaintiff's well-pleaded unjust enrichment claim a claim for educational malpractice").[4] Quinnipiac challenges Plaintiffs' reliance on many of these cases because they applied more liberal pleading standards from other state jurisdictions. It also questions the relevance of *Salerno* given that the district court there did not specifically consider the breach of contract claim in the context of the *Gupta* exceptions.

The parties also dispute the significance of *Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643 (D. Conn. 2019), a case in which Judge Arterton denied the defendant's motion for summary judgment as to the plaintiff's breach of contract claim against Quinnipiac for alleged violations of its Title IX policy. The court observed therein that "'[t]he basic legal relation between a student and a private university or college is contractual in nature' and 'there seems to be no dissent from the proposition that the catalogues, bulletins, circulars, and regulations of the institution determine the contractual relationship between the student and the educational institution.'" *Id.* at 667 (quoting *Burns v. Quinnipiac Univ.*, 120 Conn. App. 311, 320–21, 991 A.2d 666 (App. Ct. 2010)). Judge Arterton ultimately concluded that "whether QU's policies created an enforceable contract with Plaintiff must be determined by a factfinder." *Id.* at 671. Plaintiffs likewise argue that the question of whether the Bulletin and related materials created an enforceable promise to deliver

---

[4] Plaintiffs cite to additional cases, each of which will be evaluated in the context of the motion to dismiss.

9

in-person educational instruction is one of fact, while Quinnipiac responds that *Doe* is inapposite because there the plaintiff had identified "*specific promises* in Quinnipiac's Title IX policy and Student Handbook to comply with Title IX." (Def.'s Reply at 4 n.1, ECF No. 41 (emphasis added).) The parties also disagree as to the relevance of *Chong v. Ne. Univ.*, No. CV 20-10844 (RGS), 2020 WL 5847626, at *3 (D. Mass. Oct. 1, 2020), a recent case involving a similar putative class action in which the district court held that plaintiffs failed to plead a breach of contract claim based upon an Annual Financial Responsibility Agreement executed with defendant Northeastern University absent a plausible allegation that the agreement specifically entitled plaintiffs to in-person instruction.

Without resolving these or any other issues raised in the motion to dismiss,[5] the Court concludes that Plaintiffs' claims are not so clearly without merit as to warrant a finding that this factor favors a stay of discovery. *See Stanley Works*, 2018 WL 1960112, at *3 (finding that this factor did not favor either party where "both parties have raised arguments, founded in law, and while Defendants' motion to dismiss is potentially dispositive, it is not at all clear that Plaintiff's claims are wholly unmeritorious"); *see also Covenant Imaging, LLC v. Viking Rigging & Logistics, Inc.*, No. 3:20-CV-00593 (KAD), 2020 WL 5411484, at *2 (D. Conn. Sept. 9, 2020) ("[U]pon

---

[5] Quinnipiac also argues that Plaintiffs' unjust enrichment claim fails because, *inter alia*, Plaintiffs have alleged the existence of an enforceable contract, while Plaintiffs submit that their unjust enrichment claim may be pled in the alternative and that both theories of recovery should be permitted to proceed at the motion to dismiss stage. The parties also dispute whether Plaintiffs can state a conversion claim based on the same allegations that give rise to the contract claims and whether Plaintiffs have otherwise plausibly pled the elements of conversion. While the Court harbors significant doubt as to whether Plaintiffs' conversion claim will survive the motion to dismiss, "Connecticut courts have . . . specifically held that a plaintiff may simultaneously plead a claim for recovery under a contract and a claim for recovery under a theory of unjust enrichment." *Intermed, Inc. v. Alphamedica, Inc.*, No. 3:09-CV-00762 (JCH), 2009 WL 5184195, at *6 (D. Conn. Dec. 21, 2009). Assuming this claim may be pled in the alternative, the parties further dispute whether Plaintiffs have sufficiently alleged that Quinnipiac retained non-gratuitous benefits conferred by the Plaintiffs so as to state a claim for unjust enrichment. Without expressing a view as to the merits of the unjust enrichment claim, the Court does not perceive it to be so facially deficient as to militate in favor of a stay at this stage. And even if the Court were to dismiss the conversion claim, it is not apparent that doing so would significantly narrow the scope of discovery, given that the heart of the parties' dispute centers largely on issues that underlie the other claims.

