**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ZOEY METZNER, DOMINIC GRAVINO, DAVE BRUNEAU, RICHARD HOTTER, individually and on behalf of all others similarly situated, <br><br>            Plaintiffs, <br><br>       v. <br><br> QUINNIPIAC UNIVERSITY, <br><br>            Defendant. | No. 3:20-cv-00784-KAD <br><br> Judge Kari A. Dooley <br><br> Complaint Filed: June 5, 2020 <br><br> Complaint Served: June 11, 2020 <br><br> Defendant Appeared: June 19, 2020 <br><br> DECEMBER 3, 2020 |

## AMENDED FORM 26(F) REPORT OF PARTIES' PLANNING MEETING

Pursuant to this Court's Memorandum of Decision Re: Defendant's Motion to Stay, Fed.

R. Civ. P. 16(b), 26(f), and D. Conn. L. Civ. R. 16, the parties hereby submit the following

Amended Rule 26(f) Report. An initial conference was held on August 12, 2020. The

participants were:

Daniel J. Kurowski for Plaintiffs.

Edward J. Heath and Elizabeth R. Leong for Defendant Quinnipiac University.

Counsel for the parties conferred via email regarding this amended report.

### I.      CERTIFICATION

Undersigned counsel, after consultation with their clients, certify that (a) they have

discussed the nature and basis of the parties' claims and defenses and any possibilities for

achieving a prompt settlement or other resolution of the case, and (b) they have developed the

following proposed case management plan. Counsel further certify that they have forwarded a

copy of this amended report to their clients.

## II.      JURISDICTION

### A.      Subject Matter Jurisdiction

This Court has jurisdiction over the subject matter presented by the First Amended Class

Action Complaint because it is a class action arising under the Class Action Fairness Act of 2005

("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original

jurisdiction of the Federal Courts of any class action in which any member of the Class is a

citizen of a State different from any Defendant, and in which the matter in controversy exceeds

in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the

total claims of individual Class Members in this action are in excess of $5,000,000 in the

aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6).

Plaintiffs allege that more than two-thirds of all of the members of the proposed Class in the

aggregate are citizens of a state other than Connecticut, where this action is originally being

filed, and that the total number of members of the proposed Class is greater than 100, pursuant to

28 U.S.C. § 1332(d)(5)(B).

### B.      Personal Jurisdiction

Personal jurisdiction is not contested.

## III.      BRIEF DESCRIPTION OF CASE

### A.      Plaintiffs' Claims

Individually and on behalf of a class of similarly situated individuals, Plaintiffs or their

children enrolled as full-time students for the Spring 2020 academic term at Defendant. In Spring

2020, Defendant closed its campus and transitioned all classes to online instruction. As a result,

Plaintiffs allege that they and other class members paid Defendant for opportunities and services

that Defendant did not provide, including on-campus education, facilities, services, and

activities. While Plaintiffs/Plaintiffs' children and the class members could have obtained their

degrees online, Plaintiffs and the class members specifically selected an in-person, in-class experience at Quinnipiac for the variety of educational experiences that only an in-person program can deliver. As a result of the issues raised in the First Amended Class Action Complaint, Plaintiffs allege claims for breach of contract, breach of implied contract, conversion, and unjust enrichment.

