# EXHIBIT 1

KeyCite Yellow Flag - Negative Treatment
Distinguished by [Bergeron v. Rochester Institute of Technology,](#) W.D.N.Y., December 18, 2020

2020 WL 7350212
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

Steven J. Lindner
v.
Occidental College

Case No. CV 20-8481-JFW(RAOx)
|
Filed 12/11/2020

**Attorneys and Law Firms**

V.R. Vallery for S. Reilly, Courtroom Deputy, ATTORNEYS PRESENT FOR PLAINTIFFS: None

None Present, Court Reporter, ATTORNEYS PRESENT FOR DEFENDANTS: None

**PROCEEDINGS (IN CHAMBERS): ORDER GRANTING DEFENDANT OCCIDENTAL COLLEGE'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT [filed 11/17/20; Docket No. 34]; and ORDER DENYING AS MOOT OCCIDENTAL COLLEGE'S MOTION TO STAY DISCOVERY PENDING DECISION ON ITS MOTION TO DISMISS [filed 11/11/20; Docket No. 30]**

HONORABLE [JOHN F. WALTER](#), UNITED STATES DISTRICT JUDGE

**\*1** On November 11, 2020, Defendant Occidental College ("Occidental") filed a Motion to Stay Discovery Pending Decision on its Motion to Dismiss ("Motion to Stay"). On November 23, 2020, Plaintiffs Steven J. Lindner ("Steven") and Chloe A. Lindner ("Chloe") (collectively, "Plaintiffs") filed their Opposition. On November 30, 2020, Occidental filed a Reply. On November 17, 2020, Occidental filed a Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion to Dismiss"). On November 30, 2020, Plaintiffs filed their Opposition. On December 7, 2020, Occidental filed a Reply. Pursuant to [Rule 78 of the Federal Rules of Civil Procedure](#) and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument. The hearings calendared for December 14, 2020 and December 21, 2020 are hereby vacated and the matters taken off calendar. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I. Factual and Procedural Background**
This putative class action arises out of Occidental's transition from in-person to virtual instruction during the Spring 2020 semester in response to the Covid-19 global pandemic. Chloe is an Occidental student who was enrolled during the Spring 2020 semester when the pandemic began and who decided to re-enroll (and pay tuition and fees) for the Fall 2020 semester knowing that instruction at Occidental would continue to be virtual. Chloe and her father Steven do not allege that the transition to virtual instruction precluded Chloe from earning credits towards her degree or completing any classes. Instead, Plaintiffs allege, on behalf of all "people who paid tuition and fees for the Spring 2020 Semester at Occidental," that they are entitled to a partial refund of tuition and fees for the Spring 2020 semester because Occidental promised students in-person instruction.

**A. The Contract With Occidental**
In the FAC, Plaintiffs allege that they entered into a contract with Occidental and that "[t]he terms of the contractual agreement were set forth in publications from Occidental, including Occidental's" 2019-2020 Course Catalog ("2019-2020 Catalog"). FAC, ¶ 3; *see also* FAC ¶ 8 ("Defendant's representations in its Course Catalog, on the portal, and other University publications constitute a contract between Plaintiffs and Occidental").

In Occidental's 2019-2020 Course Catalog ("2019-2020 Catalog"), Occidental expressly reserved the right, in the Tuition and Fees section, "to change fees, modify its services, or change its program should economic conditions or national emergency make it necessary to do so." Specifically, with respect to tuition and fees, the 2019-2020 Catalog states that:

> Each student is charged a tuition fee that covers about two-thirds of the cost of services provided by the College. The balance of these costs is met by income from endowment and by gifts from trustees, parents, alumni, other friends, corporations, and foundations interested in the type of education that this institution provides.

**\*2** The expenses of students at Occidental are shown in the schedules that appear below. The College reserves the right to change fees, modify its services, or change its program should economic conditions or national emergency make it necessary to do so.

The College will charge all full-time students $56,576 per year. If the student resides on campus, an additional charge will be assessed per the room-and-board schedule below. Books and supplies, special fees, and personal expenses will vary with the individual. The College estimates they will total approximately $4,000 per year.

