# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ZOEY METZNER and DOMINIC GRAVINO, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>QUINNIPIAC UNIVERSITY,<br><br>     Defendant. | Case No. 3:20-cv-00784-KAD<br><br>Hon. Kari A. Dooley |

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Dated: December 2, 2022

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*pro hac vice*)
Alec M. Leslie (*pro hac vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jarisohn@bursor.com
   aleslie@bursor.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Daniel J. Kurowski (*pro hac vice*)
Whitney K. Siehl (*pro hac vice*)
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

*Proposed Class Counsel*

[additional counsel listed on signature page]

**TABLE OF CONTENTS**

PAGE(S)

INTRODUCTION ...................................................................................................................1

I.      FACTUAL AND PROCEDURAL BACKGROUND ........................................................2

        A.      Factual Background ...............................................................................................2

        B.      Procedural Background ..........................................................................................4

ARGUMENT .........................................................................................................................5

I.      THE COURT SHOULD PRELIMINARILY APPROVE THE
        PROPOSED SETTLEMENT ........................................................................................5

        A.      The Terms of the Settlement Are Substantively Fair, Adequate,
                and Reasonable ....................................................................................................5

                1.      Complexity, Expense, and Likely Duration of the Litigation
                        (*Grinnell* Factor 1)...................................................................................6

                2.      The Reaction of the Class (*Grinnell* Factor 2) .........................................7

                3.      The Stage of the Proceedings and the Amount of Discovery
                        Completed (*Grinnell* Factor 3) ................................................................7

                4.      Plaintiffs Would Face Real Risks if the Case Proceeded
                        (*Grinnell* Factors 4 and 5) ......................................................................8

                5.      The Risks of Maintaining a Class Through Trial (*Grinnell*
                        Factor 6)...................................................................................................8

                6.      Defendant's Ability to Withstand a Greater Judgment
                        (*Grinnell* Factor 7)..................................................................................9

                7.      The Reasonableness of the Settlement in Light of the
                        Possible Recovery and the Attendant Risk of Litigation
                        (*Grinnell* Factors 8 And 9) ....................................................................9

        B.      The Remainder of the Rule 23(e)(2) Factors Support Preliminary
                Approval .............................................................................................................10

                1.      The Allocation Plan is Fair and Adequate................................................10

                2.      The Proposed Form and Method of Providing Notice to the
                        Proposed Settlement Class are Appropriate .............................................11

                3.      Attorneys' Fees and Expenses are Reasonable .........................................12

                4.      The Parties Have No Additional Agreements ...........................................13

                5.      Proposed Settlement Class Members are Treated Equitably.....................13

II.     CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS
        APPROPRIATE ........................................................................................................13

i

A.    The Proposed Settlement Class Meets the Requirements of Rule 23(a) ................................................................................................... 15

      1.    Numerosity ............................................................................... 15

      2.    Common Questions of Law and Fact ....................................... 15

      3.    Typicality ................................................................................. 16

      4.    Adequacy .................................................................................. 17

B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ..................... 18

      1.    Common Issues Predominate Over Any Individual Ones ......................... 19

      2.    A Class Action is a Superior Mechanism ................................. 19

III.    THE COURT SHOULD PRELIMINARILY APPOINT NAMED PLAINTIFFS AS SETTLEMENT CLASS REPRESENTATIVES ................................. 20

IV.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ....................... 21

CONCLUSION .................................................................................................... 22

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................................................16, 22, 23

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000) ....................................................................................................24

*Brown v. Title Ticor Ins. Co.*,
  982 F.2d 386 (9th Cir. 1992) ..................................................................................................22

*City of Detroit v. Grinnell Corp.*,
  495 F.2d  (2d Cir. 1974) .............................................................................................2, 6, 12

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ....................................................................................................18

*County of Suffolk v. Long Island Lighting Co.*,
  710 F. Supp. 1422 (E.D.N.Y. 1989)......................................................................................17

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ..................................................................................................20

*Dziennik v. Sealift, Inc.*,
  2007 WL 1580080 (E.D.N.Y. May 29, 2007) .......................................................................20

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) .....................................................................................20, 21

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
  301 F.R.D. 116 (S.D.N.Y. 2014) ...........................................................................................18

*Gilliam v. Addicts Rehab. Ctr. Fund*,
  2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ........................................................................13

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968)...................................................................................................23

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)..........................................................................................16, 23

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .............................................................................8

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................................. 7, 9, 10, 11

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ............................................................................ 16, 17

*In re Lloy'd Am. Trust Fund Litig.*,
   2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ....................................................... 15

*In re Merrill Lynch & Coj., Inc. Research Reports Sec. Litig.*,
   2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ........................................................... 14

*In re Namenda Direct Purchaser Antitrust Litig.*,
   462 F. Supp. 3d 307 (S.D.N.Y. 2020) ................................................................ 14

