## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

ZOEY METZNER and DOMINIC
GRAVINO, individually and on behalf of all
others similarly situated,

                    Plaintiffs,

        v.

QUINNIPIAC UNIVERSITY,

                    Defendant.

No. 3:20-cv-00784-KAD

Judge Kari A. Dooley

February 27, 2023

## PLAINTIFFS' MEMORANDUM OF LAW IN
## SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY
## <u>FEES, COSTS, EXPENSES, AND SERVICE AWARDS</u>

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................................... 1

II. ANALYSIS.................................................................................................................. 2

    A.  The Requested Attorneys' Fees, Costs, And Expenses Are
    Reasonable And Should Be Approved. ................................................................. 2

        1.  The percentage method should be used to calculate fees. ......................... 5

        2.  The reasonableness of the requested fees is supported by
        this Circuit's six-factor Goldberger test......................................... 6

            a.  Time and labor expended by counsel: Class Counsel
            dedicated significant time and labor to this case. .......................... 6

                (1)  Class Counsel thoroughly investigated the
                claims and allegations in this matter.................................. 7

                (2)  Class Counsel actively litigated this case. ......................... 7

                (3)  Class Counsel committed substantial time
                and resources to reaching a comprehensive
                Class Settlement and obtaining Preliminary
                Approval. .......................................................................... 8

                (4)  Class Counsel's significant work after
                Preliminary Approval........................................................ 8

                (5)  Over the next several months, Class Counsel
                will commit additional time and resources to
                monitoring the Settlement................................................. 8

            b.  Magnitude and complexity of the litigation: This
            class action addressed complex issues and focused
            on the novel application of contract law to the
            student-university relationship....................................... 9

            c.  The risk of litigation.................................................... 10

            d.  The quality of representation. ..................................... 11

            e.  The requested fee in relation to the Settlement........... 12

           f.      Public policy considerations further support Class Counsel's fee request. .................................................................. 13

      3.      The requested attorneys' fees are also reasonable under a lodestar cross-check. ................................................................ 14

B.      The Requested Service Award Reflects Plaintiffs' Active Involvement in This Action And Should Be Approved...................................... 17

III.      CONCLUSION ............................................................................................ 19

010920-30/2184516 V1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arredondo v. Univ. of La Verne,*
341 F.R.D. 47 (C.D. Cal. 2022) .......................................................................................10

*Asare v. Change Grp. of N.Y., Inc.,*
No. 12 Civ. 3371 (CM), 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ................................16

*Beckman v. KeyBank, N.A.,*
293 F.R.D. 467 (S.D.N.Y. 2013) .....................................................................................16

*Blum v. Stenson,*
465 U.S. 886 (1984)........................................................................................................14

*Cassese v. Williams,*
503 F. App'x 55 (2d Cir. 2012) .......................................................................................14

*In re Citigroup Inc. Sec. Litig.,*
965 F. Supp. 2d 369 (S.D.N.Y. 2013).................................................................................3

*In re Columbia Univ. Tuition Refund Action,*
No. 20-cv-03208-JMF, ECF No. 115 (S.D.N.Y. Mar. 29, 2022) ......................................16, 19

*In re Credit Default Swaps Antitrust Litig.,*
No. 13md2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)...................................16

*Diaz v. Univ. of S. Cal.,*
No. CV204066DMGPVCX, 2020 WL 5044419 (C.D. Cal. July 17, 2020) .........................12

*Dornberger v. Metro. Life Ins. Co.,*
203 F.R.D. 118 (S.D.N.Y. 2001) .....................................................................................19

*Ebin v. Kangadis Food Inc.,*
297 F.3d 561 (S.D.N.Y. Feb. 25, 2014)............................................................................11

*In re EVCI Career Colleges Holding Corp. Sec. Litig.,*
No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)................................5

*Goldberger v. Integrated Resources, Inc.,*
209 F.3d 43 (2d Cir. 2000)............................................................................... *passim*

*Hyun v. Ippudo USA Holdings,*
No. 14-CV-8706 (AJN), 2016 WL 1222347 (S.D.N.Y. Mar. 24, 2016)...........................6, 16

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.,*
No. 15-CV-1113 (VAB), 2016 WL 6542707 (D. Conn. Nov. 3, 2016)................................12

*Kiefer v. Moran Foods, LLC*,
  No. 12-CV-756 WGY, 2014 WL 3882504 (D. Conn. Aug. 5, 2014)............................ *passim*

*LeBlanc-Sternberg v. Fletcher*,
  143 F.3d 748 (2d Cir. 1998).................................................................................15

*Lego A/S v. Best-Lock Constr. Toys, Inc.*,
  No. 3:11-CV-1586 (CSH), 2021 WL 3291524 (D. Conn. Aug. 2, 2021)................................7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11 Civ. 5450, 2018 WL 3863445 (S.D.N.Y. Aug. 14, 2018) ..........................................19

*Luciano v. Olsten Corp.*,
  109 F.3d 111 (2d Cir. 1997).................................................................................14

*Macedonia Church v. Lancaster Hotel, LP*,
  No. 05-0153 TLM, 2011 WL 2360138 (D. Conn. June 9, 2011) ...........................................4

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................10, 12

*Massiah v. MetroPlus Health Plan, Inc.*,
  No. 11-cv-05669 (BMC), 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)........................13, 18