initial review, the only sure thing is that [the defendant's] preemption argument is not so obviously correct that the Court would deem it appropriate to stay discovery"); *Republic of Turkey*, 316 F. Supp. 3d. at 678–79 (denying motion to stay where pending motion to dismiss was not yet fully briefed but "the Court cannot say that Counts II and III on their face are utterly devoid of merit" based on its examination of the amended counterclaims at issue and assuming the truth of those allegations). To the contrary, the briefing on both this motion and the motion to dismiss demonstrates that this case raises novel questions of Connecticut law—or at least a novel context for which *Gupta* and its progeny do not dictate a facially obvious result. *Cf. Morgan Art Foundation*, 2020 WL 6135113, at *3 (denying motion to stay and observing that "the strength of the motion to dismiss" is "difficult to assess" where the motion was still in briefing and "raises a novel issue that does not appear to have been addressed in any of the mootness cases that plaintiffs cite in their opening brief"). Moreover, if the Court determines that Plaintiffs have plausibly alleged an exception under *Gupta* based on Quinnipiac's alleged "fail[ure] to fulfil[l] a specific contractual promise," *see* 239 Conn. at 593, the question of whether Quinnipiac's Bulletin and marketing and registration materials gave rise to a specific enforceable promise to deliver in-person instruction separate and apart from its duty to deliver a reasonable education is unlikely to be disposed of on the allegations alone, given the fact-intensive nature of that inquiry. *See Johnson v. Schmitz*, 119 F. Supp. 2d 90, 95–96 (D. Conn. 2000) (denying motion to dismiss and concluding that the plaintiff's claims, "if cognizable, fall within the second *Gupta* exception for breach of a specific contractual promise distinct from a general, unactionable, promise to provide adequate education" and that *Gupta* therefore "supports this Court's determination that [plaintiff's] breach of contract claims against [the defendants] must await further factual development").

In short, considering the complex and well-articulated arguments advanced by both parties, which the Court will examine thoroughly when taking up Quinnipiac's motion to dismiss, the Court is unprepared to conclude that the motion is likely to dispose of the matter completely or to otherwise hold that Quinnipiac's arguments are sufficiently "substantial" so as to favor a stay of all discovery.

**The Breadth of the Discovery Sought and the Burden of Responding to the Discovery**

Although Plaintiffs have not yet served discovery, Quinnipiac relies upon the parties' Rule 26(f) Report (ECF No. 21), in which Plaintiffs identified 14 topics on which they will likely seek discovery. It also cites to a declaration from Annalisa Zinn, Ph.D., who serves as Quinnipiac's Vice President for Academic Innovation and Effectiveness, and who submits that "[b]ased on my review of the 26(f) Report, the subjects on which the Plaintiffs anticipate pursuing discovery would cause Quinnipiac to engage in broad and burdensome efforts at considerable expense." (Zinn Decl. ¶ 5, ECF No. 37-2.) By requiring Quinnipiac to produce wide-ranging financial information— including details as to how its tuition and fees are established, its insurance policies, and steps the institution took in response to the COVID-19 emergency, Dr. Zinn represents that Quinnipiac would expend "extensive resources including hours of employee time that must be focused on addressing issues relating to the 2020-21 academic year, including, but not limited to, keeping Quinnipiac's students, faculty, and staff safe during this pandemic." (*Id*. ¶¶ 5–6.) She also asserts that Plaintiffs' anticipated broad requests for student enrollment and educational records will implicate the Family Educational Rights and Privacy Act ("FERPA"), which permits Quinnipiac to disclose information included in student records pursuant to a court order absent the student's or parent's consent only after a "reasonable effort" is made to notify the affected student. (*Id*. ¶¶ 7–8 (citing 34 C.F.R. § 99.31(a)(9)(ii).) Accordingly, Dr. Zinn opines that the burden on

Quinnipiac to satisfy this requirement will be substantial, as a general notice to its approximately 10,000 undergraduate and graduate students who were enrolled at Quinnipiac during the Spring 2020 semester will not satisfy FERPA, and Quinnipiac must also allow time sufficient for each student to move to limit or quash a court order or subpoena. (*Id*. ¶¶ 9–11.) Dr. Zinn further objects to Plaintiffs' anticipated effort to seek faculty employment contracts and other documents from Quinnipiac's personnel files, citing confidentiality and privacy concerns, as well as the production of internal communications and other materials concerning the decision to transition to remote learning, which she asserts would demand countless hours of time and divert staff from more pressing priorities. (*Id*. ¶¶ 13–16.)