Plaintiffs dispute Defendant's recharacterizations below of Plaintiffs' claims for the reasons stated in their opposition to Defendant's motion to dismiss. *See generally* ECF No. 40. Moreover, similar dismissal arguments in other cases arising out of university responses to COVID-19 pandemic continue to be rejected by courts across the country. *See Saroya v. Univ. of the Pac.*, 2020 WL 7013598 (N.D. Cal. Nov. 27, 2020); *Kishinevsky v. Bd. of Trustees of Metro. State Univ. of Denver*, 2020 Colo. Dist. LEXIS 781 (Colo. Dist. Ct. Nov. 23, 2020); *Spiegel v The Trustees of Indiana Univ.*, 2020 Ind. Cir. LEXIS 388 (Ind. Cir. Ct. Nov. 19, 2020); *Verlanga v. Univ. of San Francisco*, 2020 Cal. Super. LEXIS 1785 (Cal. Super. Ct. Nov. 12, 2020); *Rosado v. Barry Univ. Inc.*, 2020 WL 6438684 (S.D. Fla. Oct. 30, 2020); *Gibson v. Lynn Univ., Inc.*, 2020 WL 7024463 (S.D. Fla. Oct. 29, 2020); *Zahn v. Ohio Univ.*, 2020 WL 6163919 (Ohio Ct. Cl. Oct. 19, 2020); *Waitt v. Kent State Univ.*, 2020 WL 5894543 (Ohio Ct. Cl. Sept. 28, 2020); *Salerno v. Florida Southern College*, 2020 WL 5583522 (M.D. Fla. Sept. 16, 2020); *Garland v. W. Michigan Univ.*, 2020 Mich. Ct. Cl. LEXIS 7 (Mich. Ct. Cl. Sept. 15, 2020); *Smith v. Ohio State Univ.*, 2020 WL 5694224 (Ohio Ct. Cl. Sept. 9, 2020); *McDermott v. Ohio State Univ.*, 2020 WL 5239892 (Ohio Ct. Cl. Aug. 24, 2020); *Mellowitz v. Ball State Univ.*, 2020 WL 5524659 (Ind. Super. Ct. Aug. 14, 2020); *Milanov v. Univ. of Michigan*, 2020 Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. Jul. 27, 2020); *Cross v. Univ. of Toledo*, 2020 WL 4726814 (Ohio Ct. Cl. Jul. 8, 2020).

**B.      Defendant's Defenses**

In March 2020, in response to the COVID-19 pandemic, an unprecedented worldwide

public health crisis, Defendant swiftly undertook significant efforts to protect the health and

safety of its students, faculty, and staff. Like nearly every institution of higher education in this

country, Defendant invested thousands of hours of faculty and staff time and considerable

resources to transition its in-person classes to online instruction so that its students, including the

Plaintiffs, could safely and successfully complete the Spring 2020 semester.

All of the Plaintiffs' claims—for breach of contract, breach of implied contract, unjust

enrichment, and conversion—hinge on the allegation that Plaintiffs received an education that

was worth less than what they paid because of the transition to online learning. Such claims for

educational malpractice are precluded under well-established Connecticut law, which bars

judicial interference in disputes over educational decisions or the quality or effectiveness of an

institution's instruction. An analysis by this Court or a jury of any of Plaintiffs' claims would

constitute an impermissible intrusion on Defendant's educational autonomy to determine, among

other things, how its students are best taught. Moreover, Plaintiffs' claims could not be

adjudicated without making a determination of the intangible educational "value" of entirely in-

person classes as compared with classes conducted partially in-person and later online (as

necessitated by a pandemic). This type of analysis is barred by the educational malpractice

doctrine.

Plaintiffs have failed to state a claim for breach of contract because, despite an

amendment of the Complaint, they have not identified a specific identifiable promise to either

exclusively provide in-person on-campus instruction (even during a pandemic) or to provide a

prorated refund of tuition and fees in the event an instructional format change becomes

necessary. None of the provisions of Quinnipiac's 2019–2020 Official Bulletin ("Bulletin") that

Plaintiffs cite in the Amended Complaint is a specific promise to provide in-person on-campus instruction at all times. Nor is there any provision in the Bulletin that governs the manner or format in which Defendant was to deliver education or services to its students. Plaintiffs cite only broad aspirational language in the Bulletin regarding the residential on-campus experience. In contrast, specific provisions of the Bulletin make clear that tuition refunds are only available in certain limited situations—none of which apply here. The Bulletin does ***not*** provide that refunds are available if the means of instruction changes or if a student is dissatisfied with how a class was taught.

Plaintiffs' unjust enrichment claim cannot be sustained because there is an enforceable contract that regulates the relations of the parties, because they have not alleged the existence of an illusory contract, and because there are no allegations to support the claim that Defendant unjustly retained non-gratuitous benefits conferred by Plaintiffs.

Plaintiffs have failed to state a claim for conversion because their assertion that they are entitled to a refund of tuition and fees sounds in contract, not the tort of conversion. Plaintiffs' conversion claim is also unsupportable because they have not alleged sufficient facts to establish that the money they allege that they are owed belonged to them at all times, and because they have not specifically identified the amount of money that has been wrongfully withheld.

This summary is not meant to be a comprehensive discussion of Defendant's positions. Defendant reserves the right to plead additional defenses in its answer should this litigation proceed beyond the resolution of its Motion to Dismiss.

**C.      Defenses and Claims of Third-Party Defendants**

Not applicable.

## IV.   STATEMENT OF UNDISPUTED FACTS

Counsel certify that they have made a good faith attempt to determine whether any material facts exist that are not in dispute. Due to the nature of the case, the parties are unable to stipulate to any undisputed material facts at this time.

## V.   CASE MANAGEMENT PLAN

**A.   Initial Disclosures**

    1.   Initial disclosures will be served by **December 30, 2020**.

**B.   Scheduling Conference**

    1.   The parties request to be excused from holding a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).

    2.   The parties prefer that a scheduling conference, if held, be conducted by telephone or videoconference.

**C.   Early Settlement Conference**

    1.   The parties certify that they have considered the potential benefits of attempting to settle the case before undertaking significant discovery or motion practice. Settlement is unlikely at this time.

    2.   The parties do not request an early settlement conference.

    3.   The parties prefer a settlement conference, when such a conference is held, with the magistrate judge.

    4.   The parties do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

**D.** **Joinder of Parties, Amendment of Pleadings, and Motions Addressed to the Pleadings**

The parties have discussed any perceived defects in the pleadings and have reached the following agreements for resolution of any issues related to the sufficiency of the pleadings.

1.  Plaintiffs should be allowed until **January 29, 2021** to file motions to join additional parties and until **April 30, 2021** to file motions to amend the pleadings. Motions filed after the foregoing dates will require, in addition to any other requirements under the applicable rules, a showing of good cause for the delay.

2.  Defendant should be allowed until **January 29, 2021** to file motions to join additional parties and until **April 30, 2021** to file any motions to amend the pleadings. Motions filed after the foregoing date will require, in addition to any other requirements under the applicable rules, a showing of good cause for the delay.

**E.** **Discovery**

1.  Recognizing that the precise contours of the case, including the amounts of damages at issue, if any, may not be clear at this point in the case, in making the proposals below concerning discovery, the parties have considered the scope of discovery permitted under Fed. R. Civ. P. 26(b)(1). At this time, the parties wish to apprise the Court of the following information regarding the "needs of the case":

2.  The parties anticipate that discovery will be needed on the following subjects among others:

        a.  Plaintiffs anticipate discovery on the following subjects, among others. This listing of topics does not indicate that Plaintiffs agree with Defendant's identified topics, and will not preclude Plaintiffs from

asserting objections to specific discovery requests, as appropriate, or to amending this list:

    i.   Documents concerning Plaintiffs;

    ii.   Defendant's Course Finder and Course Registration Portals;

    iii.   Defendant's Official Bulletin;

    iv.   Defendant's handbooks, catalogs, brochures, advertisements, or other promotional materials;

    v.   Documents and communications relating to Defendant's decision not to issue refunds for tuition paid for the Spring 2020 semester;

    vi.   Documents and communications relating to Defendant's COVID-19 response, including but not limited to training manuals, handbooks, internal policies and communications, communications with parents, communications with students, communications with alumni, communications with donors, communications with any government agencies or officials, and communications with any outside consultants or experts;

    vii.   Documents regarding the amount of tuition monies Defendant received from for the Spring 2020 Semester;

    viii.   Documents regarding the amount of money Defendant received for Spring Semester 2020 fees;

    ix.   Documents showing the amount of tuition and fees for Spring Semester 2020 that Defendant refunded to students, if any;

x.   Documents showing the total number of students who attended
     Quinnipiac University during the Spring 2020 Semester, including
     a breakdown of the number of students enrolled in each of
     Defendant's courses of study;

xi.  Documents and communications showing requests by students or
     parents for refunds for the Spring 2020 Semester, and Defendant's
     response to said requests.

xii. Documents and communications from Defendant's students or
     parents of Defendant's students regarding Defendant's response to
     COVID-19 regarding Defendant's decision to suspend in-person
     classes;

xiii. Documents governing rights and responsibilities between students
     and Defendant concerning tuition and fees paid for Spring
     Semester 2020;

xiv. Documents and communications related to any training or
     education provided to Defendant's professors and instructors as
     part of preparations to move Spring Semester 2020 classes to an
     online-only format;

xv.  Documents and communications pertaining to any insurance
     agreement under which any person carrying on an insurance
     business may be liable to satisfy in part or in whole a judgement
     which may be entered in this action or to indemnify or reimburse
     for payments made to satisfy the judgment;

xvi.    Documents and communications pertaining to Defendant's financial planning or internal discussions of financial or budget matters related to changes in operation due to COVID-19.

b.  Defendant anticipates discovery on the following subjects, among others. This listing of topics does not indicate that Defendant agrees with Plaintiffs' identified topics and will not preclude Defendant from asserting objections to specific discovery requests, as appropriate, or to amending this list.

i.    Plaintiffs' experiences regarding the difference in value between courses offered online and courses offered "live" or on-campus;

ii.   Plaintiffs' classes, experiences, and activities as a member of the Quinnipiac community, pre-COVID-19 and during 2020, including, but not limited to, the Spring 2020 academic term;

iii.  Plaintiffs' interactions and communications with their professors or instructors during the Spring 2020 academic term;

iv.   Plaintiffs' pre- and post-admission interactions and communications with Defendant and/or its faculty and staff;

v.    Plaintiffs' pre- and post-admission interactions and communications regarding Defendant generally and/or their individual academic performances and activities;

vi.   Plaintiffs' payment of tuition and fees to Defendant;

vii.  Plaintiffs' alleged damages;

viii.    Putative class members' experiences regarding the difference in value between courses offered online and courses offered "live" or on-campus;

ix.    Putative class members' classes, experiences, and activities as a member of the Quinnipiac community, pre-COVID-19 and during 2020, including, but not limited to, the Spring 2020 academic term;

x.    Putative class members' pre- and post-admission interactions and communications with Defendant and/or its faculty and staff;

xi.    Putative class members' pre- and post-admission interactions and communications regarding Defendant generally and/or their individual academic performances and activities;

xii.    Putative class members' payment of tuition and fees to Defendant;

xiii.    Putative class members' alleged damages;

xiv.    Orders, direction, guidance, and the like issued by federal, state, and local officials regarding COVID-19;

xv.    Issues pertaining to class certification if class action claims remain in the case, including but not limited to the ascertainability of the proposed class, the commonality (or lack thereof) of Plaintiffs' claims, the typicality (or lack thereof) of Plaintiffs' claims, Plaintiffs' adequacy to serve as proposed class representatives, the adequacy of Plaintiffs' counsel to serve as counsel for the proposed class, whether common issues of law or fact predominate over

individual issues, and whether a class action would be superior to other methods of adjudication.

3.      Discovery Period:

All discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will be commenced by **December 30, 2020** and completed (not propounded) by **December 3, 2021**.

4.      Discovery will not be conducted in phases. However, Defendant's position is that, although discovery need not be strictly bifurcated between class and merits issues, all fact and expert discovery relating to Plaintiffs' motion for class certification must be completed prior to the motion for class certification being filed. Plaintiffs oppose Defendant's request that all discovery relating to Plaintiffs' motion for class certification be completed prior to the motion for class certification being filed. *See* Section F below.

5.      Depositions

At this time, the parties anticipate that Plaintiffs will require a total of 10 depositions of fact witnesses and that Defendant will require approximately 15 depositions of fact witnesses.

Depositions will commence by **March 1, 2021** and be completed by **December 3, 2021**.

6.      At this time, the parties will not request permission to serve more than 25 interrogatories. The parties agree to meet and confer should the demands of the case identify a need for more than 25 interrogatories.

7.      Plaintiff intends to call expert witnesses at trial. Defendant intends to call expert witnesses at trial.

8.      Experts – Party Bears Burden of Proof

The parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any issues on which they bear the burden of proof by **June 29, 2021**, and depositions of any such experts will be completed by **August 16, 2021**.

      9.      Experts – Party Does Not Bear Burden of Proof

The parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any issues on which they do not bear the burden of proof by **September 27, 2021**, and depositions of such experts will be completed by **November 8, 2021.**

      10.     A damages analysis will be provided by any party who has a claim or counterclaim for damages by **June 29, 2021**.

      11.     Undersigned counsel (after consultation with their respective clients concerning computer-based and other electronic information management systems, including historical, archival, back-up and legacy files, in order to understand how information is stored and how it may be retrieved) and self-represented parties have discussed the disclosure and preservation of electronically stored information, including, but not limited to, the form in which such data shall be produced, search terms and/or other techniques to be used in connection with the retrieval and production of such information, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information. The parties agree to the following procedures for the preservation, disclosure, and management of electronically stored information (ESI):

          (i)     The parties will take all reasonable efforts to preserve proportional, relevant, and responsive ESI and suspend any routine computer operations which may

automatically delete such relevant and responsive ESI. The parties may continue routine

computer operations critical to ongoing activities, including the automatic creation and deletion

or overwriting of non-relevant, non-responsive information;

(ii)     The parties will produce ESI that is proportional, relevant, responsive, not

privileged, and not inaccessible as governed by the applicable Federal Rules of Civil Procedure,

the Standing Protective Order entered by the Court on June 5, 2020 (ECF Doc. No. 4) (or any

such order subsequently entered by the Court), and any other applicable laws or regulations;

(iii)    The parties will agree in good faith to meet and confer regarding the

identification of relevant custodians, non-custodial data sources, relevant time period(s), and

search terms and methods to be used to locate potentially responsive documents; and

(iv)    The parties will reach an agreement on and file with the Court a

Stipulation and Order Governing Format of Production, which shall govern the format of

production for all ESI discovery material and set forth requirements for the logging of ESI

discovery material withheld on the basis of privilege.

12.     Undersigned counsel (after consultation with their clients) have also discussed the

location(s), volume, organization, and costs of retrieval of information stored in paper or other

non-electronic forms. The parties agree to the following procedures for the preservation,

disclosure and management of such information:

(i)     The parties will take all reasonable efforts to preserve any unique,

relevant, and responsive non-electronic discovery data ("Non-ESI"). To the extent an exact

duplicate of Non-ESI is already preserved, the parties need not preserve such Non-ESI, provided,

however, that Non-ESI is not an "exact duplicate" if it contains custodial, marginalia or other

unique differences not found in other Non-ESI;

- 14 -

(ii)    The parties will produce Non-ESI that is proportional, relevant,

responsive, not privileged, and not inaccessible as governed by the applicable Federal Rules of

Civil Procedure, the Standing Protective Order signed by the Court on June 5, 2020 (ECF Doc.

No. 4) (or any such order subsequently entered by the Court), and other applicable laws or

regulations;

(iii)   The parties will reach an agreement on and file with the Court a

Stipulation and Order Governing Format of Production, which shall govern the format of

production for all Non-ESI discovery material and set forth requirements for the logging of Non-

ESI discovery material withheld on the basis of privilege.

13.    Undersigned counsel have discussed discovery procedures that minimize the risk

of waiver of privilege or work-product protection, including procedures for asserting privilege

claims after production. The parties agree to the following procedures for asserting claims of

privilege after production:

(i)    The inadvertent production of any privileged or otherwise protected

information ("Inadvertent Production Material") shall not be deemed a waiver or impairment of

any claim of privilege or protection, including but not limited to the attorney-client privilege or

work-product doctrine. Within 30 days, or as soon as reasonably practicable upon discovery of

the production of Inadvertent Production Material, the producing party must notify the receiving

party in writing of the inadvertent production. No party to this action shall assert that such

inadvertent production waived any privilege or protection. Upon written notice from the

producing party, the receiving party shall (a) refrain from any further examination or disclosure

of the Inadvertent Production Material, (b) promptly return to the producing party or destroy the

Inadvertent Production Material and all copies (including summaries and excerpts), and (c) not

use the Inadvertent Production Material for any purposes, absent a contrary order from the Court.

By complying with these obligations, the receiving party does not waive any right it has to

challenge the assertion of privilege or protection and request an order compelling production of

the Inadvertent Production Material. In the event of a challenge to an assertion of privilege or

protection, the receiving party may sequester any such material in lieu of returning or destroying

such materials until such time as the Court rules on the parties' dispute. The producing party

bears the burden of establishing the privileged or protected nature of the Inadvertent Production

Material.

     (ii)  If a receiving party becomes aware that it is in receipt of information or

materials which it knows or reasonably should know is Inadvertent Production Material, the

receiving party shall immediately take steps to (a) stop reading or inspecting the Inadvertent

Production Material, (b) notify the producing party of the Inadvertent Production Material,

(c) collect all copies (including summaries and excerpts) of the Inadvertent Production Material,

(d) promptly return to the producing party or destroy the Inadvertent Production Material and all

copies, and (e) otherwise comport itself with the application provisions of the Rules of

Professional Conduct.

**F.**   **Other Scheduling Issues: Class Certification**

   Plaintiffs' Position

   Plaintiffs' class certification motion will be filed on or before **June 29, 2021**. Plaintiffs

disagree with Defendant's request to conclude "all class-related discovery, including class-

related expert discovery" prior to the filing of Plaintiffs' Motion for Class Certification. Such an

approach will undermine efforts to streamline the litigation and invite potential disputes among

the parties regarding whether discovery should have been or did not need to be completed prior

to the filing of the class certification motion. Furthermore, expert reports often accompany class

certification motions, Defendant's request to conclude such discovery effectively allows

Defendant a preview of Plaintiffs' forthcoming class certification strategy prior to the actual

filing of the class motion. Moreover, regarding Defendant's concern about the addition of new

evidence, under Fed. R. Civ. P. 23(c)(1)(C), "[a]n order that grants or denies class certification

may be altered or amended before final judgment." As a result, no due process concerns exist

given the Court's authority to alter or amend any class certification decision, including should

additional evidence come to the parties after class certification. And Plaintiffs remain open to

setting a briefing schedule that alters ordinary briefing deadlines under the local rules which

would permit Defendant sufficient time to respond to a motion for class certification and related

filings (e.g., a 60 or 90 day response period). Plaintiffs also reserve all arguments in opposition

to be lodged at the appropriate time regarding Defendant's reservation of the right to seek

permission to file a sur-reply.

Defendant's Position

Briefing on the Plaintiffs' class certification motion should not commence until all class-

related discovery, including class-related expert discovery, has been completed by the parties,

which may occur prior to the conclusion of the discovery period in this action. While Defendant

does not seek bifurcation of discovery, assuming there is going to be expert testimony offered in

support of and in opposition to class certification, experts on both sides must have a complete

factual record in order to accurately prepare their expert reports. Any evidence Plaintiffs wish to

submit in support of class certification must be submitted with their motion, so that Defendant

have an opportunity to assess all such evidence and respond to it in their opposition. If Plaintiffs

were to disclose their expert(s) for the first time together with their motion for class certification,

Defendant would require sufficient time before its opposition to class certification is filed to

depose Plaintiffs' expert(s) and disclose its own expert(s). It would be unfair to Defendant and inconsistent with basic due process if Plaintiffs were permitted to conduct new fact or expert discovery after Defendant files its opposition to class certification and offer new evidence in a reply brief. Defendant proposes a briefing schedule under which Plaintiffs' motion for class certification must be filed within twelve months of the commencement of discovery (and after completion of all class certification-related discovery), Defendant's opposition is due within sixty (60) days after the commencement of that briefing schedule and any reply by Plaintiffs would be due thirty (30) days thereafter. Defendant reserves the right to seek permission to file a sur-reply regarding Plaintiffs' class certification motion.

**G.      Summary Judgment Motions**

The parties propose that summary judgment motions, which must comply with Local Rule 56, will be filed by **February 28, 2022**.

**H.      Joint Trial Memorandum**

A joint trial memorandum due date should be established after the Court rules on class certification (given that whether or not class certification is granted will greatly impact the length and scope of any trial), and no earlier than 120 days after the deadline to file summary judgment motions.

## VI.      TRIAL READINESS

A trial readiness date should be established after the Court rules on class certification, if class certification is granted, and no earlier than 120 days after the deadline to file summary judgment motions.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy, and inexpensive determination of this action.

Dated: December 3, 2020

PLAINTIFFS,

DEFENDANT,
QUINNIPIAC UNIVERSITY,

By:*/s/ Daniel J. Kurowski*_____
Craig A. Raabe (ct04116)
IZARD KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
T: (860) 493-6292
F: (860) 493-6290
craabe@ikrlaw.com

Steve W. Berman (pro hac vice)
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Daniel J. Kurowski (pro hac vice)
Whitney K. Siehl (pro hac vice)
HAGENS BERMAN SOBOL
SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

Sarah N. Wescot (pro hac vice)
BURSOR & FISHER, P.A.
701 Brickell Avenue, Suite 1420
Miami, FL 33131
(305) 330-5512
swescot@bursor.com

Alec M. Leslie (pro hac vice)
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, NY 10019
(646) 837-710
aleslie@bursor.com

By:*/s/ Edward J. Heath (with permission)*___
Edward J. Heath (ct20992)
Wystan M. Ackerman (ct24090)
Elizabeth R. Leong (ct24453)
Dan A. Brody (ct30301)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
E-mail: eheath@rc.com
wackerman@rc.com
eleong@rc.com
dbrody@rc.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 3, 2020, a true and correct copy of the

foregoing was filed electronically using the Court's CM/ECF system, which caused notice to be

sent to all counsel of record.

*/s/ Daniel J. Kurowski*
Daniel J. Kurowski