In addition, the cover of the 2019-2020 Catalog specifies that "[f]ees, tuition, programs, courses, course content, instructors, and regulations are subject to change without notice." Plaintiffs also allege that Occidental's Class Attendance Policy and Chloe's course schedule and syllabi for the Spring 2020 semester are part of the contract with Occidental. FAC, ¶¶ 4-6. Occidental's Class Attendance Policy states that "[r]egular class attendance is expected of all students." FAC, ¶ 7. Chloe's course schedule states the days of the week, the times, and the locations (building and room number) of each class that Chloe was enrolled in for the Spring 2020 semester. FAC, ¶¶ 5 and 21.

### B. Occidental's Transition to Virtual Instruction

On March 4, 2020, California Governor Gavin Newsom declared a state of emergency in response to the spread of Covid-19. Approximately a week later, Occidental announced that it would transition to virtual instruction on March 23, 2020 (the first day back from spring break) to protect the health and safety of the Occidental community. The College's announcement explained that "[c]lasses w[ould] continue to the fullest extent possible, albeit online, so that students c[ould] continue their coursework and make progress towards graduation requirements" and that "[a]ll administrative and support functions w[ould] continue to operate."

On March 19, 2020, Governor Newsom issued an emergency order directing all individuals to stay at home except as needed to maintain critical infrastructure sectors. That same day, Los Angeles Mayor Eric Garcetti issued a "Safer at Home" order, which specified that colleges could resume operations "for purposes of facilitating distance learning or performing essential functions provided that social distancing of six-feet per person is maintained to the greatest extent possible." Consistent with these orders, Occidental transitioned to virtual instruction for the remainder of the Spring 2020 semester.

After the transition to virtual instruction, Occidental refunded $3,519.54 to Chloe's account due to its closure of student residences. Chloe completed and received full credit for her courses during the Spring 2020 semester.

On July 15, 2020, Occidental announced that remote instruction would continue through the Fall 2020 semester. That announcement was approximately six weeks before the August 24, 2020 deadline for students to request a leave of absence (and a full tuition refund). Chloe elected not to request a leave of absence or a refund. Instead, Chloe decided to continue with virtual instruction and enrolled in the Fall 2020 semester.

### C. Procedural History

On July 6, 2020, Steven filed a Complaint in the District of New Jersey. On September 9, 2020, Steven and Occidental jointly filed a stipulation to transfer the case to the Central District of California, and, on September 14, 2020, the Honorable Kevin McNulty of the District of New Jersey signed an order transferring this action to the Central District of California.

**\*3** On November 3, 2020, Plaintiffs filed the First Amended Complaint ("FAC"), which added Chloe as a named plaintiff. In the FAC, Plaintiffs allege claims for: (1) breach of contract; (2) breach of implied contract; (3) unjust enrichment; (4) conversion; and (5) money had and received.

## II. Legal Standard

### A. Rule 12(b)(1)

The party mounting a Rule 12(b)(1) challenge to the Court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the Court's consideration. See *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual"). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In ruling on a Rule 12(b)(1) motion attacking the complaint on its face, the Court accepts the allegations of the complaint as true. *See, e.g.*, *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. "With a factual Rule 12(b)(1) attack ... a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. It also need not presume the truthfulness of the plaintiff['s] allegations." *White*, 227 F.3d at 1242 (internal citation omitted); *see also Thornhill Pub. Co., Inc. v. General Tel & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) ("Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary... '[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.' ") (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (9th Cir. 1977)). "However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983). It is the plaintiff who bears the burden of demonstrating that the Court has subject matter jurisdiction to hear the action. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

**B. Rule 12(b)(6)**

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.' " *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

**\*4** In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

**III. Discussion**

In its Motion, Occidental argues that Steven lacks standing because he is not an Occidental student and, as a result, he must be dismissed from this action. In addition, Occidental

argues that all of Plaintiffs' claims must be dismissed because courts in California and across the country have repeatedly rejected claims seeking damages based on allegedly "subpar" education, or "educational malpractice" claims, whether those claims sound in contract or tort. Occidental also argues that Plaintiff's express and implied contract claims must be dismissed because Plaintiffs have failed to allege any specific promise by Occidental to provide in-person instruction and Occidental had the right under the 2019-2020 Catalog to make changes to its programs due to a "national emergency," such as a global pandemic. Moreover, Occidental argues that Plaintiffs' unjust enrichment, conversion, and money had and received claims fail for a variety of reasons, including the fact that those claims are foreclosed where, as in this case, the parties' relationship is governed by a contract. In their Opposition, Plaintiffs argue that Steven has standing because he paid Chloe's tuition. Plaintiffs also argue that they are not challenging the quality or adequacy of the instruction provided by Occidental, but are challenging Occidental's failure to provide in-person instruction as promised. With respect to the express and implied contract claims, Plaintiffs argue that the contract with Occidental required Occidental to provide in-person instruction. Finally, Plaintiffs argue that they can allege their claims for unjust enrichment, conversion, and money had and received in the alternative to their contract claims.

### A. The Standing Issue

**\*5** In its Motion to Dismiss, Occidental argues that Steven lacks standing because he is not a party to any contract or quasi-contract with Occidental and has no legally cognizable relationship with Occidental. In their Opposition, Plaintiffs argue that Steven has standing because he paid Chloe's tuition.

### 1. Legal Standard for Standing

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The law of Article III standing "require[s] plaintiffs to allege such a personal stake in the outcome of the controversy as to justify the exercise of the court's remedial powers on their behalf." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). Thus, the "standing doctrine serves to prevent the judicial process from being used to usurp the powers of the political branches" (*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)), and ensures that "the Federal Judiciary respects the proper – and properly limited – role of the courts in a democratic society." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (internal quotation marks omitted). The Supreme Court's cases establish that the "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547.

An injury-in-fact must be both "concrete and particularized." *Id.* at 1548. An injury is "particularized" only if the effects of the alleged wrongdoing actually "affect the plaintiff in a personal and individual way." *Id.* In addition, an injury does not satisfy the "concrete" requisite unless it is "*de facto*; that is, it must actually exist." *Id.* It is a plaintiff's obligation to "clearly allege facts demonstrating" he has an injury-in-fact that is "concrete and particularized." *Id.* at 1547.

### 2. Steven Lacks Standing

Once a student reaches the age of majority, courts have routinely held that parents lack standing to bring claims against their adult children's colleges and universities, even when the parents pay tuition on behalf of their children. For example, in *Salerno v. Florida Southern College*, the court dismissed the mother's claims for lack of standing in an action where an adult college student and her mother sued the student's college for breach of contract, unjust enrichment, and conversion after the college moved from in-person to online instruction during the Covid-19 pandemic. *Salerno v. Florida Southern College*, __ F.3d __, 2020 WL 5583522 (M.D. Fla. Sept. 16, 2020). In dismissing the mother's claims for lack of standing, the court in *Salerno* held that:

> Florida Southern College argues that these facts demonstrate that the only relationship from which any legal obligations may arise is between the College and [the student]. The Court agrees. Notably, [the mother] does not ... adequately explain how any

action on Florida Southern College's part injured her. It is also of note that the lack of injury to [the mother] is clear regardless of whether [the mother] provided financial support to her daughter. That arrangement was between mother and daughter. It does not establish a relationship between the College and [the mother] under these facts. Accordingly, Florida Southern College's motion is granted to the extent that [the mother] will be dismissed from this action for lack of standing.

**\*6** *Salerno*, __ F.3d __, 2020 WL 5583522; see also *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 761 (E.D. Tenn. 2009) ("It is fairly evident that the 'payment of tuition does not create a contractual relationship between parents and a college' when the parents' child is over the age of majority") (quoting *Apffel v. Huddleston*, 50 F. Supp. 2d 1129, 1133 (D. Utah 1999)); *McCormick v. Dresdale*, 2010 WL 1740853, at \*2 (D.R.I. Apr. 28, 2010) (dismissing parents' breach of contract claim against Brown University for lack of standing); *Runge v. Sanford*, 2009 WL 9083917, at \*1 (D.S.C. Feb. 25, 2009) (holding that the plaintiff lacked standing to bring claim on behalf of adult children); *Zumbrun*, 25 Cal. App. 3d at 10 (describing contractual relationship between "a student and a private university or college").

In this case, it is undisputed that Chloe, not Steven, attends Occidental and that Chloe is over the age of majority. In the FAC, Plaintiffs allege that the injury at issue is Occidental's failure "to provide in-person courses and access to campus benefits." FAC, ¶ 54. However, Chloe, not Steven, was the intended beneficiary of any promises that Occidental allegedly made and Chloe, not Steven, suffered any alleged injury that resulted from the transition to remote instruction. Plaintiffs have failed to allege any separate and distinct injury suffered by Steven and, instead, Steven's claims are derivative of Chloe's claims. *Glass v. Hillsboro Sch. Dist. 1J*, 142 F. Supp. 2d 1286, 1292 (D. Or. 2001) (holding that parents did not plead "independent and separate right to have access to the classroom for their own benefit"). Accordingly, the Court concludes that Steven lacks standing and is dismissed from this action.

**B. Occidental Has Discretion to Control and Change Its Program.**

In its Motion to Dismiss, Occidental argues that all of Plaintiffs' claims alleged in the FAC must be dismissed because California case law prohibits challenges to the adequacy of a student's education. In their Opposition, Plaintiffs concede that California case law prohibits claims that "require an inquiry into the nuances of educational process or theories," but argue that this prohibition does not apply to their claims because Occidental breached "a specific promise to provide an educational service, such as a failure to offer any classes or a failure to deliver a promised number of hours."

Courts in California and across the country have repeatedly rejected claims that seek damages for an allegedly "subpar" education, or "educational malpractice" claims, whether those claims sound in contract or tort. *See Smith v. Alameda Cty. Soc. Servs. Agency*, 90 Cal. App. 3d 929, 941 (1979) (holding that a "cause of action seeking damages for educational malpractice [is] precluded by considerations of public policy"); *see also Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir. 1992) ("[T]he overwhelming majority of states that have considered this type of claim have rejected it."); *Gillis v. Principia Corp.*, 832 F.3d 865, 872 (8th Cir. 2016) (holding that a "breach-of-contract claim that raises questions concerning the reasonableness of the educator's conduct in providing educational services ... is one of educational malpractice" and must be dismissed) (internal quotations omitted); *Adams v. Antonelli Coll.*, 304 F. Supp. 3d 656, 664-65 (S.D. Ohio 2018) (rejecting contract claim for tuition refund); *Barneby v. New England Sch. of Montessori, LLC*, 2016 WL 3768928, at \*3 (Sup. Ct. Conn. 2016) (unpublished) (dismissing unjust enrichment claim for deprivation of educational opportunities).

**\*7** Instead, courts have concluded that "the adequacy of teachers and teaching methods are matters entrusted to educators and institutions that regulate them, not to judges and juries." *Jamieson v. Vatterott Educ. Ctrs., Inc.*, 259 F.R.D. 520, 540 (D. Kan. 2009); *see also Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 96 n.6 (1978) ("University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation") (Powell, J.,

concurring); *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1047 (9th Cir.1999) (holding that colleges and universities must be afforded the deference to make their own decisions about how to run their institutions"). As the California Supreme Court has explained, "[a]llowing a university flexibility in shaping its academic programs to meet individual needs usually redounds to a student's favor ... The attempt to use catalogues or similar published material to freeze the academic relationship into a rigid mold would lead to a stifling of both individual attention and equitable arrangements in the student's behalf." *Paulsen v. Golden Gate Univ.*, 25 Cal.3d 803, 812 (1979); *see also Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 11 (1972) (holding that a "minimal departure from a projected course of study does not entitle the student ... to recover the tuition paid or any part of it").

In this case, the theory underlying all of Plaintiffs' claims is that the education Chloe received once Occidental transitioned to remote instruction in response to the Covid-19 global pandemic was not "worth the amount charged" or "in [any] way the equivalent of [an] in-person education." FAC, ¶¶ 12 and 47. Indeed, Plaintiffs allege that the Occidental's Spring 2020 programs were "sub-par" and that online classes lacked "collaborative learning and ... dialogue, feedback, and critique." FAC, ¶ 12. Thus, the resolution of Plaintiffs' claims would require the Court to make judgments about the quality and value of the education that Occidental provided in the Spring 2020 semester. *See Smith*, 90 Cal. App. 3d at 941 (holding that "the difficulties of assessing the wrongs and injuries involved, the lack of a workable rule of care against which a school district's conduct may be measured and the incalculable burden which would be imposed on ... school systems"); *Ross*, 957 F.2d at 414 (noting the "inherent uncertainties" in determining the "nature of damages" in educational malpractice claims and holding that the "sheer number of claims that could arise if [educational malpractice claims] were allowed might overburden schools," regardless of their merits). Therefore, the Court concludes that Plaintiffs' claims are the type of educational malpractice claims that California courts, and courts throughout the country, have rejected. *See Peter W. v. San Francisco Unified Sch. Dist.*, 60 Cal. App. 3d 814, 824 (1976) ("Unlike the activity of the highway or the marketplace, classroom methodology affords no readily acceptable standards of care, or cause, or injury").

Accordingly, Plaintiffs' first claim for breach of contract, second claim for breach of implied contract, third claim for unjust enrichment, fourth claim for conversion, and fifth claim for money had and received are dismissed.

**C. Plaintiffs' Contract Claims Fail.**

In its Motion to Dismiss, Occidental argues that Plaintiffs' first claim for breach of contract and second claim for breach of implied contract fail because Plaintiffs failed to identify the contractual "promise" that Occidental allegedly breached and the 2019-2020 Catalog afforded Occidental broad discretion to modify or change the format of courses without refunding tuition or fees. In their Opposition, Plaintiffs argue that the contract with Occidental promised in-person instruction and that Occidental's "custom and practice" was to provide in-person instruction.

It is well settled that "[t]he basic legal relation between a student and a private university or college is contractual in nature." *Zumbrun v. University of Southern California*, 25 Cal. App. 3d 1, 10 (1972). When considering students' breach of contract claims against colleges and universities, courts regularly refer to course catalogs as a source of the terms of the contractual relationship. *Zumbrun*, 25 Cal. App. 3d at 10; *see also Gibson v. Walden Univ., LLC*, 66 F. Supp. 3d 1322, 1324 n.1 (2014) (considering student handbook when dismissing plaintiff's breach of contract claim) (*quoting Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)); *Doe v. Vanderbilt Univ.*, 2019 WL 4748310, at *6 (M.D. Tenn. Sept. 30, 2019) (holding that the student handbook was "integral to Plaintiff's claims" and could be considered "in its entirety for purposes of the pending motion to dismiss"); *Dasrath v. Ross Univ. Sch. of Med.*, 2008 WL 11438041, at *1 n.2 (E.D.N.Y. Aug. 06, 2008) (holding that student handbook properly considered when ruling on motion to dismiss because the plaintiff "relies upon the existence of a contractual agreement to support his breach-of-contract claim" and because "the Handbook is readily available on the Internet").

*8 In this case, it is undisputed that the relationship between Occidental and Chloe is governed by a contract, and that "[t]he terms of the contractual agreement were set forth in publications from Occidental, including Occidental's" 2019-2020 Catalog. FAC, ¶ 3. Although Plaintiffs argue that Occidental promised to provide in-person instruction in its contract with Chloe and other Occidental students

in exchange for paying tuition and fees, Plaintiffs have failed to identify any specific language in the 2019-2020 Catalog or any other publication from Occidental that promises in-person instruction. Instead, Plaintiff's rely on Occidental's Class Attendance Policy and Chloe's course schedule and syllabi as evidence of the "in-person nature of Spring Semester 2020 course offerings."[1] FAC, ¶¶ 4-6. Occidental's Class Attendance Policy does not promise in-person instruction, but merely states that "[r]egular class attendance is expected of all students." FAC, ¶ 7. However, regular class attendance is possible during both in-person and virtual instruction. Similarly, Chloe's course schedule and syllabi do not promise in-person instruction or that the courses will always meet in the specific rooms stated on the course schedule or syllabi. In addition, although the course schedule and syllabi may state a specific room where each class will meet, the 2019-2020 Catalog specifically states that "[f]ees, tuition, programs, courses, course content, instructors, and regulations are subject to change without notice," and that Occidental has "reserve[d] the right to change fees, modify its services, or change its program should economic conditions or national emergency make it necessary to do so."

In a similar case, *Chong v. Northeastern University*, the plaintiffs alleged a claim for breach of contract against Northeastern University because it switched from in-person to virtual instruction during the Spring 2020 semester due to the Covid-19 global pandemic. *Chong v. Northeastern Univ.*, _ F. Supp. 3d _, 2020 WL 5847626 (D. Mass. Oct. 1, 2020). In granting Northeastern University's motion to dismiss a breach of contract claim, the court concluded that "Northeastern argues that plaintiffs fail to state a claim because they have not plausibly established that the parties' agreement included a right to in-person instruction. The court agrees." *Id.* at *3 ("[B]ecause the [complaint] does not plausibly establish that the parties' contract included any right to in-person instruction, plaintiffs have failed to state a claim for breach of contract"). Similarly, in this case, Plaintiffs have failed to plausibly establish that the contract between Occidental and Chloe included any right to in-person instruction. In fact, Plaintiffs "do not suggest that [Occidental] lacks authority to ... make changes from semester to semester," including changing from in-person to remote instruction. Opposition, 13:26-27. Instead, Plaintiffs argue that Occidental cannot make such changes mid-semester or "unjustly withhold funds" when they make such changes. However, Plaintiffs again fail to cite to any language from the 2019-2020 Catalog or any other publication from Occidental that limits Occidental's authority to make such changes during the semester.[2] *See Kemper*, 2017 WL 3226846, at *2-*3 (holding that a breach of contract claim must be based on a "specific promise" not an unidentified "agreement"). Therefore, the Court concludes that Plaintiffs have failed to state a claim for breach of contract.

**\*9** In addition, with respect to Plaintiffs' second claim for breach of implied contract, "it is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Lance Camper Mfg. Corp. v. Republic Indemnity Co.*, 44 Cal. App. 4th 194, 203 (1996). Moreover, although the "usual or customary practice" can clarify the terms of a contract, it cannot replace them. *IV Solutions, Inc. v. United Healthcare Servs., Inc.*, 2014 WL 6896023, at *3 (C.D. Cal. Dec. 5, 2014) ("[C]ustom and practice can be admitted to explain or clarify the agreement, but not to contradict its terms"); *see also Kucharczyk v. Regents of Univ. of Cal.*, 946 F. Supp. 1419, 1432 (N.D. Cal. 1996) ("[T]erms that conflict with an express written contract cannot be implied in a written contract").

In this case, Plaintiffs' breach of implied contract claim is based on Occidental's "usual and customary practice of providing on-campus courses." FAC, ¶ 83. Although Occidental's "usual or customary practice" can be used to clarify the terms of its express contract with Chloe, it cannot be used to replace those terms, including those terms included in the 2019-2020 Catalog. *Dea v. Davy*, 150 Cal. App. 2d 435, 437 (1957) (holding that contract language prevails over conflicting custom and usage). Therefore, the fact that Occidental provides in-person instruction "under ordinary circumstances" (FAC, ¶ 31), does not prevent Occidental from exercising its rights under the 2019-2020 Catalog to modify its programs, including during a national emergency, such as the Covid-19 global pandemic. *See, e.g., Paynter v. NYU*, 319 N.Y.S.2d 893, 894 (1971) (reversing tuition refund where ordinary class schedule was suspended due to anti-war protests); *see also Charpentier v. Los Angeles Rams Football Co., Inc.*, 75 Cal. App. 4th 301, 308 (1999) (dismissing contract claim where the plaintiff alleged that the Los Angeles Rams Football Company "breached [an] implied contract when it announced its intention to discontinue playing games in the greater Los Angeles area" and to relocate to St. Louis and holding that "[j]ust because a team has played for years in a particular location and has always done something a particular way does not mean that it must always

do so"). Therefore, the Court concludes that Plaintiffs have failed to state a claim for breach of implied contract.

Accordingly, Plaintiffs' first claim for breach of contract and second claim for breach of implied contract are dismissed.

### D. Plaintiffs' Unjust Enrichment, Conversion, and Money Had and Received Claims Fail.

In its Motion to Dismiss, Occidental argues that Plaintiffs' their third claim for unjust enrichment, fourth claim for conversion, and fifth claim for money had and received should be dismissed because those claims are foreclosed where, as in this case, the parties' relationship is governed by a contract. In their Opposition, Plaintiffs argue that they should be able to allege these claims in the alternative because Occidental "disputes the existence of a contract." Opposition, 18:13-15.

In this case, despite Plaintiffs' argument to the contrary, it is undisputed that the parties' relationship is governed by a contract.[3] *Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 10 (1972) ("The basic legal relation between a student and a private university or college is contractual in nature. The catalogs, bulletins, circulars, and regulations of the institutions made available to the matriculant become a part of the contract"). Because the parties' relationship is governed by a contract, Plaintiffs cannot maintain their claims for unjust enrichment, conversion, or money had and received. *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 2007) (holding that an action for unjust enrichment "does not lie when an enforceable, binding agreement exists defining the rights of the parties"); *Wynne Sys., Inc. v. Mobile Storage Grp., Inc.*, 2010 WL 11595726, *7 (C.D. Cal. May 5, 2010) (rejecting conversion claim because "courts turn to the economic loss rule to bar conversion claims that are based solely on breaches of contractual duties"); *Rhodeman v. Ocwen Loan Servicing, LLC*, 2020 WL 4727289, at *5 (C.D. Cal. July 30, 2020) ("Plaintiff cannot pursue both a breach of contract theory and a money had and received theory where her allegations fail to establish a 'total failure of consideration' "). Indeed, "[w]hile generally parties are permitted to plead in the alternative, the allegation of binding contracts nullifies the unjust enrichment claim." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012) (quotation omitted) (affirming trial court dismissal); *see also Chong v. Northeastern University*, ___ F.Supp. 3d ___, 2020 WL 5847626, at *4 (D. Mass. Oct. 1, 2020) ("Northeastern argues that plaintiffs cannot state a claim for unjust enrichment because they have an adequate alternative remedy available to challenge its retention of tuition and fees ... The court agrees"); *see also Wright v. Capella Univ., Inc.*, 378 F. Supp. 3d 760, 775 (D. Minn. 2019) (dismissing unjust enrichment claim where plaintiff received instruction). The same is true for Plaintiffs' conversion and money had and received claims. *See, e.g., Advanced Riggers & Millwrights, LLC v. Hoist Liftruck MFG, Inc.*, 2015 WL 12860470, at *7 (C.D. Cal. Oct. 29, 2015) (dismissing the plaintiff's conversion claim where it relied on the same facts as its breach of contract claim); *Rhodeman v. Ocwen Loan Servicing, LLC*, 2020 WL 4727289, at *5 (C.D. Cal. July 30, 2020) (holding that money had and received claim fails where plaintiff received "something of value in exchange for her payments"); *Neelon v. Krueger*, 2015 WL 4647931, at *6 (D. Mass. Aug. 5, 2015) (holding that conversion element not satisfied where actions in accordance with contract "not wrongful").

**\*10** In addition, Plaintiffs' unjust enrichment claim must be dismissed because "unjust enrichment" is not an independent cause of action under California law. *See De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018) ("Unjust enrichment is not a cause of action"); *see also Sotelo v. Rawlings Sporting Goods Co.*, 2019 WL 4392528, at *8 (C.D. Cal. May 8, 2019) (dismissing unjust enrichment claim "under California law ... because it cannot serve as a standalone claim for relief"). Moreover, Plaintiffs' conversion claim fails because in California "[m]oney cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment." *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil, & Shapiro, LLP*, 150 Cal. App. 4th 384, 395 (2007); *see also In re Bailey*, 197 F.3d 997, 1000-01 (9th Cir. 1999) (holding that an attorney's use of another attorney's share of settlement funds did not constitute conversion). As a result, "California cases permitting an action for conversion of money typically involve those who have misappropriated, commingled or misapplied specific funds held for the benefit of others." *PCO, Inc.*, 150 Cal. App. 4th at 396. In this case, Chloe's tuition and fees are fungible amounts that cannot be "identified as a specific thing." *Id.* at 395. In the FAC, Plaintiffs allege that they used fungible money to pay for services, some of which were provided and some of which they allege were not provided.

Because the value of six weeks of in-person instruction is not an "identifiable sum," Plaintiffs' conversion claim fails.[4] *Id.* Similarly, Plaintiffs' money had and received claim fails because Occidental is not "indebted to the plaintiff[s] in a certain sum." *Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445, 460 (1998). Plaintiffs do not – and cannot – allege that all tuition payments for Spring 2020 should be refunded. *See, e.g., Farmers Ins. Exchange*, 53 Cal. App. 4th at 460.

Accordingly, Plaintiffs third claim for unjust enrichment, fourth claim for conversion, and fifth claim for money had and received are dismissed.

### IV. Conclusion

For all the foregoing reasons, Occidental's Motion to Dismiss is **GRANTED**. Plaintiffs' Complaint is **DISMISSED without leave to amend**, and this action is **DISMISSED with prejudice**.[5] Occidental's Motion to Stay is **DENIED as moot**.

IT IS SO ORDERED.

Initials of Deputy Clerk vrv

**All Citations**

Slip Copy, 2020 WL 7350212

---

### Footnotes

1     Plaintiffs also argue that a two page excerpt from an Occidental webpage describing Occidental's campus and its location in Los Angeles is a promise of in-person instruction. *See* FAC, ¶¶ 32-33. However, Plaintiffs' concede that the webpage is an advertisement, and "advertisements are ... merely ... invitations to bargain" and not a contractual obligation. *Harris v. Time, Inc.*, 191 Cal. App. 3d 449, 455 (1987). In addition, the webpage does not promise in-person instruction, but merely states that Occidental is located in Los Angeles and describes in general terms the ways in which Occidental's location in Los Angeles has influenced its curriculum. *See, e.g., Sinai Mem'l Chapel v. Dudler*, 231 Cal. App. 3d 190, 198 (1991) (holding that advertisement promising "reverence for customs and observances in strict accord with family wishes" was too general to create implied contract to allow portraits on gravestones).

2     In addition, the Court finds Plaintiffs' argument that mid-semester changes "change the terms of the contract after one party has already fully performed" unpersuasive. Occidental did not change the terms of the contract, but exercised its rights under the 2019-2020 Catalog to "change without notice" the "[f]ees, tuition, programs, courses, course content, instructors, and regulations" and to "change fees, modify its services, or change its program should economic conditions or national emergency make it necessary to do so." *Villareal v. Chamberlain College*, 2019 WL 4736488, at *3 (S.D. Tex. Sept. 27, 2019) (holding that "school's policies and procedures that the student necessarily agree[d] [were] subject to change"); *see also Searle v. Regents of University of California*, 23 Cal. App. 3d 448, 452 (1972); *Adams v. Litton Systems*, 1995 WL 594890, at *2 (N.D. Cal. 1995) (holding that the defendant "reserved the right to modify, amend or terminate the medical benefit plan").

3     In response to Plaintiffs' argument that Occidental "disputes the existence of a contract," Occidental states in its Reply that Plaintiffs' argument "is simply wrong. There is no dispute that a contract exists, Occidental's entire Motion is based on the contract, and Occidental has explicitly stated that 'the parties' relationship is governed by contract.' " Reply, 10:4-7.

4     Plaintiffs' conversion claim also fails because Plaintiffs failed to demand that Occidental return a portion of the tuition and fees paid before filing this action. Where, as here, the property alleged to have been converted was initially acquired in a lawful manner, no conversion claim lies unless the plaintiffs establish that they

| | |
|---|---|
| | demanded the return of the property. *Atwood v. S. Cal. Ice Co.*, 63 Cal. App. 343, 345 (1923) (disapproved on other grounds). |
| 5 | Although the Court recognizes that this Circuit has a liberal policy favoring amendments and that leave to amend should be freely granted, the Court is not required to grant leave to amend if the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile"). In this case, Plaintiffs have had two attempts to allege claims against Occidental and Plaintiffs have failed to indicate in their Opposition what additional facts they could allege in order to state a viable claim against Occidental. Indeed, because the parties largely agree with the facts that Plaintiffs alleged in the FAC and the Court has dismissed Plaintiffs' claims based on issues of law and the interpretation of the contract between Chloe and Occidental, pleading additional facts would not save Plaintiffs' claims from dismissal. *See Villareal v. Chamberlain*, 2019 WL 4736488 (S.D. Tex. Sept. 27, 2019) (applying college catalog language in dismissing breach of contract and money had and received claims and denying leave to amend because "allowing Plaintiff the opportunity to file another pleading would do nothing but prolong the inevitable"). |

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.