*In re Prudential Insur. Sales Practices Litig.*,
   962 F. Supp. 450 (D.N.J. 1997) ....................................................................... 23

*In re Telik, Inc. Secs. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................ 14

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 140 (2d. Cir. 2001) .......................................................................... 23

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) ........................................................................... 13

*Lenahan v. Sears, Roebuck & Co.*,
   2006 WL 2085282 (D.N.J. July 10, 2006) ........................................................... 17

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d. Cir. 1997) .......................................................................... 19

*Martens v. Smith Barney Inc.*,
   181 F.R.D. 243 (S.D.N.Y. 1998) ...................................................................... 20

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) ................................................................. passim

*Milonas v. Williams*,
   691 F.2d 931 (10th Cir. 1982) ........................................................................ 19

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ........................................................................... 12

*Ortega v. Uber Techs.*,
   2018 WL 4190799 (E.D.N.Y. May 4, 2018) ......................................................... 15

*Ortiz v. Fibreboard Corp.*,
 527 U.S. 815 (1999) ..............................................................................22

*Robidoux v. Celani*,
 987 F.2d 931 (2d. Cir. 1993) ................................................................19

*Rossini v. Ogilvy & Mather, Inc.*,
 798 F.2d 590 (2d Cir. 1986) ..................................................................22

*Spicer v. Pier Sixty, LLC*,
 2012 WL 4364503 (S.D.N.Y. Sept. 14, 2021) .....................................16

*TBK Partners, Ltd. v. Western Union Corp.*,
 517 F. Supp. 380 (S.D.N.Y. 1981) ..........................................................7

*Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*,
 2004 WL 2997957 (S.D.N.Y. May 14, 2004) .......................................13

*Thompson v. Metro. Life Ins. Co.*,
 216 F.R.D. 55 (S.D.N.Y. 2003) ...............................................................6

*Torres v. Gristede's Oper. Corp.*,
 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ........................................8

*Toure v. Cent. Parking Sys.*,
 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) .....................................20

*Trinidad v. Breakaway Courier Sys., Inc.*,
 2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) .........................................19

*Wagner v. NutraSweet Co.*,
 95 F.3d 527 (7th Cir. 1996) ..................................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) .................................................................18, 19, 22

*Wright v. S. New Hampshire Univ.*,
 2021 WL 1617145 (D.N.H. Apr. 26, 2021) ....................................15, 16

*Zivkovic v. Laura Christy LLC*,
 329 F.R.D. 61 (S.D.N.Y. 2018) .............................................................18

**RULES**

Fed. R. Civ. P. 23 ...........................................................................passim

**OTHER AUTHORITIES**

*Newberg on Class Actions* (4th ed. 2002) ...........................................16, 17

## INTRODUCTION

In this putative class action, Plaintiffs Zoey Metzner and Dominic Gravino ("Plaintiffs") allege that Defendant Quinnipiac University ("QU" or "Defendant") breached a contractual agreement to provide an in-person educational experience when it transitioned Spring Semester 2020 classes to remote learning, given the COVID-19 pandemic.  Plaintiffs seek a partial refund for themselves and all other similarly situated students for educational services for which, they claim, they and class members paid for that Defendant did not provide.  Since the partial denial of Defendant's motion to dismiss the First Amended Complaint, the Parties have been engaged in significant ESI and written discovery.  In the midst of discovery, on September 7, 2022, the Parties agreed to participate in a Settlement Conference before Magistrate Judge Robert M. Spector. Although the conference was unsuccessful, the parties continued to negotiate at arm's length with the assistance of Judge Spector.  The Parties then participated in a second Settlement Conference with Magistrate Judge Spector on October 3, 2022, which culminated in the Parties' executing a term sheet encompassing the material terms of a Class Action Settlement (the "Settlement").  In the ensuing weeks, the Parties worked collaboratively to memorialize a long form settlement agreement and accompanying proposed notice documents.

This $2.5 million common fund Settlement falls squarely within the range established by previous, similar settlements that have been preliminarily and/or finally approved in the COVID-19 tuition and fee refund context.  *See*, *e.g.*, *Fittipaldi v. Monmouth Univ.*, No. 3:20-cv-05526 (D.N.J.) ($1.3MM common fund); *D'Amario v. Univ. of Tampa*, No. 7:20-cv-03744 (S.D.N.Y.) ($3.4MM common fund); *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813 (S.D. Fla.) ($2.4MM common fund); *Wright v. S. New Hampshire Univ.*, No. 1:20-cv-00609 (D.N.H.) ($1.25MM common fund); *Martin v. Lindenwood Univ.*, No. 4:20-cv-01128 (E.D. Mo.) ($1.65MM common

1

fund).  Also, the Settlement is notable because Settlement Class Members (as defined in the Settlement Agreement) will <u>automatically</u> receive a cash payment unless they exclude themselves from the Settlement.  In other words, Settlement Class Members will not have to submit a claim form to receive a cash payment under the Settlement.

This Settlement is fair, reasonable, and adequate and otherwise satisfies the requirements of Rule 23(a) and (b)(3) and the factors outlined in Rule 23(e)(2) and *City of Detroit v. Grinnell Corp.*, 495 F.2d 488 (2d Cir. 1974).  The Court should have no hesitation finding that the Settlement falls within the range of possible approval.  Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint Bursor & Fisher, P.A., Hagens Berman Sobol Shapiro LLP and Izard Kindall & Raabe LLP as Class Counsel; (4) appoint Zoey Metzner and Dominic Gravino as Class Representatives for the Settlement Class Members; (5) appoint JND Settlement Administration as the Settlement Administrator; and (6) approve the Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice"), attached as Exhibits B-D to the Settlement Agreement, and direct distribution of the Proposed Notice.

# I.     FACTUAL AND PROCEDURAL BACKGROUND

## A.     Factual Background

Plaintiffs and Settlement Class Members are current and/or former students of Defendant Quinnipiac University.  Plaintiffs allege that they and the alleged class members entered into a contractual agreement for specific services – an on-campus, in-person education experience at QU. Plaintiffs were to provide pre-payment, partially in the form of tuition and fees and QU, in

2

exchange, was to provide in-person educational services, experiences, opportunities, and other related facilities to Class Members, including Ms. Metzner and Mr. Gravino.  First Amended Complaint (ECF No. 25) ("FAC") ¶¶ 2-6.  They also allege that they selected on-campus courses and paid for the in-class and educational experiences that only an in-person program can deliver, such as the ability to access important university facilities, services, and faculty in-person. Quinnipiac's website contains a Course Finder that lists the available classes for each semester. The Course Finder has a separate check box that says 'Online Courses Only.' Neither Plaintiffs Metzner or Gravino [] sought "Online Courses Only" in registering for classes for the Spring 2020 semester."  FAC ¶¶ 40-41.  Plaintiffs further allege they "had the reasonable expectation that Defendant would provide the in-person educational experience and use of its facilities provided in Defendant's publications, including but not limited to the Bulletin, catalogs, handbooks, brochures, advertisements, and other promotional materials" and "[t]he combination of the express terms of the Bulletin, Defendant's publications and Defendant's usual and customary practice constituted an offer to any students attending Quinnipiac to register for on-campus classes."  *Id.* ¶¶ 43-44.  "If accepted by Plaintiffs and Class Members who did in fact register for such on-campus classes, in accordance with Quinnipiac's policies and procedures and usual custom and practice, and who timely paid tuition for those on-campus classes, Defendant became contractually obligated to provide on-campus classes to Plaintiffs and Class Members." *Id.* ¶ 44.

In sum, "Plaintiffs and Class Members paid Quinnipiac tuition and fees for on-campus courses—and the benefits, services, opportunities, and facilities that came with them—for the Spring 2020 semester. In registering and paying Quinnipiac tuition and fees for the Spring 2020 semester, Plaintiffs and Class Members understood, per the Bulletin, Quinnipiac's publications, and Quinnipiac's usual and customary practice, that the classes they bargained and paid for would

be administered on-campus for the duration of the semester, and that they would get a full semester's worth of access to on-campus facilities, services, and resources.  However […] since March 15, 2020, Plaintiffs [were not] permitted to attend classes on-campus or [have] access to campus benefits."  FAC ¶¶ 51-52.

Defendant denies that it breached any express or implied contract with its students or that it was unjustly enriched because of the change in learning modalities required during the Spring 2020 Semester.  Defendant has maintained that it acted properly, reasonably in accord with all applicable laws, rules, regulations, and ordinances to protect the health and safety of its students, faculty and staff, and that it violated no express or implied contractual obligations to its Spring 2020 students, particularly given the unprecedented circumstances created by the COVID-19 pandemic.  Nevertheless, QU has agreed to the settlement to avoid the time, inconvenience, costs and uncertainty of protracted litigation both for itself and its students and, most important, because it wishes to instead focus its attention and resources on its priority of continuing to provide top quality education and services to its students.

### B.    Procedural Background

Plaintiffs filed the initial complaint on June 5, 2020.  ECF No. 1.  Defendant moved to dismiss the initial complaint on August 24, 2020, ECF No. 22, and moved to stay discovery on August 26, 2020.  ECF No. 24.  In response, Plaintiffs filed their First Amended Complaint ("FAC") on September 14, 2020.  ECF No. 25.  Plaintiffs then opposed Defendant's motion to stay on September 16, 2020.  ECF No. 26.  Defendant withdrew its motion to stay discovery without prejudice on September 24, 2020.  ECF No. 33.

On October 5, 2020, Defendant moved to dismiss the FAC, ECF No. 35, and Defendant moved to stay discovery on October 12, 2020.  ECF No. 37.  In response, Plaintiffs filed their

opposition briefs to both motions on October 26, 2020.  ECF Nos. 40, 41.  Thereafter, the parties

filed multiple notices of supplemental authority supporting their respective briefs.  ECF Nos. 44,

56, 62, 63, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75.

The Court denied Defendant's motion to stay on November 12, 2020, and the Court heard

oral argument on Defendant's motion to dismiss on December 2, 2020.  ECF No. 54.  Then, on

January 14, 2021, the Court ordered supplemental briefing on whether the parent-plaintiffs had

standing to pursue claims, which the parties submitted on February 1, 2021.  ECF Nos. 68, 69.

On March 25, 2021, the Court granted in part and denied in part Defendant's motion to

dismiss.  ECF No. 76.  Defendant filed its Answer on April 8, 2021, generally denying the

allegations and asserting numerous affirmative defenses.  ECF No. 77.

## ARGUMENT

## I.    THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT

### A.    The Terms of the Settlement Are Substantively Fair, Adequate, and Reasonable

The Settlement falls within the "range of reason" such that notice and a final hearing as

to the fairness, adequacy and reasonableness of the Settlement is warranted.  In evaluating the

substantive fairness of a class action settlement, courts in the Second Circuit consider the nine

factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d at 463, along with the factors set

forth in Rule 23(e)(2).  In finding that a settlement is fair, not every factor must weigh in favor

of settlement; "rather, the court should consider the totality of these factors in light of particular

circumstances." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003).  Taken

together, the *Grinnell* factors and Rule 23(e)(2) weigh heavily in favor of preliminarily approving

the proposed Settlement.

1.      **Complexity, Expense, and Likely Duration of the Litigation (*Grinnell* Factor 1)**

By reaching a favorable settlement before trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd,* 675 F.2d 456 (2d Cir. 1982).

This case is no exception.  The Parties have engaged in extensive motion practice and ESI and written discovery.   Arisohn Decl. ¶ 5.  The next steps in the litigation would have been resolution by the Court of Plaintiffs' forthcoming motion for class certification, and Defendant's forthcoming motion for summary judgment.  At minimum, these efforts would be costly and time-consuming for the Parties and the Court, and creates risk that a litigation class would not be certified and/or that the Settlement Class Members would recover nothing.  QU is represented by formidable defense counsel well-versed in tuition refund litigation, and QU has indicated that it would continue to assert numerous defenses on the merits.  *See, e.g.*, Answer to Second Amended Complaint (ECF No. 77).  Plaintiffs and Class Counsel are also aware that QU would oppose class certification vigorously, and that QU would prepare a competent defense at trial.  Looking beyond trial, Plaintiffs are also keenly aware that QU could appeal the merits of any adverse decision, thereby further delaying any potential recovery for the Class. The central legal issues in this case

6

are largely questions of first impression in the context of the COVID-19 pandemic, and the ultimate resolution of them at the appellate level is uncertain and difficult to predict.

The Settlement, on the other hand, permits a prompt resolution on terms that are fair, reasonable, and adequate to the Class.  This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty whereas litigation does not and could result in defeat for the Class on summary judgment, at trial or on appeal.  This *Grinnell* factor plainly supports preliminary approval of the proposed Settlement.

### 2.     The Reaction of the Class (*Grinnell* Factor 2)

Since Notice of the Settlement has not yet been issued to the Class, it is not possible to gauge the precise reaction of the Class at this time.  Prior similar settlements in the COVID-19 tuition refund context suggest that the Class will react favorably.

### 3.     The Stage of the Proceedings and the Amount of Discovery Completed (*Grinnell* Factor 3)

This factor goes to "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).  "The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating."  *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted).   "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted).

Here, Class Counsel are sufficiently well informed of the strengths and weaknesses of the claims, having drafted three pleadings and survived, in part, a motion to dismiss.  Class Counsel

also spoke with potential merits and damages experts about the strengths and weaknesses of the case, as well as the strengths and weaknesses of QU's arguments and affirmative defenses. Moreover, the information exchanged leading up to and during settlement negotiations permitted Class Counsel to learn the relevant facts and circumstances in an efficient and cost-effective manner.  QU provided extensive financial information detailing tuition and fees assessed for the Spring 2020 semester. The Parties also exchanged further information through mediation submissions, as well as various written correspondence and phone calls.  As a result, Class Counsel was well-positioned to evaluate the strengths of Plaintiffs' claims, QU's defenses, and prospects for success.  This *Grinnell* factor thus also supports preliminary approval.

> **4.      Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)**

Although Plaintiffs believe their case is strong, it is not without risk.  At the time of the settlement, QU was prepared to engage in further fact and expert discovery in anticipation of its forthcoming motion for summary judgment, and had made it clear that it would vigorously contest the certification of a litigation class.  *See* Arisohn Decl. ¶¶ 14-15.  In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations omitted).

In this litigation, Plaintiffs and the putative Class face risks in overcoming QU's forthcoming summary judgment motion and certifying a class.  Moreover, further litigation will only delay relief to the Settlement Class Members.  The proposed Settlement alleviates these risks, and provides a substantial benefit to the Settlement Class Members promptly.  These *Grinnell* factors thus favor preliminary approval.

> **5.      The Risks of Maintaining a Class Through Trial (*Grinnell* Factor 6)**

The risk of maintaining the class status through trial is also present.  The Court has not yet certified the proposed Class and such a determination would be reached only after exhaustive class certification briefing is filed.   QU would argue that individual questions preclude class certification.  QU would also argue that a class action is not a superior method to resolve Plaintiffs' claims, and that a class trial would not be manageable.

Were the Court to certify a class, QU would likely challenge certification through a Rule 23(f) petition and move to decertify, forcing additional rounds of briefing.  Risk, expense, and delay permeate such a process.  The proposed settlement eliminates this risk, expense, and delay. This factor supports preliminary approval.

### 6. Defendant's Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

QU probably could withstand a greater judgment.  However, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178, n.9).  Thus, at worst, this factor is neutral.

### 7. The Reasonableness of the Settlement in Light of the Possible Recovery and the Attendant Risk of Litigation (*Grinnell* Factors 8 And 9)

Determining whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (W.D.N.Y. 2005). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained because of the settlement are less than those originally sought. As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." 495 F.2d at 455 n.2.

Here, the total settlement value is $2.5 million, and Class Counsel projects that each Settlement Class Member is expected to receive a few hundred dollars in cash (via check, Venmo, or PayPal). In addition, Defendant has agreed to pay the costs of service awards to Plaintiffs, notice and administration costs, as well as reasonable attorneys' fees, plus costs and expenses for proposed Class Counsel from the all-in fund established by the Settlement. Settlement ¶ 1.31. Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the Settlement is more than reasonable. Where – as here – a settlement assures immediate payment of substantial amounts to Settlement Class Members, the settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*, 2004 WL 2997957, *5 (S.D.N.Y. May 14, 2004)). Thus, these *Grinnell* factors also support preliminary approval.

In sum, all of the *Grinnell* factors weigh in favor of approval, or are neutral at worst. If objections arise after notice is issued to the Class, the Court may reevaluate its determination. Because the Settlement on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

10

**B.     The Remainder of the Rule 23(e)(2) Factors Support Preliminary Approval**

**1.     The Allocation Plan is Fair and Adequate**

"Approval of a plan of distribution for a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole, i.e., the distribution plan must be fair, reasonable and adequate." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020).  Notably, an "allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent Class counsel." *Id.*  Here, by excluding students who did not have to pay anything out of pocket for the Spring 2020 Semester, the allocation plan considers "the relative strength and values of different categories of claims." *See In re Telik, Inc. Secs. Litig.*, 576 F. Supp. 2d 570, 581 (S.D.N.Y. 2008). While some of the similar settlements involving other colleges and universities have provided for pro rata allocation of settlement proceeds to students based on amounts they paid out of pocket for their education, and the Parties considered that approach here, it was not feasible due to QU's lack of electronic data in the form that would be necessary to distribute settlement proceeds in such a manner. Accordingly, the Settlement divides the proceeds equally among all class members who qualify for payment. Every student who did not receive a full scholarship paid, at a minimum, hundreds and more typically thousands of dollars for the Spring 2020 Semester at QU.

**2.     The Proposed Form and Method of Providing Notice to the Proposed Settlement Class are Appropriate**

"Notice need not be perfect, but need be only the best notice practicable under the circumstance, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *In re Merrill Lynch & Coj., Inc. Research Reports Sec. Litig.*, 2007 WL 313474, at *8 (S.D.N.Y. Feb.

1, 2007).  Class Counsel respectfully submits that the proposed plan for notice is fair, reasonable, and adequate.  As recited in the Settlement and described above, the proposed notice will inform Settlement Class Members of the Settlement's substantive terms. It will advise Settlement Class Members of their options for remaining part of the Settlement Class or for opting out of the Settlement; for receiving their Settlement Benefits; for objecting to the Settlement, Class Counsel's attorneys' fee application and request for service awards to the named Plaintiffs; and how to obtain additional information about the Settlement.  The proposed plan for notice is designed to directly reach a high percentage of Settlement Class Members by e-mail and by regular U.S. mail if the email notice is undeliverable, with consideration that Settlement Class Members' contact information is readily available and maintained by Defendant.

Notice programs such as the one proposed by Class Counsel have been approved as adequate under the Due Process Clause and Rule 23.  *See*, *e.g.*, *Ortega v. Uber Techs*., 2018 WL 4190799 (E.D.N.Y. May 4, 2018) (approving a notice plan of notice by email, with notice by mail for class members whose emails are undeliverable, and ordering the parties to create a settlement website).  And in other similar COVID-19 refund actions, substantially similar methods of notice have been approved.  *See*, *e.g.*, *D'Amario v. Univ. of Tampa*, No. 7:20-cv-03744 (S.D.N.Y.); *Wright v. S. New Hampshire Univ.*, 2021 WL 1617145, at *2 (D.N.H. Apr. 26, 2021); *see also Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla. Mar. 30, 2021).  Accordingly, the Court should approve the plan for notice and the form and content of the notices.

### 3.    Attorneys' Fees and Expenses are Reasonable

Class Counsel will apply for an award of attorneys' fees and expenses, for service awards to the Class Representatives, and will receive any applied-for fees and expenses only upon this

Court's ruling regarding attorneys' fees and costs.  Under the Settlement Agreement, Class Counsel will apply to the Court for a Fee Award not to exceed one-third of the Settlement Fund. Such a request for attorneys' fees is reasonable when compared to other common-fund settlements within the Second Circuit.  *See, e.g., In re Lloy'd Am. Trust Fund Litig.*, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) (noting "scores of common fund cases where fees . . . were awarded in the range of 33-1/3% of the settlement fund."); *Spicer v. Pier Sixty, LLC*, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2021).   The same percentage has been approved in other COVID-19 tuition refund actions.  *See, e.g., D'Amario v. Univ. of Tampa*, No. 7:20-cv-03744 (S.D.N.Y.); *Wright v. S. New Hampshire Univ.*, No. 1:20-cv-00609-LM, Order (D.N.H. Aug. 22, 2021); *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM, Order (S.D. Fla. Aug. 7, 2021), *Martin v. Lindenwood Univ.*, No. 4:20-cv-01128-RLW, Order (E.D. Mo. May 11, 2022).

### 4.    The Parties Have No Additional Agreements

Besides the Settlement Agreement itself, there are no additional agreements other than a term sheet the parties signed at the conclusion of mediation, which is consistent with the Settlement Agreement.  *See* Arisohn Decl., ¶ 13.

### 5.    Proposed Settlement Class Members are Treated Equitably

The final factor, Rule 23(e)(2)(D), looks at whether class members are treated equitably. As stated above, *see supra* § I.B.1, the proposed Settlement treats Settlement Class Members equitably, and in turn, all Settlement Class Members will give QU the same release.

Because the proposed Settlement satisfies both the Rule 23(e)(2) factors and the *Grinnell* factors, the proposed Settlement should be preliminarily approved.

## II.    CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS APPROPRIATE

Plaintiffs respectfully request that the Court certify the Settlement Class for purposes of

effectuating the settlement.  The Court should determine that the proposed Settlement Class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and at least one subsection of Rule 23(b), *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Newberg on Class Actions* § 11:27 (4th ed. 2002) (citing *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.* ("*In re GMC*"), 55 F.3d 768 (3d Cir. 1995)), and certify the settlement class, appoint Bursor & Fisher, P.A., Hagens Berman Sobol Shapiro LLP and Izard, Kindall & Raabe LLP as Class Counsel, Plaintiffs Zoey Metzner and Dominic Gravino as the Class Representatives, and JND Legal Administration as the Settlement Administrator.

All of the certification requirements for settlement purposes are met and QU consents to provisional certification.  *See Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Provisional settlement approval, class certification, and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing.  *See In re GMC*, 55 F.3d at 784; *Lenahan v. Sears, Roebuck & Co.*, 2006 WL 2085282, at *6 (D.N.J. July 10, 2006) (conditionally certifying multi-state classes and granting preliminary approval to nationwide wage and hour settlement).

14

Under Rule 23(a), a class action may be maintained if the prongs of Rule 23(a) are met and one prong of Rule 23(b) is satisfied. Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that:

> questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

## A.    The Proposed Settlement Class Meets the Requirements of Rule 23(a)

### 1.    Numerosity

Rule 23(a) requires that the members of the class be so numerous that joinder of all members is impracticable.  While numerosity does not require a fixed number of class members, "numerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  The Settlement Class consists of about 9,200 members.  Therefore, the numerosity requirement of Rule 23(a) is readily satisfied.

### 2.    Common Questions of Law and Fact

Rule 23(a)(2) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). This threshold is satisfied if the question is "capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity

15

of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[A] single [common] question will" satisfy the commonality inquiry. *Id.* at 359. "The claims for relief need not be identical for them to be common." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018). Rather, Rule 23(a)(2) is a "low hurdle," *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014), that may be satisfied by even a single question of law or fact common to the class, *Wal-Mart Stores*, 564 U.S. at 369.

Plaintiffs easily satisfy the "low hurdle" of demonstrating commonality. Plaintiffs believe this action presents many questions common to the Settlement Class. Plaintiffs assert common questions that include: (a) whether QU breached its implied contract with students by refusing to issue partial refunds for the Spring 2020 Semester despite failing to provide in-person educational services; (b) whether QU provided the services for which the Settlement Class Members allegedly contracted; and (c) whether the Settlement Class Members are entitled to a refund for that portion of the services allegedly not delivered. These common questions, which target the same alleged misconduct by QU, satisfy Rule 23(a)(2).

### 3.    Typicality

The next requirement – typicality – requires that a class representative have claims typical of those of the putative class members. Fed. R. Civ. P. 23(a)(2). Typicality is met here. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182; *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotations omitted). "Minor variations

16

in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiff and the class.  *Robidoux*, 987 F.2d at 936-37.  Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members."  *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

Here, Plaintiffs allege that QU breached its implied contract with students to provide an in-person educational experience by refusing to issue partial refunds for the Spring 2020 Semester. FAC ¶¶ 100-101.  Plaintiffs were in the same position as other students during the Spring 2020 Semester and their relationship with QU was not materially different from other class members. Thus, their claims are typical of the other putative class members.  By pursuing their own claims, Plaintiffs will necessarily advance the interests of the Settlement Class Members, and typicality is therefore satisfied.  *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014) (holding that the typicality requirement was satisfied where "the lead plaintiffs' and other class members' claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories").

### 4.    Adequacy

The final Rule 23(a) prerequisite requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the class representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)).  "'[O]nly a conflict that goes to the very

subject matter of the litigation will defeat a party's claim of representative status.'" *Dziennik v. Sealift, Inc.*, 2007 WL 1580080, at *65 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

Here, Plaintiffs – like each and every one of the Settlement Class Members – are students that paid tuition and fees to attend QU for the Spring 2020 Semester. FAC ¶ 83. Thus, Plaintiffs and the Settlement Class Members have the exact same interest in recovering the damages to which they are allegedly entitled. Plaintiffs have no interests antagonistic to those of the proposed Settlement Class Members and their pursuit of this litigation is clear evidence of that reality.

Likewise, proposed Class Counsel – Bursor & Fisher, P.A. and Hagens Berman Sobol Shapiro LLP – have extensive experience in litigating class actions of similar size, scope, and complexity to the action. Arisohn Decl. ¶ 11; Kurowski Decl. ¶ 3; Raabe Decl. ¶ 3. Class Counsel regularly engages in major complex class action litigation, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country. *Id.*; *see also* Firm Resume of Bursor & Fisher, P.A., Arisohn Decl. Exhibit 2; Firm Resume of Hagens Berman, Kurowski Decl. Exhibit 1; Firm Resume of Izard, Kindall & Raabe LLP, Raabe Decl. Exhibit 1 *see also Ebin*, 297 F.R.D. at 566 ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008.").

Further, proposed Class Counsel has devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the Settlement Class Members, aggressively pursuing those claims through motion practice, conducting both formal and informal discovery, participating in a private mediation, and ultimately, negotiating a favorable settlement.

18

Arisohn Decl. ¶¶ 4-8.  Proposed Class Counsel have vigorously prosecuted this action and will continue to do so throughout its pendency.

Since Plaintiffs and proposed Class Counsel have demonstrated their commitment to representing the Settlement Class Members and neither have interests antagonistic to the Settlement Class Members, the adequacy requirement is satisfied.

### B.      The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  That Plaintiffs easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied.  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

Certification under Rule 23(b)(3) will allow class members to opt out of the settlement and preserve their right to seek damages independently.  *Cf. Brown v. Title Ticor Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992).  This approach protects class members' due process rights.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-48 (1999).

### 1.      Common Issues Predominate Over Any Individual Ones

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 359, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  Where plaintiffs are "unified by a common legal theory" and by common facts, the

19

predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). The predominance requirement "is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).

Here, there allegedly was a common course of conduct engaged in by QU. Moreover, the central legal issues presented by this case that the Court addressed on QU's motion to dismiss and some of which likely would be presented on a motion for summary judgment if this litigation were to proceed further, would predominate over individualized issues. In these circumstances, courts find, particularly for purposes of settlement, that there is predominance of common questions over individual issues. *See In re Prudential Insur. Sales Practices Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I*") (citing numerous cases).

## 2.    A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[1]

---

[1] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 140 (internal quotation marks omitted).

Here, Plaintiffs and the Settlement Class Members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits filed by Settlement Class Members arising from the same allegations.  Employing the class device here will not only achieve economies of scale for putative Class Members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the expense of repetitive proceedings and preventing inconsistent adjudications of similar issues and claims.  *See Hanlon*, 150 F.3d at 1023.  A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the putative settlement class members' claims.

## III.   THE COURT SHOULD PRELIMINARILY APPOINT NAMED PLAINTIFFS AS SETTLEMENT CLASS REPRESENTATIVES

Plaintiffs Zoey Metzner and Dominic Gravino have actively participated in this case and have vigorously represented the interests of the Settlement Class Members.  Specifically, they have provided Class Counsel with information necessary to draft and file the complaint, responded to multiple information requests, and represented the Settlement Class Members in settlement discussions.  Moreover, Plaintiffs are adequate because their interests are not antagonistic to those of the Settlement Class Members.  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).  Plaintiffs, like members of the Settlement Class, allege they paid for QU's on-campus educational experience, and seek a refund for educational services they allegedly did not fully receive.   The Court should preliminarily appoint Plaintiffs Metzner and Gravino as Settlement Class Representatives.

## IV.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

Under Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in

21

plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Here, the proposed Notice provides detailed information about the Settlement, including: 1) a comprehensive summary of its terms; 2) Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and service awards for the named Plaintiffs; and 3) detailed information about the Released Claims.  *See* Settlement Exhibits B-D (annexed to Exhibit 1 of Arisohn Decl.).  In addition, the Notice provides information about the Fairness Hearing date, the right of Settlement Class Members to seek exclusion from the Class or to object to the proposed Settlement (as well as the deadlines and procedure for doing so), and the procedure to receive additional information.  *Id.*  In short, the Notice is intended to fully inform Settlement Class Members of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights.  The very detailed information in this proposed notice goes well beyond the requirements of the Federal Rules.  Indeed, courts have approved class notices even when they provided only general information about a settlement.  This information is adequate to put Settlement Class Members on notice of the proposed Settlement and is well within the requirements of Rule 23(c)(2)(B).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order preliminarily approving the proposed Settlement, certifying the proposed Settlement Class, appointing Plaintiffs as Settlement Class Representatives, appointing Bursor & Fisher, P.A.,

Hagens Berman Sobol Shapiro LLP and Izard, Kindall & Raabe LLP as Class Counsel, appointing

JND Legal Administration as the Settlement Administrator, and approving the proposed schedule.

Dated: December 2, 2022                         Respectfully submitted,

                                                By:    _/s/ Joshua D. Arisohn_____
                                                        Joshua D. Arisohn

                                                **BURSOR & FISHER, P.A.**
                                                Joshua D. Arisohn
                                                Alec M. Leslie
                                                888 Seventh Avenue
                                                New York, NY 10019
                                                Telephone: (646) 837-7150
                                                Facsimile: (212) 989-9163
                                                Email: jarisohn@bursor.com
                                                        aleslie@bursor.com

                                                **BURSOR & FISHER, P.A.**
                                                Sarah N. Westcot (*pro hac vice*)
                                                701 Brickell Avenue, Suite 1420
                                                Miami, FL 33131
                                                (305) 330-5512
                                                swescot@bursor.com

                                                **HAGENS BERMAN SOBOL**
                                                **SHAPIRO LLP**
                                                Steve W. Berman
                                                1301 Second Avenue, Suite 2000
                                                Seattle, WA 98101
                                                (206) 623-7292
                                                steve@hbsslaw.com

                                                **HAGENS BERMAN SOBOL**
                                                **SHAPIRO LLP**
                                                Daniel J. Kurowski (*pro hac vice*)
                                                Whitney K. Siehl (*pro hac vice*)
                                                455 N. Cityfront Plaza Dr., Suite 2410
                                                Chicago, IL 60611
                                                (708) 628-4949
                                                dank@hbsslaw.com
                                                whitneys@hbsslaw.com

*Proposed Class Counsel*

**IZARD KINDALL & RAABE, LLP**
Craig A. Raabe (ct04116)
29 South Main Street, Suite 305
West Hartford, CT 06107
T: (860) 493-6292
F: (860) 493-6290
craabe@ikrlaw.com

*Additional Proposed Class Counsel and Local Counsel*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on December 2, 2022, a true and correct copy of the foregoing, together with all attachments thereto, was filed electronically via CM/ECF, which caused notice to be sent to all counsel of record.

By:   */s/ Joshua D. Arisohn*
        Joshua D. Arisohn

25