*McDaniel v. County of Schenectady*,
  595 F.3d 411 (2d Cir. 2010).................................................................................3

*Menkes v. Stolt-Nielsen S.A.*,
  No. 3:03CV00409(DJS), 2011 WL 13234815 (D. Conn. Jan. 25, 2011)..........................4, 15

*In re MetLife Demutalization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..................................................................12

*Metzner v. Quinnipiac Univ.*,
  528 F. Supp. 3d 15 (D. Conn. 2021)....................................................................11

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)...........................................................................................15

*Monzon v. 103W77 Partners, LLC*,
  No. 13 Civ. 5951 (AT), 2015 WL 993038 (S.D.N.Y. Mar. 5, 2015) .......................................3

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) .........................................................................9

*GB ex rel. NB v. Tuxedo Union Free Sch. Dist.*,
  894 F. Supp. 2d 415 (S.D.N.Y. 2012).....................................................................4

*Omori v. Brandeis Univ.*,
   No. CV 20-11021-NMG, 2022 WL 10511039 (D. Mass. Oct. 18, 2022) .............................10

*Parker v. Time Warner Entm't Co., L.P.*,
   631 F. Supp. 2d 242 (E.D.N.Y. 2009) ...................................................................................14

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
   478 U.S. 546 (1986)...............................................................................................................14

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010).................................................................................................................5

*Perez v. Rash Curtis & Assocs.*,
   No. 4:16-cv-03396-YGR, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020).............................16

*Randall v. Univ. of the Pac.*,
   No. 5:20-CV-03196-EJD, 2022 WL 1720085 (N.D. Cal. May 28, 2022).............................10

*Reyes v. Altamarea Grp.*,
   No. 10-CIV-6451 (RLE), 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ..............................17

*Roberts v. TJX Cos., Inc.*,
   No. 13-cv-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) ...................................9

*Rosado v. Barry Univ.*,
   No. 20-cv-21813-JEM (S.D. Fla. Sept. 7, 2021) .....................................................................4

*Shaffer v. George Wash. Univ.*,
   27 F.4th 754 (D.C. Cir. 2022)..................................................................................................9

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 Civ. 8331 (CM), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)....................10, 13, 14

*In re Suffolk Univ. Covid Refund Litig.*,
   No. CV 20-10985-WGY, 2022 WL 6819485 (D. Mass. Oct. 11, 2022) ................................10

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................................................................................10

*In re Tyco Int'l, Ltd.*,
   535 F. Supp. 2d 249 (D.N.H. 2007)........................................................................................13

*In re U.S. Foodservice, Inc. Pricing Litig.*,
   No. 3:07-MD-1894 (AWT), 2014 WL 12862264 (D. Conn. Dec. 9, 2014)............................4

*Varljen v. H.J. Meyers & Co., Inc.*,
   No. 97 Civ. 6742 (DLC), 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000)..................................5

*Velez v. Novartis Pharm. Corp.*,
    No. 04 Civ. 09194 (CM), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ................................9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)............................................................................................3, 6, 14

*Yuzary v. HSBC Bank USA, N.A.*,
    No. 12 Civ. 3693 (PGG), 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013)...................................2

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ...................................................................................................................1, 2

010920-30/2184516 V1

## I.        INTRODUCTION

Plaintiffs Zoey Metzner and Dominic Gravino ("Plaintiffs" or Class Representatives") were/are students enrolled in in-person educational programs at Defendant Quinnipiac University for the Spring 2020 semester. Plaintiffs allege Quinnipiac breached a contractual agreement to provide in-person, on campus education when it transitioned classes to remote learning during the Spring 2020 semester due to the COVID-19 pandemic.

After motion to dismiss and discovery practice, followed by extensive arms'-length negotiations, including two mediation sessions before Magistrate Judge Robert M. Spector, the Parties reached a Class Action Settlement Agreement (the "Settlement"). The Settlement commits Defendant to create a $2,500,000 non-reversionary Settlement Fund that will provide automatic payments to each Settlement Class Member upon final approval. *See* Settlement Agreement ¶ 1.31 (ECF-118-1). The Settlement states that Class Counsel may seek to receive from the Settlement Fund, subject to Court approval, attorneys' fees, costs, and expenses not to exceed one-third of the Settlement Fund (or $833,333.33), and individual service awards of $3,000 each for the two Class Representatives. *Id.* at 8.

The Settlement and Notice was preliminarily approved by this Court on December 16, 2022. ECF 125. But to settle and arrive at this point, Class Counsel incurred 988.25 hours in uncompensated professional time and $33,338.30 in uncompensated professional costs on behalf of Plaintiffs and the Settlement Class Members. Under the requirements of Fed. R. Civ. P. 23(h), Plaintiffs timely and respectfully request the Court approve: (1) reasonable attorneys' fees and costs totaling one-third of the Settlement Fund plus expenses or $833,333.33; and (2) service awards of $3,000 for each Class Representative in recognition of their efforts and contributions to the case through their active role in pursuing the litigation and Settlement on behalf of Settlement Class Members.

## II.    ANALYSIS

**A.    The Requested Attorneys' Fees, Costs, And Expenses Are Reasonable And Should Be Approved.**

The requested fee award of $833,333.33, representing one-third of the all-cash common fund, is reasonable and merits approval. Under Federal Rule of Civil Procedure 23(h), courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).[1] In addition, the Settlement Agreement states that Class Counsel may petition the Court for an award of attorneys' fees, costs, and expenses of up to one-third of the Settlement Fund:

> Defendant agrees that it will not object to Class Counsel's request to receive from the Settlement Fund, subject to Court approval, attorneys' fees, costs, and expenses not to exceed one-third of the Settlement Fund (or eight hundred thirty three thousand, three hundred thirty three dollars and thirty three cents ($833,333.33). Class Counsel will petition the Court for an award of such attorneys' fees, costs, and expenses, and Defendant agrees not to object to or otherwise challenge, directly or indirectly, Class Counsel's petition for attorneys' fees, costs, and expenses if limited to this amount. Class Counsel, in turn, agrees to seek no more than this amount from the Court in attorneys' fees, costs, and expenses.

Settlement Agreement ¶ 8.1. "Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by 'private attorneys general,' attorneys

---

[1] The requested fee award also encompasses unreimbursed litigation expenses. Settlement Agreement ¶ 8.1. Reasonable litigation-related expenses are customarily awarded in common fund cases and include costs such as case fees, expert costs and legal research fees. *See, e.g.*, *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) ("Class Counsel's unreimbursed expenses, including court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, expert fees, and Plaintiffs' share of the mediator's fees, are reasonable and were incidental and necessary to the representation of the class."). Thus, any requested award will also serve to compensate Class Counsel for the $33,338.30 in out-of-pocket expenses incurred in this case. *See* Kurowski Decl. ¶ 38; Arisohn Decl. ¶ 14; Raabe Decl. ¶ 12.

who fill that role must be adequately compensated for their efforts." *Kiefer v. Moran Foods, LLC*, No. 12-CV-756 WGY, 2014 WL 3882504, at *8 (D. Conn. Aug. 5, 2014) (citations omitted).

To do so in common-fund cases such as this one, courts in the Second Circuit apply one of two fee calculation methods – the "percentage of the fund" method or the "lodestar" method. *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). The Court has discretion in choosing which method to employ. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (holding that "the decision as to the appropriate method [is left] to 'the district court, which is intimately familiar with the nuances of the case'") (quoting *Goldberger*, 209 F.3d at 48). "The trend in this Circuit is to use the percentage of the fund method in common fund cases like this one." *Kiefer v. Moran Foods, LLC*, No. 12-CV-756 WGY, 2014 WL 3882504, at *8 (D. Conn. Aug. 5, 2014). Such an approach "directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." *Monzon v. 103W77 Partners, LLC*, No. 13 Civ. 5951 (AT), 2015 WL 993038, at *2 (S.D.N.Y. Mar. 5, 2015). *See also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). The "trend" of using the percentage of the fund method to compensate class counsel is now "firmly entrenched in the jurisprudence of this Circuit." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013).

"In contrast, the 'lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in gimlet-eyed review of line-item fee audits.'" *Wal-Mart*, 396 F.3d at 121 (quoting *Baffa v. Donaldson Lufkin*

*& Jenrette Secs. Corp.*, 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002)). As the Second

Circuit described difficulties with the lodestar method:

> As so often happens with simple nostrums, experience with the
> lodestar method proved vexing. Our district courts found it created
> a temptation for lawyers to run up the number of hours for which
> they could be paid. For the same reason, the lodestar created an
> unanticipated disincentive to early settlements. But the primary
> source of dissatisfaction was that it resurrected the ghost of
> Ebenezer Scrooge, compelling district courts to engage in a gimlet-
> eyed review of line-item fee audits. There was an inevitable waste
> of judicial resources.

*Goldberger*, 209 F.3d at 48-49 (citations omitted). And as another court in this circuit noted,

"courts in the Second Circuit no longer use the 'lodestar' method for computing attorneys' fees"

in fee-shifting cases. *GB ex rel. NB v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 427

(S.D.N.Y. 2012) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,

522 F.3d 182 (2d Cir. 2008)).  As a result, requests "for 33–1/3% of the Settlement Fund is

typical in class action settlements in the Second Circuit" generally and in the District of

Connecticut as well.  *Macedonia Church v. Lancaster Hotel, LP*, No. 05-0153 TLM, 2011 WL

2360138, at *14 (D. Conn. June 9, 2011). *See also Kiefer*, 2014 WL 3882504, at *8 (approving

fee of one-third of the settlement fund); *In re U.S. Foodservice, Inc. Pricing Litig.*, No. 3:07-

MD-1894 (AWT), 2014 WL 12862264, at *3 (D. Conn. Dec. 9, 2014) (same); *Menkes v. Stolt-

Nielsen S.A.*, No. 3:03CV00409(DJS), 2011 WL 13234815, at *6 (D. Conn. Jan. 25, 2011)

(same).

　　　　Finally, on a percentage basis, Class Counsel's fee request tracks fees approved in many

other similar settling COVID-19 college tuition refund cases. *See Rosado v. Barry Univ.*, No. 20-

cv-21813-JEM (S.D. Fla. Sept. 7, 2021) (granting final approval to $2,400,000 settlement fund,

payment of attorneys' fees and costs of $800,000 (33.3%)); *Wright v. Southern New Hampshire*

- 4 -

*Univ.*, No. 1:20-cv-00609-LM (D.N.H. Sept. 22, 2021) (granting final approval to $1,250,000

settlement fund, payment of attorneys' fees and costs of $416,666.66 (33.3%)); *In re Columbia*

*Univ. Tuition Refund Action*, No. 1:20-cv-03208 (JMF) (S.D.N.Y. Mar. 29, 2022) (granting final

approval to $12,500,000 settlement fund, payment of attorneys' fees for $4,166,666.67 (33.3%));

*D'Amario v. Univ. of Tampa*, No. 7:20-cv-03744-CS (S.D.N.Y. Oct. 18, 2022) (granting final

approval to $3,400,000 settlement fund, payment of attorneys' fees and costs of $1,133,333.33

(33.3%)).

      **1.**      **The percentage method should be used to calculate fees.**

As stated above, "[t]he trend in this Circuit is to use the percentage of the fund method in

common fund cases like this one." *Kiefer*, 2014 WL 3882504, at *8. In contrast, the lodestar

approach is more often applied in federal fee-shifting cases, particularly civil rights actions. *See,*

*e.g.*, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). The percentage method is

preferred for several reasons:

> First, it relieves the court of the cumbersome, enervating, and often
> surrealistic process of evaluat[ing] fee petitions.  Second, it
> decreases plaintiff lawyers' incentive to run up the number of
> billable hours for which they would be compensated by the
> lodestar method. And finally, it decreases the incentive to delay
> settlement because the fee for the plaintiffs' attorneys does not
> increase with delay.

*Varljen v. H.J. Meyers & Co., Inc.*, No. 97 Civ. 6742 (DLC), 2000 WL 1683656, at *5 (S.D.N.Y.

Nov. 8, 2000) (internal citations omitted); *see also In re EVCI Career Colleges Holding Corp.*

*Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("From

a public policy perspective, the percentage method is the most efficient means of compensating

the work of class action attorneys. It does not waste judicial resources analyzing thousands of

hours of work, where counsel obtained a superior result.").

Under the circumstances – wherein Class Counsel received an exceptional result for the Settlement Class – the Second Circuit prefers the percentage method. *See Wal-Mart Stores, Inc.*, 396 F.3d at 121 (noting that the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation"); *Hyun v. Ippudo USA Holdings*, No. 14-CV-8706 (AJN), 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) ("In this case, where the parties were able to settle relatively early and before any depositions occurred … the Court finds that the percentage method, which avoids the lodestar method's potential to 'create a disincentive to early settlement' … is appropriate.") (citing *McDaniel*, 595 F.3d at 418.  In contrast, "the lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in gimlet-eyed review of line-item fee audits." *Wal-Mart Stores, Inc.*, 396 F.3d at 121.

**2.     The reasonableness of the requested fees is supported by this Circuit's six-factor Goldberger test.**

The Second Circuit articulates six factors for Courts to consider when determining the reasonableness of a requested percentage to award as attorneys' fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *Goldberger*, 209 F.3d at 50. A review of these factors supports Class Counsel's fee request.

**a.     Time and labor expended by counsel: Class Counsel dedicated significant time and labor to this case.**

Since Class Counsel began investigating this matter in March 2020, Counsel has devoted no less than 988.75 hours to successfully pursuing this matter. Kurowski Decl. ¶ 32; Arisohn

Decl. ¶ 13; Raabe Decl. ¶ 11.[2] Class Counsel's dedication to this matter and expenditure of substantial time, effort, and resources has brought this complex litigation to a successful resolution.

**(1)    Class Counsel thoroughly investigated the claims and allegations in this matter.**

Class Counsel extensively investigated legal and factual allegations of Plaintiffs' breach of contract and unjust enrichment claims due to Quinnipiac's campus closures resulting from COVID-19. In advance of filing, Class Counsel conducted a detailed factual investigation, including (i) conducting research of the underlying allegations in the Complaint; (ii) reviewing public statements issued by Quinnipiac; (iii) reviewing Quinnipiac course registration portals, various policy documents, and handbooks; and (iv) reviewing other publicly available information on Quinnipiac's website. *See* Kurowski Decl. ¶ 5.  In addition, Class Counsel's analysis did not stop there as counsel continued to evaluate the claims and potential issues throughout the various stages of the litigation, whether as part of the motion to dismiss process or deep in the discovery phase. *Id.* ¶¶ 8, 11, 12, 17.

**(2)    Class Counsel actively litigated this case.**

Furthermore, Class Counsel actively litigated this case, often by using creative and novel legal arguments.  Such efforts included researching and drafting multiple complaints, opposing Defendant's motion to dismiss, staying on top of emerging case law in this new area through the

---

[2] While this is not a fee-shifting case, out of an abundance of caution, Plaintiffs' counsel also include detailed, contemporaneous time records in support of these hours.  *See Lego A/S v. Best-Lock Constr. Toys, Inc.*, No. 3:11-CV-1586 (CSH), 2021 WL 3291524, at *2 (D. Conn. Aug. 2, 2021) (quoting *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136 (2d Cir. 1983), for its directions in fee-shifting cases that "contemporaneous time records are a prerequisite for attorney's fees in this Circuit," and that "[t]hese records should specify, for each attorney, the date, the hours expended, and the nature of the work done").

- 7 -

submission of supplemental authority notices, conducting extensive discovery (including

reviewing the 22,500+ pages of documents produced by Defendant), scheduling depositions, and

engaging in multiple sessions with Magistrate Judge Spector on the path to settlement. Kurowski

Decl. ¶¶ 5-20.

> **(3)    Class Counsel committed substantial time and resources to reaching a comprehensive Class Settlement and obtaining Preliminary Approval.**

Class Counsel also dedicated significant time to resolving this matter. Class Counsel

crafted a settlement proposal; participated in multiple mediation sessions, which was preceded

by several weeks of settlement negotiations, and followed by several weeks of more settlement

negotiations after the mediation; negotiated and prepared the Class Action Settlement Agreement

and the Class Notice documents and Claim Form; and secured and worked with a Settlement

Administrator to effectuate the Settlement. *See* Kurowski Decl. ¶¶ 18-20. Class Counsel also

successfully moved for Preliminary Approval of the Proposed Class Action Settlement (*see* ECF

Nos. 117-125). Class Counsel provided this Court with lengthy briefing, declarations, and

exhibits in support of their Motion.

> **(4)    Class Counsel's significant work after Preliminary Approval.**

After this Court granted Preliminary Approval, Class Counsel has worked with the

Settlement Administrator and helping the Plaintiffs and Class Members with the Settlement,

including reviewing notice materials and supervising timely issuance of the requisite notice to

Class Members. Kurowski Decl. ¶ 21.

> **(5)    Over the next several months, Class Counsel will commit additional time and resources to monitoring the Settlement.**

Class Counsel will continue their efforts in this case by pursuing final approval of the

Settlement, continuing to oversee the work of the claims administrator to ensure timely payment

of settlement awards to the Class Members, and fielding any calls that Class Members may have regarding the Settlement and their rights thereunder.  Kurowski Decl. ¶ 22. Thus, Class Counsel will, in the immediate future, have to dedicate time and resources to administering the Settlement. *Id*. Based on Class Counsel's experience in other cases, this ongoing work will likely involve about 50-75 total more hours. *Id*. This additional work should be accounted for as well. *See Kiefer*, 2014 WL 3882504, at *9 ("Class Counsel's requested fee is also reasonable because Class Counsel will continue to perform work on this matter after final approval is granted."); *Roberts v. TJX Cos., Inc*., No. 13-cv-13142-ADB, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) (awarding one-third and noting that class counsel has "already committed, and anticipate continuing to commit, additional time to the administration of the claims").

> **b.    Magnitude and complexity of the litigation: This class action addressed complex issues and focused on the novel application of contract law to the student-university relationship.**

The complex nature of this litigation further favors the requested fee award. "[C]lass actions have a well deserved reputation as being most complex." *In re NASDAQ Market-Makers Antitrust Litig*., 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (internal citation and quotations omitted). Here specifically, however, the claims and legal theories are novel, complicated, and unsettled, to put it lightly. *See Shaffer v. George Wash. Univ.*, 27 F.4th 754, 760 (D.C. Cir. 2022) (noting "the novel and challenging issues that these cases present" in reviewing appeal in COVID-19 university tuition and fee litigation). Indeed, "[t]he federal courts have established that a standard fee in complex class action cases … where plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit," and "[d]istrict courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater." *Velez v. Novartis Pharm. Corp*., No. 04 Civ. 09194 (CM), 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010). The complexity of this case is further underscored by the challenges Plaintiffs faced on a

motion to dismiss, and even more so if they prevailed and seek class certification. And courts have both granted and denied class certification and granted and denied summary judgment in university defendants' favor. *Cf. Arredondo v. Univ. of La Verne*, 341 F.R.D. 47 (C.D. Cal. 2022) (granting class certification) and *Omori v. Brandeis Univ.*, No. CV 20-11021-NMG, 2022 WL 10511039 (D. Mass. Oct. 18, 2022) (denying university's motion for summary judgment); *with In re Suffolk Univ. Covid Refund Litig.*, No. CV 20-10985-WGY, 2022 WL 6819485 (D. Mass. Oct. 11, 2022) (denying class certification) and *Randall v. Univ. of the Pac.*, No. 5:20-CV-03196-EJD, 2022 WL 1720085 (N.D. Cal. May 28, 2022) (granting university's motion for summary judgment). This factor favors the requested fee.

### c.   The risk of litigation.

This factor recognizes the risk of non-payment in cases prosecuted on a contingency basis where claims are unsuccessful, which can justify higher fees. *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) (noting risk of non-payment in cases brought on contingency basis). "It is well settled that class actions are notoriously complex and difficult to litigate." *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM), 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) (internal citation omitted).

Here, this case presented a substantial risk of non-payment for Class Counsel. Since 2020, Class Counsel invested significant time, effort, and resources to the litigation with no compensation. Kurowski Decl. ¶ 31. Cognizant of the risk of nonpayment, Class Counsel still took this case on a pure contingency basis and committed substantial resources of attorney and staff time towards investigating and litigating this action. *Id*. ¶ 32. Class Counsel further recognizes that Plaintiffs faced considerable risks in establishing class-wide liability, obtaining

- 10 -

Rule 23 certification of the proposed class action (and perhaps opposing a motion for decertification or a Rule 23(f) petition), and establishing damages. Class Counsel also assumed the risk of the significant delay associated with achieving a final resolution through trial and any appeals.  And this Court's ruling on the motion to dismiss further identified potential litigation risks as well. *See Metzner v. Quinnipiac Univ.*, 528 F. Supp. 3d 15, 34 (D. Conn. 2021) (noting "[d]iscovery may ultimately defeat Plaintiffs' ability to demonstrate the existence of an express or implied contract based on the Bulletin and other course materials"); *id.* at 31 (cautioning that resolution of claims or damages assessments should not implicate educational malpractice doctrine). That Class Counsel undertook this representation, despite the significant risk of nonpayment, supports the requested fee award.

### d.   The quality of representation.

Class action litigation presents unique challenges and – by achieving an exceptional Settlement – Class Counsel proved that they have the ability and resources to litigate this case zealously and effectively. In addition, Class Counsel are well-respected attorneys with significant experience litigating consumer class actions of similar size, scope, and complexity. Kurowski Decl. ¶¶ 23-30; Arisohn Decl. ¶¶  4-6; Raabe Decl. ¶ 4.  In the college tuition refund context, Class Counsel successfully obtained settlements for students in *Mahmood v. Rutgers*, No. MID-L-003039-20 (Middlesex County, NJ); *Wright v. Southern New Hampshire Univ.*, 1:20-cv-00609-LM (D.N.H. 2021), *Martin v. Lindenwood Univ.*, 4:20-cv-01128-RLW (E.D. Mo. 2022); *D'Amario et al. v. Univ. of Tampa*, No. 7:20-cv-3744-CS (S.D.N.Y.), and *Choi v. Brown Univ.*, No. 1:20-cv-00191-JJM-LDA (D.R.I.).

Moreover, Class Counsel has been recognized by courts across the country for their expertise.  *See* Ex. A to Kurowski Decl. ¶ 24; Ex. A to Arisohn Decl. ¶ 4; Ex. A to Raabe Decl. ¶ 4; *see also Ebin v. Kangadis Food Inc.*, 297 F.3d 561, 566 (S.D.N.Y. Feb. 25, 2014) ("Bursor &

Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."); *Diaz v. Univ. of S. Cal.*, No. CV204066DMGPVCX, 2020 WL 5044419, at *5 (C.D. Cal. July 17, 2020) ("Hagens Berman's detailed track records in class actions show great depth of experience in bringing plaintiffs' class actions for similar claims, and the specific partners committed…as well as their deep benches of associates, have proven track records of success."); *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *16 (D. Conn. Nov. 3, 2016) ("Class Counsel in this case is comprised of attorneys and law firms that are national leaders in class action litigation…matters. Izard, Kindall & Raabe, LLP has been appointed lead or co-lead counsel in numerous [class actions].").

Furthermore, "[t]he quality of the opposition should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance." *In re MetLife Demutalization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010). Class Counsel achieved an exceptional result in this case while facing well-resourced and highly experienced defense counsel. *See Marsh ERISA Litig.*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."). Class Counsel litigated this case efficiently, effectively, and civilly. The excellent result is a function of the high quality of that work, which supports the requested fee award.

<h4 style="text-align:center;">e.      The requested fee in relation to the Settlement.</h4>

Class Counsel seeks attorneys' fees of one-third of the $2.5 million cash settlement fund. As aforementioned, courts in this Circuit routinely approve fee requests for one-third of a common fund. *See supra* Section II.A.1 (collecting cases). Moreover, the requested fees of one-

third of the settlement fund are an equal percentage to that approved by other courts in similar

COVID-19 tuition refund cases.  *See id*.  This factor thus supports the requested fee award.

> **f.      Public policy considerations further support Class Counsel's fee request.**

The final *Goldberger* factor considers public policy. "Skilled counsel must be

incentivized to pursue complex and risky claims [that protect the public on a contingency

basis]."  *Shapiro*, 2014 WL 1224666, at *24. Reasonable fee awards must be provided to make

sure attorneys are incentivized to litigate class actions, which serve as private enforcement tools

to police defendants who engage in misconduct. *See id*. "Attorneys who fill the private attorney

general role must be adequately compensated for their efforts," otherwise the public risks an

absence of a "remedy because attorneys would be unwilling to take on the risk."  *Massiah v.*

*MetroPlus Health Plan, Inc.*, No. 11-cv-05669 (BMC), 2012 WL 5874655, at *7 (E.D.N.Y. Nov.

20, 2012) (citing *Goldberger*, 209 F.3d at 51).  *See also In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d

249, 270 (D.N.H. 2007) ("Without a fee that reflects the risk and effort involved in this litigation,

future plaintiffs' attorneys might hesitate to be similarly aggressive and persistent when faced

with a similarly complicated, risky case and similarly intransigent defendants.").  Thus, society

undoubtedly has a strong interest in incentivizing lawyers to bring complex litigation to protect

consumer rights, particularly where the Class Members likely will not pursue litigation on their

own for economic or personal reasons. Here, public policy considerations also favor Class

Counsel's fee request because this case sought to hold Quinnipiac accountable for shifting the

entire financial burden of the COVID-19 pandemic onto its students. A one-third fee would,

moreover, compensate Class Counsel at a level commensurate with the benefits they have

conferred on the Class, the large investment of time and money they devoted to litigating this

unique case and bringing about the Settlement and the contingent nature of their representation. Kurowski Decl. ¶ 43. Public policy favors this fee request.

> **3.     The requested attorneys' fees are also reasonable under a lodestar cross-check.**

A lodestar cross-check further supports the requested fee. Courts applying the lodestar method generally apply a multiplier to consider the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *See Wal–Mart Stores, Inc.*, 396 F.3d at 121. Where the lodestar is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50; *see also Cassese v. Williams*, 503 F. App'x 55, 59 (2d Cir. 2012) (noting the "need for exact [billing] records [is] not imperative" where the lodestar is used as a "mere cross-check").

To calculate lodestar, counsel's reasonable hours spent on the litigation are multiplied by counsel's reasonable rates. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 264 (E.D.N.Y. 2009).  The resulting figure may be adjusted at the court's discretion by a multiplier, considering various equitable factors. *See Parker*, 631 F. Supp. 2d at 264; *Shapiro*, 2014 WL 1224666, at *24 ("Additionally, under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.") (internal quotations and citations omitted).

The hourly billing rate to be applied is the hourly rate normally charged in the community where the counsel practices, i.e., the "market rate." *See Blum*, 465 U.S. at 895; *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115-116 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers

of reasonably comparable skill, experience, and reputation.'") (alteration in original and citation omitted). Here, the hourly rates used by Class Counsel are their standard billable rates.  *See* Kurowski Decl. ¶ 36; Arisohn Decl. ¶ 12; Raabe Decl. ¶ 10.[3]  *See Menkes*, 2011 WL 13234815, at *5 (granting class action fee award using lodestar cross check for fees based on counsel's "customary billing rates").

The hours worked, lodestar, and expenses for Class Counsel are in the declarations of Mr. Arisohn, Mr. Kurowski and Mr. Raabe. These records confirm Class Counsel's efficient billing, by, for example, striving to assign work to less senior lawyers or paralegals who bill at lower hourly rates to reduce the fees for the Class and avoiding overstaffing the case.  Thus, even under the optional lodestar cross check, Class Counsel's requested fees are reasonable given the unique circumstances of this case. Specifically:

- Class Counsel obtained an excellent Settlement, which will result in Class Members receiving substantial money quickly and automatically, without the need to submit a claim.

- The litigation was conducted and the Settlement was obtained efficiently, by experienced and qualified counsel.

- The case involved complex and novel legal issues and factual theories, which involved significant litigation risks.

- Class Counsel devised a litigation and settlement strategy that factored in the complex and uncertain nature of the case.

---

[3] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (recognizing "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise"); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("The lodestar should be based on 'prevailing market rates' … and current rates, rather than historical rates, should be applied in order to compensate for the delay in payment.") (citation omitted).

In total, through February 2023, Class Counsel has devoted more than 988 hours to prosecuting this litigation.  *See* Kurowski Decl. ¶ 37; Arisohn Decl. ¶ 13; Raabe Decl. ¶ 11. Class Counsel's aggregate lodestar exceeds $613,142.00.  *See id*. Therefore, the requested fee award represents a multiplier of about 1.36, which is well within the accepted range in this Circuit. *See Kiefer*, 2014 WL 3882504, at *9 ("It is typical for Courts in the Second Circuit to approve fee awards where the lodestar multiplier is eight or more."); *Asare v. Change Grp. of N.Y., Inc*., No. 12 Civ. 3371 (CM), 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *In re Columbia Univ. Tuition Refund Action*, No. 20-cv-03208-JMF, ECF No. 115 at ¶ 10 (S.D.N.Y. Mar. 29, 2022) (approving attorneys' fees of one-third of $12.5 million common fund in COVID-19 tuition and fee litigation, representing 4.3 times multiplier on Class Counsel's regular hourly rates); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (approving attorneys' fees of 33% of a $4.9 million common fund, representing a 6.3 times multiplier on Class Counsel's regular hourly rates); *In re Credit Default Swaps Antitrust Litig*., No. 13md2476 (DLC), 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (approving attorneys' fees of $253,758,000, which reflected a "lodestar multiplier of just over 6").

As courts recognize, a high multiplier "should not result in penalizing plaintiffs' counsel for achieving an early settlement, particular[ly] where, as here, the settlement amount [was] substantial." *Beckman*, 293 F.R.D. at 482; *Hyun*, 2016 WL 1222347, at *3 ("In this case, where the parties were able to settle relatively early and before any depositions occurred … the Court finds that the percentage method, which avoids the lodestar method's potential to 'create a disincentive to early settlement' … is appropriate.") (citations omitted); *see also Perez v. Rash Curtis & Assocs.*, No. 4:16-cv-03396-YGR, 2020 WL 1904533, at *21 (N.D. Cal. Apr. 17, 2020)

("The benefit obtained for the class is an extraordinary result, while there was and still is significant risk of nonpayment for class counsel. Moreover, the general quality of the representation and the complexity and novelty of the issues presented weigh in favor of a higher lodestar multiplier.").

Class Counsel's lodestar multiplier is also reasonable because it will decrease over time. *See* Kurowski Decl. ¶ 22. Here, "Class Counsel will continue to perform work on this matter after final approval is granted." *Kiefer*, 2014 WL 3882504, at *9 (quoting *Parker v. Jekyll & Hyde Entm't Holdings*, *LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time")). Thus, where, as here "class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Id.* (citation and quotation omitted). In sum, Class Counsel's efforts in this case resulted in an exceptional settlement of a complex and uncertain case.  Class Counsel should be rewarded for achieving this result.

**B.     The Requested Service Award Reflects Plaintiffs' Active Involvement in This Action And Should Be Approved.**

Next, the Court should also approve service awards to each Plaintiff who stepped up to represent the interests of other Spring 2020 students at Quinnipiac.  Service awards are common in class action cases and serve to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]." *Reyes v. Altamarea Grp.*, No. 10-CIV-6451 (RLE), 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011). Service awards fulfill the

important purpose of compensating plaintiffs for the time they spend and the risks they take. *Massiah*, 2012 WL 5874655, at *8.  Under the Settlement Agreement, the parties agreed to service awards not to exceed $3,000.  As the Settlement provides in relevant part:

> Defendant agrees that it will not object to the Settlement Administrator paying service awards to the Class Representatives from the Settlement Fund, in addition to any Cash Award pursuant to this Agreement, and in recognition of their efforts on behalf of the Settlement Class, in the amount of three thousand dollars ($3,000.00) each. Defendant shall not object to or otherwise challenge, directly or indirectly, Class Counsel's application for the service awards to the Class Representatives if limited to this amount. The Class Representatives, in turn, agree to seek no more than this amount from the Court as the service awards for the Class Representatives.

Settlement Agreement ¶ 8.3.

Here, the participation of Plaintiffs was critical to the ultimate success of the case. Kurowski Decl. ¶ 41. Plaintiffs spent significant time protecting the interests of the class through their involvement in this case.  Plaintiffs assisted Class Counsel in investigating their claims by providing information to draft and file the complaint. *Id*. ¶ 42. During this litigation, Plaintiffs assisted with preliminary discovery and kept in regular contact with their lawyers to receive updates on the progress of the case and to discuss strategy particularly as those efforts related to responding to Defendant's document requests and multiple rounds of interrogatories. *Id*. ¶ 43. Finally, Plaintiffs conferred with Class Counsel during the settlement process. *Id*. ¶ 44. Equally important, Plaintiffs took on an enormous risk in filing this lawsuit. Indeed, at the time of filing, both Plaintiffs were still active students at Quinnipiac, and thus took on an added risk by suing Quinnipiac, including potential adverse consequences to their educational pursuits.

On these facts, the $3,000 service awards are appropriate in light of the efforts made by Plaintiffs to protect the interests of the other Settlement Class Members, the time and effort they spent pursuing this matter, and the substantial benefit they helped achieve for the other

Settlement Class members. Thus, a service award of $3,000 for each Plaintiff is well-deserved, reasonable, and far less than other awards approved by other courts in this Circuit. *See, e.g., In re Columbia Univ. Tuition Refund Action*, No. 20-cv-03208-JMF, ECF No. 115, at 11 (S.D.N.Y. Mar. 29, 2022) (approving service awards of $25,000 to each plaintiff); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Civ. 5450, 2018 WL 3863445, at *2 (S.D.N.Y. Aug. 14, 2018) (approving service awards of $25,000); *Dornberger v. Metro. Life Ins. Co*., 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000). Further confirmation of the reasonableness of the requested award to each Plaintiff can be found in other approved service awards in similar COVID-19 university litigations. *See Wright v. Southern New Hampshire Univ.*, No. 1:20-cv-00609-LM (D.N.H. Sept. 22, 2021) (approving $5,000 service awards); *Rocchio v. Rutgers*, No. MID-L-003039-20 (N.J. Super. Ct. Feb. 4, 2022) (approving $2,500 service awards); *In re Columbia Univ. Tuition Refund Action*, No. 1:20-cv-03208 (JMF) (S.D.N.Y. Mar. 29, 2022) (approving $25,000 service awards); *D'Amario v. Univ. of Tampa*, No. 7:20-cv-03744-CS (S.D.N.Y. Oct. 18, 2022) (approving $10,000 service awards).

## III.    CONCLUSION

For the reasons provided above and for good cause shown, Plaintiffs respectfully request that the Court (1) approve attorneys' fees, costs, and expenses in the amount of one-third of the settlement fund ($833,333.33) and (2) grant each Plaintiff a service award of $3,000 each in recognition of their efforts on behalf of the class, and (3) grant Plaintiffs all such other relief that the Court deems necessary and appropriate.

010920-30/2184516 V1

Dated: February 27, 2023

Respectfully submitted,

*/s/ Daniel J. Kurowski*
Daniel J. Kurowski (*pro hac vice*)
Whitney K. Siehl (*pro hac vice*)
HAGENS BERMAN SOBOL
SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Craig A. Raabe (ct04116)
IZARD KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
T: (860) 493-6292
F: (860) 493-6290
craabe@ikrlaw.com

Sarah N. Wescot (*pro hac vice*)
BURSOR & FISHER, P.A.
701 Brickell Avenue, Suite 1420
Miami, FL 33131
(305) 330-5512
swescot@bursor.com

Joshua Arisohn (*pro hac vice*)
Alec M. Leslie (*pro hac vice*)
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, NY 10019
(646) 837-710
jarisohn@bursor.com
aleslie@bursor.com

*Class Counsel for the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney of record hereby certifies that on February 27, 2023, I filed this document through the Court's CM/ECF system, which caused this document to be served electronically to all counsel of record. In addition, I directed true and correct copies of this document and all attachments thereto to be uploaded to the "Important Documents" section of this case's Settlement Website for public viewing, available at https://www.qusettlement.com/documents.

*/s/ Daniel J. Kurowski*
Daniel J. Kurowski

010920-30/2184516 V1