Plaintiffs respond that the burdens Quinnipiac identifies are speculative given that discovery has not yet commenced. They cite, *inter alia*, *Waterbury Hosp. v. U.S. Foodservice Inc.*, No. 3:06-CV-1657 (CFD) (TPS), 2007 WL 328899, at *2 (D. Conn. Feb. 1, 2007), where Magistrate Judge Smith noted that "[s]tatements made in a Rule 26(f) Report regarding what discovery plaintiffs believe may be needed throughout the course of the entire litigation are not themselves discovery requests." In denying the defendant's motion to stay discovery, Judge Smith further observed that "[i]t is not appropriate for the court to determine that the discovery sought is too broad without first seeing exactly what it is plaintiffs are requesting." *Id*. This Court agrees with Judge Smith that Quinnipiac "is adequately protected from unduly broad and burdensome discovery requests by the Federal Rules," *id*., and that a wholesale stay of discovery is not the proper vehicle for resolving a premature claim of overbreadth or undue burden, *see also Kollar*, 2017 WL 10992213, at *2 (declining to order stay of discovery on reconsideration and observing that "[t]o the extent that Defendants have concerns about the scope and proportionality of Mr.

13

Kollar's discovery requests, they may seek to address those concerns in the appropriate way: by seeking a discovery conference with the Court").

While the Court is sympathetic to the challenges colleges and universities continue to face as they navigate the ever-shifting landscape engendered by the public health crisis, the pandemic has affected all manner of organizations and virtually all aspects of society. Permitting a civil defendant to pause its discovery obligations because of the demands occasioned by COVID-19 would render a stay of discovery appropriate in nearly every case, with the exception then swallowing the rule. To the extent that Quinnipiac anticipates that the pandemic will render it more difficult to fulfill its discovery obligations in a timely manner, these concerns may be appropriately addressed through the motion practice contemplated by the Federal and Local Rules of Civil Procedure and by counsel working cooperatively in light of the challenges faced by so many.[6]

**The Prejudice to Plaintiffs If a Stay Were Granted**

Finally, Quinnipiac argues that any prejudice to the Plaintiffs as a result of a stay would be minimal, as the stay would only remain in effect during the pendency of the motion to dismiss and the parties will save considerable expenses and resources if the motion to dismiss is granted. This argument might hold more force if the Court agreed with Quinnipiac that the motion to dismiss is likely to dispose of the entire case. However, as discussed above, it is not apparent to the Court that the educational malpractice doctrine bars all of the Plaintiffs' claims as Quinnipiac contends, and discovery may be needed in the event that the Court determines that the breach of contract

---

[6] The Court further observes that on the Court's civil docket, the progress of some cases has been slowed due to the difficulties of conducting discovery amid the pandemic. And the Court has, and will continue to be, flexible in setting realistic deadlines so as to reduce the burden in light of these ongoing challenges. But the Court has also observed tremendous resilience among the bar and observed first-hand that cooperation between counsel is the single greatest tool in reducing both cost and effort in the discovery arena.

claims are plausibly alleged as consistent with the second *Gupta* exception. While it is true that the motion to dismiss may remain pending only for a matter of months, thus obviating the degree of prejudice, as noted previously a stay of discovery is the exception and not the rule in this District. In these circumstances the Court does not find that Quinnipiac has met its burden of establishing good cause to stay discovery.

**Conclusion**

For the foregoing reasons, the Defendant's motion to stay discovery is denied. The parties are directed to meet and confer and to file an amended Rule 26(f) Report that identifies specific proposed deadlines for their Case Management Plan, including proposed deadlines for the completion of discovery and the filing of dispositive motions. The amended Rule 26(f) Report shall be filed on or before **December 3, 2020.**

**SO ORDERED** at Bridgeport, Connecticut, this 12th day of November 2020.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE